ALLISON J. SCHOENTHAL (admitted *pro hac vice*)
*ASchoenthal@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel.: +1 212 459 7183
Fax: +1 212 937 3850

W. KYLE TAYMAN (admitted *pro hac vice*)
*KTayman@goodwinlaw.com*
**GOODWIN PROCTER LLP**
1900 N Street, N.W.
Washington, DC 20036-1612
Tel.: +1 202 346 4000
Fax: +1 202 346 4444

REBECCA L. TARNEJA (SBN 293461)
*RTarneja@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 South Figueroa Street, Suite 4100
Los Angeles, California 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

Attorneys for Defendant
NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

MARTIN BELTRAN, NICOLLE AYERS, and PATRICE NORWOOD, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER,

Defendant.

Case No. 3:25-cv-04412-JSC

**DEFENDANT MR. COOPER'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing: November 20, 2025
Time: 10:00 a.m.
Location: 8, 19th Floor
Judge: Honorable Jacqueline Scott Corley

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on November 20, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Jacqueline Scott Corley, United States District Judge, in Courtroom 8, 19th Floor of the San Francisco Courthouse, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper") will, and hereby does, move to dismiss Plaintiffs Martin Beltran, Nicolle Ayers, and Patrice Norwood's ("Plaintiffs") Complaint, ECF 1, without leave to amend.

This motion is made pursuant to pursuant to Federal Rules of Civil Procedure 12(b)(1), on the grounds that this Court lacks subject matter jurisdiction over the Complaint because Plaintiffs lack Article III standing; 12(b)(2), on the grounds that this Court lacks personal jurisdiction over Mr. Cooper as to Plaintiff Patrice Norwood's claims; and 12(b)(6), on the grounds that Plaintiffs fail to state any claim upon which relief may be granted.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, Request for Judicial Notice in Support of the Motion ("RJN"), Declaration of Edward W. Larroca and Exhibits 1–5 thereto, and all papers from this case on file with the Court, all other matters of which the Court may take judicial notice, any further evidence or argument offered to the Court at any hearing on this Motion, and any other evidence and argument the Court may consider.

Dated: August 18, 2025

Respectfully submitted,

By: */s/ W. Kyle Tayman*

W. KYLE TAYMAN (admitted *pro hac vice*)
*KTayman@goodwinlaw.com*
ALLISON J. SCHOENTHAL (admitted *pro hac vice*)
*ASchoenthal@goodwinlaw.com*
REBECCA L. TARNEJA (SBN 293461)
*RTarneja@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Defendant

# TABLE OF CONTENTS

**Page**


NOTICE OF MOTION AND MOTION TO DISMISS ..... i

STATEMENT OF THE ISSUES TO BE DECIDED..... xiv

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. Plaintiffs Allege that They Used Mr. Cooper's Website, But Do Not Allege that any of Their Data Was Collected. ..... 2

B. Plaintiffs Agreed to Mr. Cooper's Privacy Policies, Which Disclosed the Alleged Data Practices..... 3

C. Plaintiffs Agreed to Mr. Cooper's Terms, Which Limit Its Liability. ..... 4

D. The Claims. ..... 5

ARGUMENT ..... 5

I. The Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Standing..... 5

A. Plaintiffs Do Not Allege They Suffered an Injury in Fact. ..... 5

B. Plaintiffs Do Not Allege any Injury Traceable to Mr. Cooper..... 8

II. The Complaint Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim..... 9

A. Plaintiffs' Consent to the Alleged Data Practices Bars All of Their Claims..... 10

B. Plaintiffs' Claims Are Barred by the Terms' Limitation-of-Liability Clause..... 11

C. Plaintiffs' Common-Law Claims Fail as a Matter of Law (Counts 1, 2, 6, 7, 9)..... 12

1. Plaintiffs Do Not Plead any Breach of Contract (Count 6)..... 12

2. The Unjust Enrichment Claim Should Be Dismissed (Count 7)..... 13

3. The Breach of Confidence Claim Is Insufficiently Pled (Count 9)..... 13

4. The Negligence Claim Should Be Dismissed (Count 1)..... 14

5. Plaintiffs' Negligence Per Se Claim Fails as a Matter of Law (Count 2). ..... 15

D. Plaintiffs' California Statutory Claims Fail (Counts 3–5, 10)..... 16

1. Plaintiffs' Statutory Claims are Barred by the Choice-of-Law Provision (Counts 3–5, 10). ..... 16

2. Plaintiffs' California Computer Fraud Claim Fails (Count 3). ..... 16

3. Plaintiffs' UCL Claim Fails (Count 4)..... 18

4. Plaintiffs Do Not State a Claim Under the CCPA (Count 5)..... 18

E. Plaintiffs' Wiretap Act and CIPA Claims Fail (Counts 10–12)..... 20

1. The CIPA Claim Must Be Dismissed Under Rule 8..... 20

2. The CIPA and Wiretap Act Claims Fail Because Plaintiffs Consented to the Sharing of Their Data. ..... 20

3. The CIPA (Section 631(a)) and Wiretap Act Claims Also Fail Because They Do Not Allege an Interception in Transit. ........ 21

4. The CIPA (Section 632(a)) Claim Fails Because Plaintiffs Do Not Sufficiently Allege Eavesdropping or Recording. ........ 22

F. Plaintiffs' Claim for Declaratory Relief Should Be Dismissed (Count 8). ........ 23

G. Plaintiff Ayers' Claims Are Time-Barred. ........ 24

III. Plaintiff Norwood's Claims Should Be Dismissed Under Rule 12(b)(2) for Lack of Personal Jurisdiction. ........ 24

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AdvoCare Int'l, L.P. v. Hardy*,
2010 WL 11618798 (N.D. Tex. Sept. 30, 2010) ... 12

*Allison v. PHH Mortg.*,
No. 3:25-cv-5323 (N.D. Cal. filed June 25, 2025) ... 9

*Allison v. United Wholesale Mortg.*,
No. 3:25-cv-5377 (N.D. Cal. filed June 26, 2025) ... 9

*Alston v. Cnty. of Sacramento*,
2012 WL 2839825 (E.D. Cal. July 10, 2012), *report and recommendation adopted*, 2012 WL 3205142 (E.D. Cal. Aug. 3, 2012) ... 14

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021) ... 10

*In re Anthem, Inc. Data Breach Litig.*,
162 F.Supp.3d 953 (N.D. Cal. 2016) ... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 10

*B.K. v. Eisenhower Med. Ctr.*,
721 F.Supp.3d 1056 (C.D. Cal. 2024), *on reconsideration in other part*, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ... 15

*Bass v. Facebook, Inc.*,
394 F.Supp.3d 1024 (N.D. Cal. 2019) ... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 9

*Berkla v. Corel Corp.*,
302 F.3d 909 (9th Cir. 2002) ... 13

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ... 18

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) ... 22

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
582 U.S. 255 (2017) ... 25

*Brown v. Christiana Tr.*,
722 F. App'x 702 (9th Cir. 2018) ........ 5

*Byars v. Hot Topic, Inc.*,
656 F.Supp.3d 1051 (C.D. Cal. 2023)........ 22

*Capps v. JPMorgan Chase Bank, N.A.*,
2023 WL 3030990 (E.D. Cal. Apr. 21, 2023)........ 11

*Carolus v. Nexstar Media Inc.*,
2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ........ 8

*City of Reno v. Netflix, Inc.*,
52 F.4th 874 (9th Cir. 2022)........ 24

*Columbia Pictures Indus. v. Bunnell*,
2007 WL 2080419 (C.D. Cal. May 29, 2007) ........ 21

*Corales v. Bennett*,
567 F.3d 554 (9th Cir. 2009)........ 14

*Cottle v. Plaid Inc.*,
536 F.Supp.3d 461 (N.D. Cal. 2021) ........ 17

*Daghaly v. Bloomingdales.com, LLC*,
2024 WL 5134350 (9th Cir. Dec. 17, 2024) ........ 6, 7

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)........ 25

*Daniels v. Alphabet Inc.*,
2021 WL 1222166 (N.D. Cal. Mar. 31, 2021)........ 13

*Darnaa, LLC v. Google LLC*,
756 F. App'x 674 (9th Cir. 2018) ........ 11

*Doe I v. Google LLC*,
741 F.Supp.3d 828 (N.D. Cal. 2024) ........ 14

*Doe v. Meta Platforms, Inc.*,
690 F.Supp.3d 1064 (N.D. Cal. 2023) ........ 17

*Domain Prot., LLC v. Sea Wasp, LLC*,
2019 WL 6255733 (E.D. Tex. Nov. 22, 2019) ........ 23

*Enki Corp. v. Freedman*,
2014 WL 261798 (N.D. Cal. Jan. 23, 2014) ........ 17

*In re Facebook Priv. Litig.*,
791 F.Supp.2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) ........ 16, 17, 18

*Fernandez v. Leidos, Inc.*,
127 F.Supp.3d 1078 (E.D. Cal. 2015)........................................................................................... 9

*Flores v. EMC Mortg. Co.*,
997 F.Supp.2d 1088 (E.D. Cal. 2014)......................................................................................... 10

*Gardiner v. Walmart, Inc.*,
2021 WL 4992539 (N.D. Cal. Jul. 28, 2021)............................................................................. 13

*In re German Auto. Mfrs. Antitrust Litig.*,
497 F.Supp.3d 745 (N.D. Cal. 2020), *aff'd*, 2021 WL 4958987 (9th Cir. Oct. 26, 2021) ............................................................................................................................ 5

*GlobeRanger Corp. v. Software AG*,
27 F.Supp.3d 723 (N.D. Tex. 2014), *aff'd*, 836 F.3d 477 (5th Cir. 2016)............................. 14

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014)................................................................................................... 10

*In re Google Assistant Priv. Litig.*,
457 F.Supp.3d 797 (N.D. Cal. 2020) ........................................................................................ 12

*In re Google Assistant Priv. Litig.*,
546 F.Supp.3d 945 (N.D. Cal. 2021) ........................................................................................ 17

*Griffey v. Magellan Health Inc.*,
2022 WL 1811165 (D. Ariz. June 2, 2022)................................................................................ 18

*Griffey v. Magellan Health Inc.*,
562 F.Supp.3d 34 (D. Ariz. 2021)............................................................................................. 19

*Gueye v. Wells Fargo Bank*,
2023 WL 3668521 (N.D. Cal. May 24, 2023) ........................................................................... 24

*Gutierrez v. Converse Inc.*,
2023 WL 8939221 (C.D. Cal. Oct. 27, 2023)............................................................................ 17

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025)................................................................................. 22

*Hamm v. Mercedes-Benz USA, LLC*,
2022 WL 913192 (N.D. Cal. Mar. 29, 2022)............................................................................. 18

*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. 2022) ................................................................................. 12, 24

*Hanan v. Crete Carrier Corp.*,
2020 WL 42269 (N.D. Tex. Jan. 3, 2020).................................................................................. 14

*Hancock v. Chi. Title Ins. Co.*,
635 F.Supp.2d 539 (N.D. Tex. 2009) ..... 13

*Hayden v. Retail Equation, Inc.*,
2022 WL 2254461 (C.D. Cal. May 4, 2022), *reconsideration on other grounds*, 2022 WL 3137446 (C.D. Cal. July 22, 2022) ..... 19

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) ..... 18

*HDI Glob. Specialty SE v. Coreslab Structures (Tex.) Inc.*,
2021 WL 1226561 (W.D. Tex. Mar. 31, 2021), *report and recommendation adopted*, 2021 WL 2843842 (W.D. Tex. May 19, 2021) ..... 13

*Henderson v. Reventics, LLC*,
2024 WL 5241386 (D. Colo. Sept. 30, 2024) ..... 9

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ..... 13

*Idris v. Lakeview Loan Serv., LLC*,
No. 3:25-cv-5087 (N.D. Cal. filed June 16, 2025) ..... 9

*It's Just Lunch Int'l LLC. v. Island Park Enter. Grp., Inc.*,
2008 WL 4683637 (C.D. Cal. Oct. 21, 2008) ..... 16

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F.Supp.3d 928 (N.D. Cal. 2023) ..... 13

*King v. Bumble Trading, Inc.*,
2020 WL 663741 (N.D. Cal. Feb. 11, 2020) ..... 25

*King v. Bumble Trading, Inc.*,
393 F.Supp.3d 856 (N.D. Cal. 2019) ..... 16

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ..... 23

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025), *appeal docketed*, No. 25-4452 (9th Cir. July 17, 2025) ..... 7, 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ..... 21

*Lakes v. Ubisoft, Inc.*,
777 F.Supp.3d 1047 (N.D. Cal. 2025), *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025) ..... 10, 21

*Lam v. Target Corp.*, 2017 WL 4154947 (E.D. Cal. Sept. 19, 2017) .......... 14

*Landscape Design & Constr., Inc. v. Transp. Leasing/Cont., Inc.*, 2002 WL 257573 (N.D. Tex. Feb. 19, 2002) .......... 24

*Larroque v. First Advantage LNS Screening Sols., Inc.*, 2016 WL 4577257 (N.D. Cal. Sept. 2, 2016) .......... 6

*Lee v. Ticketmaster, L.L.C.*, 817 F. App'x 393 (9th Cir. 2020) .......... 11

*Libman v. Apple, Inc.*, 2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) .......... 13

*Licea v. Am, Eagle Outfitters, Inc.*, 659 F.Supp.3d 1072 (C.D. Cal. 2023) .......... 22

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .......... 9

*Maag v. U.S. Bank, Nat'l Ass'n*, 2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) .......... 19

*Martin v. Sephora USA, Inc.*, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) .......... 20

*McGruder v. Target Corp.*, 2020 WL 6504570 (N.D. Tex. Nov. 5, 2020) .......... 15

*McKee v. Audible, Inc.*, 2018 WL 11263238 (C.D. Cal. Mar. 12, 2018) .......... 25

*Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025), *appeal docketed*, No. 25-4990 (9th Cir. Aug. 7, 2025) .......... 6, 7, 8

*Mitchener v. Talkspace Network LLC*, 2025 WL 1822801 (C.D. Cal. June 27, 2025) .......... 7

*Morales v. Conifer Revenue Cycle Sols., LLC*, 2025 WL 1096396 (C.D. Cal. Mar. 31, 2025) .......... 15

*Nguyen v. Abbott Lab'ys, Inc.*, 2025 WL 2299753 (N.D. Ill. Aug. 8, 2025) .......... 7

*Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F.Supp.3d 1072 (W.D. Wash. 2024) .......... 21

*Novak v. United States*,
795 F.3d 1012 (9th Cir. 2015) ..... 9

*NovelPoster v. Javitch Canfield Grp.*,
140 F.Supp.3d 938 (N.D. Cal. 2014) ..... 16

*Perlaki v. J.B. Poindexter & Co.*,
2025 WL 754503 (S.D. Tex. Mar. 10, 2025) ..... 8

*Petrovich v. Ocwen Loan Servicing, LLC*,
2016 WL 555959 (N.D. Cal. Feb. 12, 2016), *aff'd*, 716 F. App'x 614 (9th Cir. 2017) ..... 7

*Phillips v. Neutron Holdings, Inc.*,
2019 WL 4861435 (N.D. Tex. Oct. 2, 2019) ..... 11

*Physicians Comm. for Responsible Med. v. Vilsack*,
2023 WL 1873084 (N.D. Cal. Feb. 9, 2023) ..... 9

*Pica v. Delta Air Lines, Inc.*,
2018 WL 5861362 (C.D. Cal. Sept. 18, 2018) ..... 16

*Pratt v. Higgins*,
2023 WL 4564551 (N.D. Cal. July 17, 2023) ..... 17

*Price v. Apple, Inc.*,
2023 WL 2671378 (N.D. Cal. Mar. 28, 2023) ..... 11

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) ..... 15

*R.C. v. Walgreen Co.*,
733 F.Supp.3d 876 (C.D. Cal. 2024) ..... 15

*Richter v. Carnival Corp.*,
2019 WL 5894213 (N.D. Tex. Nov. 12, 2019) ..... 14

*Rider v. Uphold HQ Inc.*,
657 F.Supp.3d 491 (S.D.N.Y. 2023) ..... 16

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ..... 6

*Rodriguez v. Autotrader.com, Inc.*,
762 F.Supp.3d 921 (C.D. Cal. 2025) ..... 6

*Rodriguez v. ByteDance, Inc.*,
2025 WL 672951 (N.D. Ill. Mar. 3, 2025) ..... 23

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 21

*Rothwell v. Marshall Creek Ranch, LLC*,
2025 WL 973939 (E.D. Tex. Feb. 11, 2025), *report and recommendation adopted*, 2025 WL 965754 (E.D. Tex. Mar. 31, 2025) .......... 11

*Sawicky v. AMC Networks Inc.*,
753 F. App'x 501 (9th Cir. 2019) .......... 13

*Shah v. Capital One Financial Corp.*,
768 F.Supp.3d 1033 (N.D. Cal. 2025) .......... 10, 12

*Sharpe v. Puritan's Pride, Inc.*,
2019 WL 188658 (N.D. Cal. Jan. 14, 2019) .......... 25

*Shin v. ICON Found.*,
2021 WL 1893117 (N.D. Cal. May 11, 2021) .......... 23, 24

*Smith v. Am. Pain & Wellness, PLLC*,
747 F.Supp.3d 989 (E.D. Tex. 2024) .......... 16

*Smith v. YETI Coolers, LLC*,
754 F.Supp.3d 933 (N.D. Cal. 2024) .......... 23

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016), *as revised* (May 24, 2016) .......... 5

*Swarts v. Home Depot, Inc.*,
689 F.Supp.3d 732 (N.D. Cal. 2023) .......... 18, 22

*Thomasson v. GC Servs. Ltd. P'ship*,
321 F. App'x 557 (9th Cir. 2008) .......... 22

*Toy v. Life Line Screening of Am. Ltd.*,
2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) .......... 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6

*Turner v. Nuance Commc'ns, Inc.*,
735 F.Supp.3d 1169 (N.D. Cal. 2024) .......... 22

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F.Supp.3d 1204 (C.D. Cal. 2017) .......... 21

*Washington v. Flixbus, Inc.*,
2025 WL 1592961 (S.D. Cal. June 5, 2025) .......... 10, 21

*Williams v. Apple, Inc.*,
2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ........ 18

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ........ 8

*Yunker v. Pandora Media, Inc.*,
2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ........ 21

*In re Zappos.com, Inc.*,
2013 WL 4830497 (D. Nev. Sept. 9, 2013) ........ 12

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ........ 21

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
525 F.Supp.3d 1017 (N.D. Cal. 2021) ........ 17

**Statutes**

18 U.S.C. § 2510(4) ........ 21

18 U.S.C. § 2511(1)(a) ........ 14

18 U.S.C. § 2511(2)(d) ........ 20, 21

18 U.S.C. § 2511(3)(a) ........ 14

18 U.S.C. § 2520 ........ 24

28 U.S.C. § 1404 ........ 5

Cal. Bus. & Prof. Code § 17208 ........ 24

Cal. Civ. Code § 1782(d) ........ 18

Cal. Civ. Code § 1798.150(a) ........ 19

Cal. Civ. Code § 1798.150(b) ........ 18

Cal. Civ. Code § 1798.150(c) ........ 19

Cal. Civ. Proc. Code § 335.1 ........ 24

Cal. Civ. Proc. Code § 337 ........ 24

Cal. Civ. Proc. Code § 338 ........ 24

Cal. Civ. Proc. Code § 340 ........ 24

Cal. Penal Code § 502(c) ........ 16

Cal. Penal Code § 502(e)(1) ... 17
Cal. Penal Code § 502(e)(5) ... 24
Cal. Penal Code § 631(a) ... 14, 20, 21, 22
Cal. Penal Code § 632(a) ... 14, 20, 22, 23
Tex. Civ. Prac. & Rem. Code § 16.003 ... 24
Tex. Civ. Prac. & Rem. Code § 16.004 ... 24

**Other Authorities**

12 C.F.R. § 1022.30(b) ... 8
Fed. R. Civ. P. 8 ... 20
Fed. R. Civ. P. 10 ... 20
Fed. R. Civ. P. 12(b)(1) ... 5
Fed. R. Civ. P. 12(b)(2) ... 24
Fed. R. Civ. P. 12(b)(6) ... 9

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Do Plaintiffs have Article III standing to bring claims based on allegations that a website shared their data where they consented to the data practices at issue and do not allege any concrete or particularized harm traceable to the company's website?

2. Can Plaintiffs assert claims premised on allegations that a website disclosed their data "without authorization" when they consented to the data practices at issue?

3. Can Plaintiffs bring claims for monetary relief based on their alleged use of a website when they agreed to a limitation-of-liability clause that exempts liability arising from any use of the website?

4. Can Plaintiffs bring California statutory claims when they agreed to a choice-of-law provision that requires the application of Texas law to claims arising from any use of the website?

5. Do Plaintiffs state a claim to relief where they fail to allege facts to plausibly plead any of the alleged claims?

6. Can a Plaintiff bring claims based on allegations that arose, if at all, outside of the applicable limitations periods?

7. Does this Court have personal jurisdiction over an out-of-state defendant for claims brought by an out-of-state plaintiff and premised on allegations that occurred out-of-state?

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This case joins a constellation of cases arising from the nearly ubiquitous use of advertising trackers on websites. Unlike most web tracking cases, though, Plaintiffs concede that they consented to the data practices at the heart of their kitchen-sink Complaint. While Plaintiffs' core theory is that Mr. Cooper discloses certain website interactions to third parties for advertising "without authorization," they admit they entered into "Privacy Contracts," in which they agreed that Mr. Cooper may do just that: "Third parties may [] use [tracking] technologies" for "[t]arget[ed] [a]dvertising," ECF 1-1, and Mr. Cooper may "share personal information, such as commercial info, internet activity, and inferences, with advertising and social media services to deliver personalized advertisements." RJN, Ex. 4. While Plaintiffs could have opted out of the alleged data sharing, they did not. Because the Complaint is premised entirely on the disclosures having been "unauthorized," it crumbles with Plaintiffs' consent. The Complaint fails for other reasons as a matter of law.

First, Plaintiffs lack standing to pursue any claims. Standing requires that Plaintiffs establish a concrete injury, that is traceable to Mr. Cooper. Plaintiffs do not. Plaintiffs consented to the alleged disclosures and so suffered no injury, and they do not plausibly allege that any of their private and financial information was actually disclosed such that any harm resulted, let alone that they were harmed by any supposed disclosure. Nor do they allege that any of the advertisements they claim to have received—which supposedly concerned the availability of mortgages and real estate listings at the time they admittedly were shopping for mortgages—even if an injury, were traceable to Mr. Cooper as opposed to any other more plausible source.

Second, Plaintiffs' claims for monetary relief are barred by the limitation-of-liability provision that each agreed to when creating an online account. That provision precludes recovery for damages "arising in connection with [Mr. Cooper's] [website] or use thereof." RJN, Ex. 1. Plaintiffs' claims arise in connection with the website, so they are barred from pursuing damages.

Third, for similar reasons, Plaintiffs' common-law and statutory claims fail. Although Plaintiffs' precise theories are difficult to pin down, all of their claims rest on generic allegations

that non-personal data was shared with third parties for advertising, which they claim might: breach unidentified contracts; be negligent or intentional; or violate statutes, including those with no private right of action. Plaintiffs' consent, again, precludes them from alleging a breach of any contractual or legal duty, and the claims each separately fail as a matter of law.

Finally, Plaintiffs Norwood's and Ayers' claims should be dismissed for additional reasons. This Court lacks personal jurisdiction over Norwoood's claims because there is no connection between her, Mr. Cooper, and the alleged tracking, with California. Ayers' claim is time-barred because her mortgage loan was transferred well before the applicable limitations periods.

The Complaint should be dismissed in its entirety, with prejudice.

## BACKGROUND

### A. Plaintiffs Allege that They Used Mr. Cooper's Website, But Do Not Allege that any of Their Data Was Collected.

Plaintiffs, New York and California citizens, allege that their mortgages were transferred to Mr. Cooper, a Delaware corporation headquartered in Dallas County, Texas. ECF 1 ¶¶ 17–20, 120, 125, 129. Plaintiffs do not allege when they had accounts with Mr. Cooper, although Mr. Cooper ceased servicing Plaintiff Ayers' mortgage in October 2019, RJN, Ex. 5, and Plaintiff Norwood admits she no longer has an account with Mr. Cooper. ECF 1 ¶ 129 (Plaintiff Norwood had an account "until the mortgage was repaid"). Plaintiffs allege that they opened online accounts with Mr. Cooper, and allege that they used their accounts to "review [their] account and manage [their] mortgage." *Id.* ¶¶ 121, 126, 130. They also allege that they researched refinancing options on Mr. Cooper's website. *Id.* ¶¶ 122, 126, 130. But nowhere do Plaintiffs allege that they input any personal, financial, or any particular information into the website. *See id.* ¶¶ 120–44.

Plaintiffs also do not allege that Mr. Cooper provided their information to anyone. Rather, they allege that its website has advertising trackers "to improve and save costs on its marketing campaigns, improve its data analytics, attract new customers, and generate sales." *Id.* ¶ 5. Plaintiffs do not allege that the trackers existed throughout the time period in any relevant state, let alone at the unidentified time Plaintiffs visited the website. *See id.* ¶¶ 55–76. Plaintiffs allege the trackers disclose users' interactions with Mr. Cooper's website to third parties like Meta, Google, and

Microsoft. *Id.* ¶ 140. Though they do not allege what, if any, information of theirs was shared, *id.* ¶¶ 120–44, they allege that the trackers could share private information, such as users' customer status, browsing activities, or "c_user cookie to identify a logged-in Facebook account," though none allege they were logged into Facebook when using Mr. Cooper's website. *Id.* ¶¶ 4, 55–105, 141(i). In fact, none of the screenshots they include show any private, personal, or financial information being transmitted to a third party. *Id.* ¶¶ 59–74.

Plaintiffs allege that after they opened online accounts, they received advertisements, including "reflecting private medical information," but do not allege that anything else came to pass. *Id.* ¶¶ 124, 128, 132, 178. Nor do they allege any facts that tie the advertisements to Mr. Cooper's website. *See id.*

### B. Plaintiffs Agreed to Mr. Cooper's Privacy Policies, Which Disclosed the Alleged Data Practices.

Plaintiffs allege that they entered into "Privacy Contracts" with Mr. Cooper—the Privacy Policy, Consumer Privacy Notice, and California Privacy Notice. ECF 1 ¶ 80 & ECF 1-1–1-3. The website also contains a State-Specific Privacy Policy, with California-required disclosures (collectively, the "Privacy Policies"). RJN, Ex. 4. These Privacy Policies disclose the data sharing practices Plaintiffs challenge:

**<u>The Privacy Policy</u>**, ECF 1-1; ECF 1 ¶¶ 82–86, discloses the website's use of tracking technologies and potential collection and sharing of data for "[t]arget[ed] [a]dvertising":

- **"Information Collection":** "We collect nonpublic personal information," including information "we receive from you," "about your transactions," and financial information.
- **"Information Use and Disclosure":** "We may disclose some or all of the information that we collect … with non-affiliated companies or other organizations."
- **"Cookies and other Technical Information":** "We may send 'cookies'" and "use tracking systems … which monitor your use of our Web sites" "for the purpose of transferring data," including browsing activities. "[I]f you choose to furnish [] our Web sites with [PII], [it] can be linked to the data stored in the cookies/Web beacons."
- **"Target Advertising":** "We may also use technologies to collect information about your online activities … to provide you with more relevant advertising …. Third parties may also use similar technologies to collect information about your online activities over time and across different third party sites, including your use of this Mr. Cooper website."

**<u>The State-Specific Privacy Notice</u>**, RJN, Ex. 4, includes "state-required disclosures" of

the website's potential collection and sharing of data "to deliver personalized advertising":

- **"Do you have or use any of my personal information?":** "[W]e collect and process a variety of information … depend[ing] on how you interact with our website," such as "whether you input your personal information into a webform to receive information about mortgage financing options," as well as PII, "internet activity," and "commercial information like the products/services you've purchased from us." Certain "personal information" is used for "marketing and advertising": "identifiers," "commercial info," "internet activity, and "inferences about you consumer preferences."
- **"How do you collect personal information?":** "We collect information from … cookies, webforms, advertising networks, and other online tools and technology."
- **"Do you sell/share information?":** "In some circumstances, we share personal information, such as commercial info, internet activity, and inferences, with advertising and social media services to deliver personalized advertisements."

**The Consumer Privacy Notice**, ECF 1-2; ECF 1 ¶¶ 87–90, discloses how and why Mr. Cooper collects and shares customers' personal information:

- "[W]e collect your personal information, for example, when you … apply for a loan … provide account information," etc.
- "[W]e can share your personal information … [f]or nonaffiliates to market to you."

**The California Privacy Notice**, ECF 1-3; ECF 1 ¶ 95, provides that Mr. Cooper may share personal information with nonaffiliated businesses:

- You may "restrict the sharing of personal and financial information with our affiliates and … outside companies we do business with."

The Privacy Policies also inform users how to "opt out of" "our cookies used for this online advertising" and "behavioral tracking on this website." ECF 1-1–1-3 (providing opt outs); RJN, Ex 4 ("You have the right to opt out of selling, sharing, and processing of personal information for targeted advertising purposes."). Plaintiffs do not allege they opted out. *See* ECF 1.

### C. Plaintiffs Agreed to Mr. Cooper's Terms, Which Limit Its Liability.

Plaintiffs also agreed to Mr. Cooper's Terms and Conditions. ECF 1 ¶¶ 30, 81 & nn. 8, 28; RJN, Ex. 2. The Terms instruct users to "READ THESE TERMS AND CONDITIONS CAREFULLY." RJN, Ex. 1. They then include a limitation-of-liability clause in bold and capitalized font:

> **Limitation of Liability**
> IN NO EVENT WILL MR. COOPER BE LIABLE FOR ANY DIRECT, INDIRECT, PUNITIVE, INCIDENTAL, SPECIAL OR CONSEQUENTIAL

> DAMAGES, LOSSES OR EXPENSES (WHETHER BASED IN CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE) … , ARISING IN CONNECTION WITH THIS SITE OR USE THEREOF …

*Id*. The Terms also provide for venue in Texas and the application of Texas law, including for claims arising from "use of the Mr. Cooper Websites."[1] *Id.*

**D. The Claims.**

Despite Plaintiffs' consent to Mr. Cooper's use of advertising trackers, Plaintiffs assert twelve claims based on the alleged trackers: five common-law claims, one California state-law computer fraud claim, one claim under the California Consumer Privacy Act, two state and federal wiretapping claims, two state-law consumer protection and unfair business practices claims, and a declaratory relief claim. ECF 1 ¶¶ 168–325.

## ARGUMENT

**I. <u>The Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Standing.</u>**

A court must dismiss a complaint under Rule 12(b)(1) if plaintiffs do not satisfy Article III standing. *Brown v. Christiana Tr.*, 722 F. App'x 702 (9th Cir. 2018). Plaintiffs bear the burden of establishing standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016), *as revised* (May 24, 2016). Plaintiffs may not, however, rely on "bare legal conclusion[s]" or an "academic exercise[s] in the conceivable" to establish standing. *In re German Auto. Mfrs. Antitrust Litig.*, 497 F.Supp.3d 745, 760 (N.D. Cal. 2020), *aff'd*, 2021 WL 4958987 (9th Cir. Oct. 26, 2021) (citation omitted). To establish standing, Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Because Plaintiffs do not allege any injury, nor one traceable to Mr. Cooper, the Complaint must be dismissed in its entirety.

**A. Plaintiffs Do Not Allege They Suffered an Injury in Fact.**

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). An injury is "particularized" if it "affect[s] the plaintiff in a personal and

[1] Mr. Cooper is filing a concurrent motion to transfer based on that provision and 28 U.S.C. § 1404.

individual way," and "concrete[]" if it is "'*de facto*'; that is, it must actually exist." *Larroque v. First Advantage LNS Screening Sols., Inc.*, 2016 WL 4577257, at *3 (N.D. Cal. Sept. 2, 2016). For statutory claims, a court still must find that "a plaintiff has suffered a concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). In other words, "an injury in law is not an injury in fact." *Id.* at 427; *see Rodriguez v. Autotrader.com, Inc.*, 762 F.Supp.3d 921, 926 (C.D. Cal. 2025) (a violation of CIPA is not an injury in fact; a plaintiff "must show she was concretely harmed").

No concrete harm exists here. As a threshold matter, Plaintiffs consented to the use of trackers, *see supra* pp. 3–4, which negates any concrete injury and requires dismissal of the Complaint in its entirety. *See Larroque*, 2016 WL 4577257, at *5 (plaintiff did not plead a "concrete harm" where she "consent[ed] to" the release of information and thus could not argue "her privacy was somehow invaded"); *see also Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1–2 (C.D. Cal. Apr. 4, 2025) (no standing where plaintiff lacked a reasonable expectation of privacy).

Nor, in any event, do Plaintiffs plausibly allege any collection of their personal information, "like when and how many times [they] visited the site, what information [they] provided[ or] what information Defendant captured," which is a predicate to alleging "concrete and particularized" harm. *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025) (dismissing CIPA claim), *appeal docketed*, No. 25-4990 (9th Cir. Aug. 7, 2025) (citation omitted). Although Plaintiffs generally allege that they "regularly use[] Mr. Cooper's Website to review [their] account and manage [their] mortgage" (and researched refinancing options), ECF 1 ¶¶ 121–30, the Complaint does not allege any collection, or even input, of their private information on those pages of the website (or even that there were any trackers on those pages at the unidentified time). This sinks their case because no injury can arise from the collection of information where Plaintiffs do not point to information that was actually collected. *See, e.g.*, *Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) (affirming dismissal of CIPA claim for failure to plead a concrete injury where plaintiff did "not allege that she herself actually made any communications that could have been intercepted once she had accessed the website"); *Rodriguez*, 762 F.Supp.3d at 926–27 (dismissing CIPA claim for the same reason where plaintiff alleged "her query contained 'confidential' and 'private' information," but did not

"describe the contents of her query"); *Mitchener v. Talkspace Network LLC*, 2025 WL 1822801, at *8 (C.D. Cal. June 27, 2025) (dismissing complaint for the same reason where plaintiff did "not identify what personal information of Plaintiff's, if any, was captured by the [tracker]"). And their general allegations about certain information the website *could collect*, ECF 1 ¶¶ 55–76, also do not plead an *actual injury* to Plaintiffs. *Daghaly*, 2024 WL 5134350, at *1 ("general allegations about how [the website] intercepts website visitors' communications and monitors their actions" do not remedy "sparse" "allegations about [the plaintiff's] own interactions with the [website]"); *CuriosityStream*, 2025 WL 2272413, at *5 (allegations "that Defendants *could* gain" personal information and "*could* intrude on Plaintiff's right to privacy" does not "convert that hypothetical into concrete harm to *him*"); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025), *appeal docketed*, No. 25-4452 (9th Cir. July 17, 2025) (same); *see also Nguyen v. Abbott Lab'ys, Inc.*, 2025 WL 2299753, at *5–6 (N.D. Ill. Aug. 8, 2025) (dismissing Wiretap Act claim; "Plaintiffs explain the technology behind the tracking tools in great detail, but their hypothetical examples don't shed light on whether each plaintiff's disclosures plausibly amount to" private information, including because "[m]erely browsing and searching [the] website doesn't amount to a disclosure of individually identifiable health information").[2]

For instance, they allege the collection of medical information (ECF 1 ¶¶ 178, 191, 226), but point to no such information that they shared with Mr. Cooper; they allege the collection and sharing of whether they are a customer of Mr. Cooper (*id.* ¶¶ 62, 141(a)), but point to no such actual disclosure and forget that that mortgages are a matter of public record[3]; they allege the sharing of IP addresses and web browser information (*id.* ¶ 43), for which they have no reasonable expectation of privacy; and they allege the website collected their "c_user cookie to identify a logged-in Facebook account" (*id.* ¶ 141(i)), but do not allege that they were ever logged into Facebook. In fact, none of the information Plaintiffs allege is private, as opposed to the "mere 'collection of basic

[2] The *Nguyen* plaintiffs alleged that they "conduct[ed] searches … related to [their] medical condition,'" 2025 WL 2299753, at *5–6—*i.e.*, information that is far more sensitive than Plaintiffs allege here. But, "[w]ithout allegations about what individual disclosures were made …, plaintiffs fail[ed] to plausibly allege that [defendant] received HIPAA-protected information." *Id.*

[3] *See Petrovich v. Ocwen Loan Servicing, LLC*, 2016 WL 555959, at *3 (N.D. Cal. Feb. 12, 2016), *aff'd*, 716 F. App'x 614 (9th Cir. 2017) (taking judicial notice of deeds of trust and mortgage-related documents as matters of public record).

contact information'" or that "plaintiffs merely visited the website," which "*are not concrete harms*.'" *CuriosityStream*, 2025 WL 2272413, at *4 (emphasis added) (citation omitted); *see Carolus v. Nexstar Media Inc.*, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (allegations that defendant tracked "browser and device data" and "other identifying information" did not plead injury); *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *2, *4 (S.D.N.Y. Feb. 13, 2025) (dismissing CIPA case for lack of standing because "[f]ederal courts have widely [] held" that website tracking "to analyze Website data and marketing campaigns, conduct targeted advertising, and ultimately boost Defendant's and advertisers' revenue" is not injury).

And though Plaintiffs list various categories of supposed "harms"—*e.g.*, "[l]oss of privacy," "[u]nauthorized disclosure of" and "[u]nauthorized access to" their personal information, receipt of "advertisements," "[l]ost benefit of their bargain," "[e]mbarrassment, humiliation, frustration, and emotional distress," "[d]ecreased value" of their personal information, ECF 1 ¶¶ 144, 175, 190, 271—each is speculative at best, and the type of conclusory pleading that courts repeatedly reject. *See, e.g.*, *Kishnani*, 2025 WL 1745726, at *3 ("Plaintiff cannot establish constitutional standing based on conclusory statements."); *Perlaki v. J.B. Poindexter & Co.*, 2025 WL 754503, at *3 (S.D. Tex. Mar. 10, 2025) (allegations of heightened risk of identity theft and fraud, lost time and possible future expenses, and diminished value of PII "too speculative" to be a "concrete harm").

Finally, Plaintiffs' sole factual allegation of receiving advertisements, ECF 1 ¶¶ 124, 128, 132, 178, 191—without any allegation of harm—does not plead an injury. *See, e.g.*, *Xu*, 2025 WL 488501, at *3 (plaintiff lacked standing absent allegation he was "concretely harmed by any such advertising"). That is particularly so here: Plaintiffs complain they received "advertisements reflecting *private medical information*" and "*for specific medical conditions*," ECF 1 ¶¶ 178, 191 (emphasis added); but do not allege that they gave medical information to Mr. Cooper, which as a mortgage servicer is prohibited from requesting such information. 12 C.F.R. § 1022.30(b).

### B. Plaintiffs Do Not Allege any Injury Traceable to Mr. Cooper.

Plaintiffs also do not allege any injuries traceable to Mr. Cooper. Traceability requires "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly … trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent

action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (citation omitted); *see Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015) (same).

Again, Plaintiffs' sole factual allegation of injury is that they received advertisements concerning mortgages and real estate listings at a time they were allegedly shopping for mortgages. ECF 1 ¶¶ 124, 128, 132, 178, 191. But those advertisements, even if an injury, cannot be fairly traced to Mr. Cooper because Plaintiffs fail to plausibly allege a non-conclusory connection between the advertisements and Mr. Cooper. This is particularly the case here because there are many reasons why Plaintiffs may have received them—for example as a result of researching real estate listings, mortgage financing with other lenders, submission of medical information online elsewhere, etc.— and none of the Plaintiffs allege that they searched for mortgage refinance options exclusively through Mr. Cooper's website. *See* ECF 1. This renders any causal link to Mr. Copper "speculative." *Physicians Comm. for Responsible Med. v. Vilsack*, 2023 WL 1873084, at *6 (N.D. Cal. Feb. 9, 2023) (finding no traceability "in light of the many other factors").[4]

And traceability is particularly lacking absent particularized allegations about each Plaintiff's alleged visits to Mr. Cooper's website. This is because their "general allegation[s] … without more, permit[] only 'a speculative chain of possibilities' linking [their] alleged harm and Defendant['s] conduct." *Henderson v. Reventics, LLC*, 2024 WL 5241386, at *8 (D. Colo. Sept. 30, 2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)); *see Fernandez v. Leidos, Inc.*, 127 F.Supp.3d 1078, 1086 (E.D. Cal. 2015) (advertisements were not traceable to defendant absent allegations the information was stolen in its data breach). Tracing the alleged advertisements to Mr. Cooper's website would require a leap the Court may not make. *Fernandez*, 127 F.Supp.3d at 1087 (courts may not confer standing based on attenuated inferences).

**II. <u>The Complaint Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim.</u>**

A court must dismiss a complaint under Rule 12(b)(6) if plaintiffs fail to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

[4] Notably, Plaintiffs' counsel has sued other mortgage lenders for use of the same trackers, further belying that any advertisements could be traceable to Mr. Cooper and no other more plausible source. *Idris v. Lakeview Loan Serv., LLC*, No. 3:25-cv-5087 (N.D. Cal. filed June 16, 2025); *Allison v. United Wholesale Mortg.*, No. 3:25-cv-5377 (N.D. Cal. filed June 26, 2025); *Allison v. PHH Mortg.*, No. 3:25-cv-5323 (N.D. Cal. filed June 25, 2025).

544, 570 (2007). As with standing, a court accepts well-pled allegations as true, but need not accept legal conclusions or conclusory assertions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

**A. Plaintiffs' Consent to the Alleged Data Practices Bars All of Their Claims.**[5]

Consent is fatal to all of Plaintiffs' claims. Plaintiffs' claims are premised on allegations that Mr. Cooper disclosed their information to third parties "without … authorization." ECF 1 ¶¶ 1–16, 168–325; *see also id.* ¶ 150 (alleging putative classes of individuals whose information was disclosed "without authorization"). But through the Privacy Policies—which Plaintiffs allege are "contracts," *id.* ¶ 80—Plaintiffs agreed to Mr. Cooper's use of the tracking technologies. As explained, the Privacy Policies explicitly disclose that Mr. Cooper may share customer data, including the precise data at issue, with third parties for advertising purposes. *See supra* pp. 3–4; *e.g.*, ECF 1-1 ("[t]hird parties may also use [tracking] technologies" for "[t]arget [a]dvertising"); RJN, Ex. 4 ("we share personal information, such as … internet activity, and inferences, with advertising and social media services to deliver personalized advertisements"). In other words: Plaintiffs consented to the alleged disclosures that premise all of their claims. Those claims, then, must be dismissed. *See, e.g.*, *Lakes v. Ubisoft, Inc.*, 777 F.Supp.3d 1047, 1054 (N.D. Cal. 2025) (dismissing complaint alleging third-party sharing of information through trackers because plaintiffs "consented to, and were informed of, the use of cookies and pixels on the Website" through privacy policies), *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025); *Washington v. Flixbus, Inc.*, 2025 WL 1592961, at *4 (S.D. Cal. June 5, 2025) (same).[6]

To the extent Plaintiffs may cite to *Shah v. Capital One Financial Corp.*, 768 F.Supp.3d 1033 (N.D. Cal. 2025), it does not compel a different result. The privacy policies there did not disclose that the company "releases that customer's personal information" at issue. *Id.* at 1044.

[5] The Court need not determine for purposes of this motion the state law that applies to Plaintiffs' claims, particularly since the common-law claims "are not meaningfully distinct." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *14 (D.N.J. Dec. 16, 2021). However, to the extent the law diverges, this Court should follow Texas law because Plaintiffs agreed to the Terms, which contain a Texas choice-of-law provision. RJN, Ex. 1.

[6] Likewise, Plaintiffs' conclusory allegations that the alleged tracking was "entirely without their knowledge or authorization," *e.g.*, ECF 1 ¶ 3, must be "disregard[ed]" because they are "contradicted by facts established in exhibits attached to the complaint." *Flores v. EMC Mortg. Co.*, 997 F.Supp.2d 1088, 1102 (E.D. Cal. 2014) (citation omitted); *see also Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) ("[W]e need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." (cleaned up)).

Here, in contrast, the Privacy Policies informed Plaintiffs that Mr. Cooper could share *all* of the information at issue in the Complaint, which forecloses all of their claims.

**B. Plaintiffs' Claims Are Barred by the Terms' Limitation-of-Liability Clause.**

The Limitations Clause bars all of Plaintiffs' claims for monetary relief. Plaintiffs agreed to the Terms, and its Limitations Clause, by opening online accounts. *Supra* p. 4. To create an account, Plaintiffs must click "Save and Continue," above which reads: "By clicking 'Save and Continue,' you agree to the Terms of Use for Mr. Cooper's website" (where "Terms of Use" is blue and hyperlinked to the Terms). RJN, Ex. 2. The Ninth Circuit has found this exact assent enforceable. *See, e.g.*, *Lee v. Ticketmaster, L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) (plaintiff assented to the Terms of Use by clicking a "Sign In" button with "Terms of Use" in blue font and hyperlinked); *Capps v. JPMorgan Chase Bank, N.A.*, 2023 WL 3030990 (E.D. Cal. Apr. 21, 2023) (similar); *Phillips v. Neutron Holdings, Inc.*, 2019 WL 4861435, at *4–5 (N.D. Tex. Oct. 2, 2019) (similar).

By agreeing to the Terms, Plaintiffs agreed that Mr. Cooper would not be liable for "damages, losses or expenses … arising in connection with this site or use thereof." RJN, Ex. 1. Plaintiffs' claims here arise based on their use of the website, and thus fall squarely within the Limitations Clause. *Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 675–77 (9th Cir. 2018) (claims that YouTube removed plaintiff's video and view count barred by the Terms' limitations provision); *Price v. Apple, Inc.*, 2023 WL 2671378, at *4 (N.D. Cal. Mar. 28, 2023) (finding that, even if the plaintiff had stated a breach of contract claim, "his claims are nevertheless barred by [defendant's] limitation of liability provision"); *Bass v. Facebook, Inc.*, 394 F.Supp.3d 1024, 1038 (N.D. Cal. 2019) (breach of contract and breach of confidence claims barred by same). Such "limitation-of-liability clauses are generally valid and enforceable." *Rothwell v. Marshall Creek Ranch, LLC*, 2025 WL 973939, at *5 (E.D. Tex. Feb. 11, 2025), *report and recommendation adopted*, 2025 WL 965754 (E.D. Tex. Mar. 31, 2025) (cleaned up); *see also Darnaa*, 756 F. App'x at 675–76 ("[l]imitation of liability clauses 'have long been recognized as valid in California'" (citations omitted)). Indeed, "a party may contractually waive *even constitutional or statutory rights, whether present or future*" through a limitations clause, particularly given the "'strongly embedded public policy favoring freedom of contract.'" *Rothwell*, 2025 WL 973939, at *5–9

(citation omitted). The Limitations Clause therefore bars Plaintiffs' claims for monetary relief.

**C. Plaintiffs' Common-Law Claims Fail as a Matter of Law (Counts 1, 2, 6, 7, 9).**

Plaintiffs assert five common-law claims against Mr. Cooper: negligence, negligence per se, breach of express and implied contract, unjust enrichment, and breach of confidence. Each of these claims additionally should be dismissed because Plaintiffs do not state a valid claim.

**1. Plaintiffs Do Not Plead any Breach of Contract (Count 6).**

Plaintiffs' claim for "breach of express and implied contact" fails under both theories.

First, Plaintiffs' claim for breach of express contract fails because they do not identify any contract that was breached, let alone the particular contractual provision. *See, e.g.*, *Shah*, 768 F.Supp.3d at 1050 (dismissing contract claim where plaintiffs "fail[ed] to cite to any specific section of the contract that Defendant allegedly violated"); *AdvoCare Int'l, L.P. v. Hardy*, 2010 WL 11618798, at *4 (N.D. Tex. Sept. 30, 2010) (same for failure to specify which contract was breached). While Plaintiffs *elsewhere* plead the various Privacy Policies as contracts, ECF 1 ¶ 80, they do not allege that Mr. Cooper breached them, or which one, or which particular provision.

In any event, Plaintiffs do not plausibly allege any breach. Though Plaintiffs generally allege that Mr. Cooper "agreed to safeguard and protect" their information, ECF 1 ¶ 242, "unilateral statements of fact alleged as to the safety of customers' data do not create any contractual obligations." *In re Zappos.com, Inc.*, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013). Nor can they allege any breach because they only plead disclosures Plaintiffs agreed to under the Privacy Policies. *In re Google Assistant Priv. Litig.*, 457 F.Supp.3d 797, 833 (N.D. Cal. 2020) (contract claim failed, as plaintiffs must plead conduct outside that set forth in privacy policy).

Second, Plaintiffs do not plead an implied contract claim because the alleged implied promises are identical to the express contract. ECF 1 ¶ 242 (alleging the express and implied contracts both "agreed to safeguard and protect" Plaintiffs' information). This also mandates dismissal. *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1095–96 (N.D. Cal. 2022) (dismissing implied contract claims because plaintiffs alleged an express contract for the subject).

And like the express contract, Plaintiffs do not allege any details whatsoever about the implied contract. ECF 1 ¶¶ 241–43. But saying there is an implied contract without more is

insufficient. *See In re Anthem, Inc. Data Breach Litig.*, 162 F.Supp.3d 953, 982 (N.D. Cal. 2016) (dismissing implied contract claim absent allegations as to its nature and scope); *HDI Glob. Specialty SE v. Coreslab Structures (Tex.) Inc.*, 2021 WL 1226561, at *3 (W.D. Tex. Mar. 31, 2021), *report and recommendation adopted*, 2021 WL 2843842 (W.D. Tex. May 19, 2021) (implied contracts are "evidenced by the parties' conduct and course of dealing" citations omitted)).

**2. The Unjust Enrichment Claim Should Be Dismissed (Count 7).**

Plaintiffs' unjust enrichment claim fails as a matter of law. First, unjust enrichment is not a cause of action. *See Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *8 (N.D. Cal. Jul. 28, 2021) ("[i]n California, there is no independent claim for unjust enrichment"); *Hancock v. Chi. Title Ins. Co.*, 635 F.Supp.2d 539, 560 (N.D. Tex. 2009) (same under Texas law).

Second, Plaintiffs' claim is duplicative of their breach of contract claim. *Compare* ECF 1 ¶ 249 (alleging Plaintiffs conferred a benefit when Mr. Cooper disclosed their information to third parties), *with id.* ¶ 245 (alleging Mr. Cooper breached contracts by doing the same). Because Plaintiffs do not plead those contracts are invalid, the claim must be dismissed. *See, e.g.*, *Libman v. Apple, Inc.*, 2024 WL 4314791, at *12 (N.D. Cal. Sept. 26, 2024) (dismissing unjust enrichment claim where plaintiffs alleged an express contract); *Daniels v. Alphabet Inc.*, 2021 WL 1222166, at *10 (N.D. Cal. Mar. 31, 2021) (same).

Third, any data sharing is not unjust because Plaintiffs consented to it. *Supra* pp. 3–4. That too requires dismissal. *See, e.g.*, *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 n.6 (9th Cir. 2018) (affirming dismissal of unjust enrichment claim based on consent); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 946 (N.D. Cal. 2023) (dismissing unjust enrichment claim because "Defendant did not collect information … contrary to expectations created by the consent process").

**3. The Breach of Confidence Claim Is Insufficiently Pled (Count 9).**

Plaintiffs' breach of confidence claim fails for similar reasons. Under California law, a breach of confidence claim cannot lie where an express contract is alleged. *Sawicky v. AMC Networks Inc.*, 753 F. App'x 501, 502 (9th Cir. 2019) (affirming dismissal of breach of confidence claim); *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) (the claims are "mutually exclusive"). Because Plaintiffs allege an express contract, ECF 1 ¶¶ 241–43, their breach of

confidence claim must be dismissed. And under Texas law, a breach of confidence claim is a "mirror[]" of a misappropriation of trade secrets claim. *Richter v. Carnival Corp.*, 2019 WL 5894213, at *7 (N.D. Tex. Nov. 12, 2019). Plaintiffs, therefore, must allege (1) a trade secret and (2) acquisition of such secret through breach of confidence or improper means. *GlobeRanger Corp. v. Software AG*, 27 F.Supp.3d 723, 747–48 (N.D. Tex. 2014), *aff'd*, 836 F.3d 477 (5th Cir. 2016). Plaintiffs allege no such thing, which requires dismissal.

**4. The Negligence Claim Should Be Dismissed (Count 1).**

Plaintiffs cannot plead the elements of a negligence claim: (1) a duty; (2) breach of the duty; (3) proximate cause; and (4) damages. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009); *Hanan v. Crete Carrier Corp.*, 2020 WL 42269, at *2 (N.D. Tex. Jan. 3, 2020).

First, Plaintiffs cannot allege a duty because the Complaint alleges intentional conduct, not negligence, and must be dismissed for that reason. Plaintiffs' fundamental claim is that Mr. Cooper intentionally installed trackers on its website to collect and disclose Plaintiffs' information for money. *See, e.g.*, ECF 1 ¶ 3 ("Mr. Cooper used its Website to *blatantly* collect and disclose" information "by *knowingly* and secretly configuring and implementing" trackers), ¶ 33 (Mr. Cooper "*purposely* and secretly installed" trackers "to gather and share information"), ¶ 93 (Mr. Cooper "acts in a manner *that it knows* to be inconsistent with its Customers' reasonable expectations") (emphases added). In fact, Plaintiffs' wiretapping claims *require* intent. Cal. Penal Code §§ 631(a), 632(a); 18 U.S.C. § 2511(1)(a), (3)(a) (prohibiting "intentional" conduct); *see Doe I v. Google LLC*, 741 F.Supp.3d 828, 840–44 (N.D. Cal. 2024) (CIPA liability only extends to willful or intentional conduct). Because "intentional conduct cannot support a claim for negligence," the claim must be dismissed. *Lam v. Target Corp.*, 2017 WL 4154947, at *8 (E.D. Cal. Sept. 19, 2017); *see, e.g.*, *Alston v. Cnty. of Sacramento*, 2012 WL 2839825, at *15 (E.D. Cal. July 10, 2012), *report and recommendation adopted*, 2012 WL 3205142 (E.D. Cal. Aug. 3, 2012) (dismissing negligence claim due to alleged intentional conduct).

Second, Plaintiffs do not allege any cognizable damages. They generally allege damages in the form of "advertisements reflecting private medical information"; "diminution in value" of their data; "embarrassment, humiliation, frustration, and emotional distress"; "lost time and money";

"value" in keeping information "private"; "increased risk of future harm"; and "other injuries." ECF 1 ¶ 178. To start, such conclusory allegations of harm do not suffice. *See R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 897–98 (C.D. Cal. 2024) (dismissing negligence claims based on disclosure of private information because allegations of "loss of the benefit of the bargain, increased infiltrations into [] privacy through spam and targeted advertising …, loss of privacy, loss of confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life" and loss of "economic value of the information" were vague and conclusory). Regardless, Plaintiffs do not allege any such instances of harm (including medical information). *Supra* pp. 4–5.

Nor, in any event, do they constitute actual damages as a matter of law. *See, e.g.*, *B.K. v. Eisenhower Med. Ctr.*, 721 F.Supp.3d 1056, 1069 (C.D. Cal. 2024), *on reconsideration in other part*, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) (dismissing negligence claim based on unwanted advertisements, wrongful disclosure, and diminution in value of data); *see also Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021) (affirming dismissal of negligence claims because "lost time," "emotional distress," and "diminution of the value of her personal information" were not compensable damages); *Morales v. Conifer Revenue Cycle Sols., LLC*, 2025 WL 1096396, at *4 (C.D. Cal. Mar. 31, 2025) ("general claims of emotional distress are too speculative, conclusory, and vague to support a claim for negligence").

*B.K.* is on all fours. 721 F.Supp.3d at 1066–69. There, plaintiffs alleged that a healthcare website had trackers that sent plaintiffs' health information to third parties, and that plaintiffs began receiving "unsolicited advertisements … relating to their medical conditions shortly after visiting the Website." *Id.* at 1061–62. The court rejected plaintiffs' claims that they were damaged when "their Private Information was wrongfully divulged and misused" and suffered a "loss of the value of their Private Information," as insufficient to support a negligence claim. *Id.* at 1069.

**5. Plaintiffs' Negligence Per Se Claim Fails as a Matter of Law (Count 2).**

Plaintiffs' negligence per se claim fails for two reasons. First, it is not a separate cause of action. *Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263, at *5 (N.D. Cal. Mar. 19, 2024) ("To the extent [plaintiff] is asserting a negligence per se claim separate from her negligence claim, the motion to dismiss the negligence per se claim is granted without leave to amend."); *McGruder*

*v. Target Corp.*, 2020 WL 6504570, at *2 (N.D. Tex. Nov. 5, 2020) ("[n]egligence per se is not a separate cause of action independent of [] common-law negligence"). Because Plaintiffs plead a negligence claim, ECF 1 ¶¶ 168–81, the negligence per se claim must be dismissed.

Second, Plaintiffs improperly predicate their claim on the FTC Act and GLBA, ECF 1 ¶¶ 184, 189, which do not contain a private right of action. This independently requires dismissal. *See, e.g.*, *Smith v. Am. Pain & Wellness, PLLC*, 747 F.Supp.3d 989, 1004 (E.D. Tex. 2024) (dismissing negligence per se claim because "[t]he FTC Act does not create a private cause of action"); *Pica v. Delta Air Lines, Inc.*, 2018 WL 5861362, at *9 (C.D. Cal. Sept. 18, 2018) (same). A finding otherwise would "contraven[e] the legislative scheme." *Rider v. Uphold HQ Inc.*, 657 F.Supp.3d 491, 503 (S.D.N.Y. 2023) (dismissing negligence per se claim premised on GLBA and FTC Act).

**D. Plaintiffs' California Statutory Claims Fail (Counts 3–5, 10).**

**1. Plaintiffs' Statutory Claims are Barred by the Choice-of-Law Provision (Counts 3–5, 10).**

Plaintiffs expressly agreed, when creating accounts, that Texas law applies to any claims relating to their "use of the Mr. Cooper websites." ECF 1 ¶¶ 120, 125, 129; RJN, Exs. 1–2. Because Texas law applies, the California statutory claims are barred. *See, e.g.*, *King v. Bumble Trading, Inc.*, 393 F.Supp.3d 856, 867 (N.D. Cal. 2019) (enforcing New York choice-of-law provisions and dismissing California statutory claim without leave to amend); *It's Just Lunch Int'l LLC. v. Island Park Enter. Grp., Inc.*, 2008 WL 4683637, at *6 (C.D. Cal. Oct. 21, 2008) (dismissing California statutory claim as barred due to choice-of-law provision). However, even if they could apply California law, Plaintiffs do not allege a viable claim as a matter of law.

**2. Plaintiffs' California Computer Fraud Claim Fails (Count 3).**

Plaintiffs fail to plead a claim under California's Computer Data Access and Fraud Act for several reasons. First, Plaintiffs' CDAFA claim should be dismissed because they do not allege that Mr. Cooper accessed their computers "without permission," Cal. Penal Code § 502(c), which requires Mr. Cooper to have "'circumvent[ed] technical or code-based barriers in place to restrict or bar [] access.'" *NovelPoster v. Javitch Canfield Grp.*, 140 F.Supp.3d 938, 950 (N.D. Cal. 2014); *see In re Facebook Priv. Litig.*, 791 F.Supp.2d 705, 716 (N.D. Cal. 2011) (CDAFA claims require

showing that defendants "circumvented technical barriers"), *aff'd*, 572 F. App'x 494 (9th Cir. 2014). Plaintiffs allege that Mr. Cooper does so because it did not disclose the data sharing in its privacy policies. ECF 1 ¶¶ 79–97. But written terms or agreements are not technical or code-based barriers. *See Enki Corp. v. Freedman*, 2014 WL 261798, at *3 (N.D. Cal. Jan. 23, 2014) (violation of the "terms of use" is not "overcom[ing] some technical or code barrier"). And even if they were, the data practices were disclosed and authorized by Mr. Cooper's Privacy Policies. *Supra* pp. 4–5.

Nor can Plaintiffs allege that Mr. Cooper "overcame any technical or code-based barriers" *on its own website*. *Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023). While Plaintiffs use "the nefarious-sounding terms 'intercepts' and 'diverts,'" Mr. Cooper "would not have encountered any barriers considering that [it] controlled the Website." *Id.*; *see also In re Facebook Priv. Litig.*, 791 F.Supp.2d at 716 (dismissing CDAFA claim for "nonconsensual transmissions" of user data from the website to third parties, because "there were clearly no technical barriers blocking [d]efendant from accessing its own website").

Second, Plaintiffs do not allege any qualifying "damage or loss." Cal. Penal Code § 502(e)(1). "Loss" may include "costs related to fixing a computer, lost revenue, or other consequential damages incurred due to an interruption of computer services." *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023). Instead, Plaintiffs allege a lack of data protection, diminution of the value of their data, and Mr. Cooper's alleged benefit. ECF 1 ¶ 204. But those theories are squarely foreclosed. *See Cottle v. Plaid Inc.*, 536 F.Supp.3d 461, 488 (N.D. Cal. 2021) ("the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data" is not "damage or loss"); *see also Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1082 (N.D. Cal. 2023) (a diminution of the value of disclosed information was not a loss or damage); *In re Google Assistant Priv. Litig.*, 546 F.Supp.3d 945, 972 (N.D. Cal. 2021) ("[t]hat Defendants were able to monetize and profit from the unauthorized recordings does not give rise to an inference that Plaintiffs 'lost money or property'" for CDAFA). And even if viable, Plaintiffs here do not allege any non-conclusory allegations of damage or loss.[7]

[7] Plaintiffs also do not allege anything unjust about any retention of a benefit given their consent. *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F.Supp.3d 1017, 1044 (N.D. Cal. 2021).

**3. Plaintiffs' UCL Claim Fails (Count 4).**

Plaintiffs' claim under California's Unfair Competition Law fails for similar reasons. To have statutory standing, Plaintiffs must "establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). Again, Plaintiffs allege no injury or lost money. ECF 1 ¶ 204; *see Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (dismissing UCL claim; "just because Plaintiffs' data is valuable in the abstract, and [defendant] might have made money from it, does not mean that Plaintiffs have 'lost money or property'"). Nor is Plaintiffs' claim of a "property interest," ECF 1 ¶ 216, cognizable as a matter of law. *In re Facebook Priv. Litig.*, 791 F.Supp.2d at 714 (dismissing UCL claim; "personal information does not constitute property for [] a UCL claim"); *Swarts v. Home Depot, Inc.*, 689 F.Supp.3d 732, 748 (N.D. Cal. 2023) (same).

The UCL claim also should be dismissed because Plaintiffs do not plead that they lack an adequate remedy at law. *See* ECF 1 ¶¶ 207–20. Nor can they, since Plaintiffs other claims provide an adequate remedy. *See, e.g.*, *Hamm v. Mercedes-Benz USA, LLC*, 2022 WL 913192, at *2 (N.D. Cal. Mar. 29, 2022) ("the availability of an adequate legal remedy is clear from the face of the SAC and dictates dismissal of the UCL claim"); *Williams v. Apple, Inc.*, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020) (dismissing UCL claim absent allegations that legal remedies are inadequate).

**4. Plaintiffs Do Not State a Claim Under the CCPA (Count 5).**

Plaintiffs' claim under the California Consumer Privacy Act fail too.[8] First, Plaintiffs admit that they did not send the required pre-suit notice. ECF 1 ¶ 238 ("Plaintiffs will send Defendant notice … after the date of this filing"). Plaintiffs cannot, then, proceed with their CCPA claim, as Plaintiffs may only bring a claim if, "prior to initiating any action . . . , a consumer provides a business 30 days' written notice." Cal. Civ. Code § 1798.150(b). This is a strict requirement: failure to adhere to the "30-days' written notice [requirement]" before initiating litigation requires dismissal of the complaint. *Id.*; *see Griffey v. Magellan Health Inc.*, 2022 WL 1811165, at *6 (D.

---

[8] Dismissal of the CCPA claim should be with prejudice. The California legislature could have allowed for amendment of a complaint after compliance with the notice period, as it did for the CLRA, but did not. *Cf.* Cal. Civ. Code § 1782(d) (within 30 days of filing suit and after providing notice, "the consumer may amend his or her complaint … to include a request for damages").

Ariz. June 2, 2022) (dismissing CCPA claim for failure to comply with the notice period and rejecting that plaintiff could remedy the defect by "amending his complaint").

Second, Plaintiffs do not allege any violation of Section 1798.150—the only CCPA provision with a private right of action. Cal. Civ. Code § 1798.150(c) ("[t]he cause of action … shall apply only to violations as defined in subdivision (a) and shall not be based on violations of any other section of this title"). Nor can they, as they do not allege any "unauthorized access and exfiltration, theft, or disclosure" of "nonencrypted and nonredacted personal information" due to a "violation of the duty to implement and maintain reasonable security procedures and practices." Cal. Civ. Code § 1798.150(a). Instead, Plaintiffs cite Section 1798.115 (ECF 1 ¶ 232), which does not provide a private right of action. As such, Plaintiffs' CCPA claim must be dismissed. *Hayden v. Retail Equation, Inc.*, 2022 WL 2254461, at *4–5 (C.D. Cal. May 4, 2022), *reconsideration on other grounds*, 2022 WL 3137446 (C.D. Cal. July 22, 2022) (dismissing with prejudice CCPA claims under Sections 1798.100(b), 110(c), and 115(d), absent a private right of action).

Nor do Plaintiffs' generalized allegations that Mr. Cooper breached "Cal. Civ. Code § 1798.100, *et seq.*," ECF 1 ¶ 231, suffice, as Plaintiffs do not allege any "unauthorized access and exfiltration, theft, or disclosure" of "nonencrypted and nonredacted personal information" due to a "violation of the duty to implement and maintain reasonable security procedures and practices." Cal. Civ. Code § 1798.150(a), (c); *see* ECF 1 ¶¶ 230–39. Rather, Plaintiffs expressly allege that the trackers were installed due to a business decision to "improve and to save costs on its marketing campaigns, improve its data analytics, attract new customers, and generate sales" (ECF 1 ¶ 5), which is inconsistent with the data being disclosed due to inadequate security. *See Hayden*, 2022 WL 2254461, at *5 (dismissing Section 1798.150(a) claim because the disclosure of data "was a business decision to combat retail fraud," not due to a failure to implement and maintain reasonable security measures); *see also Maag v. U.S. Bank, Nat'l Ass'n*, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (dismissing CCPA claim absent "facts to support the notion that Defendant's security was deficient"); *Griffey v. Magellan Health Inc.*, 562 F.Supp.3d 34, 57 (D. Ariz. 2021) (dismissing CCPA claim for failure to "allege sufficient facts to establish how or why [defendant's] systems were inadequate or unreasonable").

### E. Plaintiffs' Wiretap Act and CIPA Claims Fail (Counts 10–12).

Plaintiffs bring federal Wiretap Act claims for unauthorized interception under Section 2511(1) and unauthorized disclosure under Section 2511(3)(a), and violation of the California Invasion of Privacy Act generally. ECF 1 ¶¶ 274–325. The claims fail as a matter of law.

#### 1. The CIPA Claim Must Be Dismissed Under Rule 8.

Plaintiffs' CIPA claim does not identify which sections of CIPA were allegedly violated, let alone under which theory. ECF 1 ¶¶ 274–94. This runs afoul of Rule 8's "requirement that the complaint 'give the defendant fair notice of what the claim ... is and the grounds upon which it rests,'" and Rule 10's requirement that "each claim founded on a separate transaction or occurrence ... must be stated in a separate count." *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *5 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (citations omitted). Thus, the court in *Martin* court dismissed plaintiff's claim for violation of CIPA "Section 631(a)" because plaintiff did "not identify separate counts for each theory under which she claims Defendant violated CIPA." *Id.* (noting that Section 631(a) "identifies four distinct and separate theories of recovery"). Worse here, Plaintiffs allege violations of two distinct laws within CIPA within one claim—Section 632(a) *and* Section 631(a)—*and* do not identify which Section 631(a) clause among four possibilities that they contend was violated *and* "'which specific facts are allocated to which claim.'" *Id.*; *see* ECF 1 ¶¶ 276–77. Such "shotgun pleading" does not provide Mr. Cooper adequate notice, and warrants dismissal.[9] *Id.*

#### 2. The CIPA and Wiretap Act Claims Fail Because Plaintiffs Consented to the Sharing of Their Data.

As described above, Plaintiffs' consent to the alleged tracking bars their claims. *Supra* pp. 10–11. Indeed, such consent is dispositive of their CIPA and Wiretap Act claims. Cal. Penal Code §§ 631(a), 632(a) (prohibiting only interceptions "without the consent" of parties to the communication); 18 U.S.C. § 2511(2)(d) (excepting from liability interceptions where "one of the parties to the communication has given prior consent"), (3)(b)(ii) (permitting disclosure of the

[9] Mr. Cooper cannot discern whether Plaintiffs plead a direct or aiding-and-abetting theory. *Compare* ECF 1 ¶¶ 77, 148, 223 (alleging Mr. Cooper intercepted communication), *with id.* ¶¶ 136, 284 (alleging Mr. Cooper aiding third-party interception). This falls far short of any fair notice.

contents of a communication "with the lawful consent of the originator"). Courts, therefore, routinely dismiss wiretapping claims where the plaintiffs consented through privacy policies. *See, e.g.*, *Lakes*, 777 F.Supp.3d at 1054; *Washington*, 2025 WL 1592961, at *4 (both dismissing CIPA and Wiretap Act claims because plaintiff consented to the tracking through privacy policies).

The Wiretap Act claims also should be dismissed because Mr. Cooper consented to the alleged disclosures. The Wiretap Act is a one-party consent statute. 18 U.S.C. § 2511(2)(d). Here, Plaintiffs allege that the communications were "interactions with" Mr. Cooper's website, making Mr. Cooper a party to the communications. *E.g.*, ECF 1 ¶¶ 4, 48, 60, 288, 302; *see also id.* ¶ 297 (defining the communications as "transmissions of Plaintiffs' [information] to Defendant's Website"). Mr. Cooper's consent defeats the Wiretap Act claim. *See, e.g.*, *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *9 (S.D. Cal. Feb. 13, 2025) (dismissing Wiretap Act Section 2511(1) claim where "only reasonable inference that can be drawn" is that recipient consented to interception); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (same); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *8 (N.D. Cal. Mar. 26, 2013) (dismissing Wiretap Action Section 2511(3)(a) claim under party exception rule).

**3. The CIPA (Section 631(a)) and Wiretap Act Claims Also Fail Because They Do Not Allege an Interception in Transit.**

Plaintiffs' CIPA (Section 631(a)) and both Wiretap Act claims also fail because they do not allege the interception of a communication in transit.[10] 18 U.S.C. § 2510(4); Cal. Penal Code § 631(a); *see Vizio*, 238 F.Supp.3d at 1228 n.9 (noting that courts have generally construed CIPA "as coextensive with the Wiretap Act"). For a communication to be "intercepted," "it must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ("intercept" requires "acquisition contemporaneous with

[10] Both Wiretap Act claims require a showing of interception. *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F.Supp.3d 1072, 1094 (W.D. Wash. 2024) (both Sections 2511(1) and 2511(3) require an intentional interception); *see In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1228 (C.D. Cal. 2017) (dismissing Section 2511(1) claim because the "conclusory allegation that [defendant] intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how [the] data collection occurs 'in real-time'"); *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *10 (C.D. Cal. May 29, 2007) (server log data was not a transmission under Section 2511(3)(1), which prohibits disclosure of electronic communications intercepted during transmission).

transmission”).

Plaintiffs do not allege any such interception. Though their precise theory is unclear, *supra* note 9, they appear to allege that Mr. Cooper aided third parties in intercepting communications. ECF 1 ¶¶ 282–90. But, any such interception is not in transit because they expressly allege that Mr. Cooper received the information and then separately sent it to a third party after. *Id.* ¶¶ 63–76 (Mr. Cooper sends Google and Microsoft information *after* receipt); *id.* ¶ 279 (Mr. Cooper “record[ed]” communications “and *then* transmitted such information to Third Parties”) (emphasis added). Mr. Cooper’s alleged prior receipt belies any interception in transit. *See, e.g.*, *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) (affirming dismissal of Section 631(a) claim because the defendant “could have only read … [the] text after it was received … , so the text could not have been accessed ‘in transit’”); *Swarts*, 689 F.Supp.3d at 746 (dismissing Section 631(a) claim, as “conclusory allegations” did not “dispel the notion that [the third party] receives the information ‘*after* the chat reaches’” the website owner). And Plaintiffs’ conclusory allegations cannot save them. *See Licea v. Am, Eagle Outfitters, Inc.*, 659 F.Supp.3d 1072, 1085 (C.D. Cal. 2023) (“Plaintiffs must provide more than conclusory allegations that messages were intercepted ‘during transmission and in real time’”).[11]

#### 4. The CIPA (Section 632(a)) Claim Fails Because Plaintiffs Do Not Sufficiently Allege Eavesdropping or Recording.

Plaintiffs also cannot plead any that Mr. Cooper “eavesdrop[ped] upon or record[ed]” a “communication,” as required to state a CIPA (Section 632(a)) claim. Cal. Penal. Code § 632(a).

First, Mr. Cooper could not have eavesdropped on its own communications. *Thomasson v. GC Servs. Ltd. P’ship*, 321 F. App’x 557, 559 (9th Cir. 2008) (“‘eavesdrop,’ as used in § 632, [] refer[s] to a third party secretly listening to a conversation between two other parties”); *see, e.g.*, *Turner v. Nuance Commc’ns, Inc.*, 735 F.Supp.3d 1169, 1182 (N.D. Cal. 2024) (“a party cannot

[11] Plaintiffs also fail to state a claim under Section 631(a)’s four clauses, although it is unclear which (if any) Plaintiffs claim was violated. *Supra* note 9. This is material because clause one, for example, does not apply to tracking technologies. *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025). And to the extent Plaintiffs plead direct liability under the first three clauses, those claims fail under the “direct party” exception because Mr. Cooper is a party to the communications. *See, e.g.*, *Byars v. Hot Topic, Inc.*, 656 F.Supp.3d 1051, 1066 (C.D. Cal. 2023) (noting that only an aiding and abetting theory could apply).

'eavesdrop' on their own conversation under the first prong of section 632"). And to the extent Plaintiffs claim that Mr. Cooper aided and abetted a third party in eavesdropping in violation of Section 632, those allegations are insufficient because Plaintiffs do not plead that Mr. Cooper had knowledge of a third party's conduct in eavesdropping and provided substantial assistance in that eavesdropping. *Smith v. YETI Coolers, LLC*, 754 F.Supp.3d 933, 944 (N.D. Cal. 2024) (dismissing claim asserting aiding and abetting liability under CIPA Section 632).

Second, Plaintiffs' conclusory allegations that Mr. Cooper "recorded" communications, ECF 1 ¶¶ 280, 282, lack any factual support. Such bald allegations cannot sustain a Section 632(a) claim. *See, e.g.*, *Rodriguez v. ByteDance, Inc.*, 2025 WL 672951, at *8 (N.D. Ill. Mar. 3, 2025) (dismissing Section 632 claim because "conclusory allegations of 'eavesdropping' and 'recording' … lack sufficient detail"). That is particularly so given Plaintiffs' failure to allege facts about their own interactions with Mr. Cooper's website. *See, e.g.*, *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *6 (E.D. Cal. June 9, 2025) (dismissing Section 632 claim absent "sufficient factual information regarding her interactions with Defendant's Website").

### F. Plaintiffs' Claim for Declaratory Relief Should Be Dismissed (Count 8).

Because Plaintiffs' declaratory judgment claim seeks the same relief as their substantive claims, it must be dismissed. It is well-settled that when "a plaintiff has alleged a substantive cause of action, a declaratory relief claim should not be used as a superfluous second cause of action for the determination of identical issues subsumed within the first." *Shin v. ICON Found.*, 2021 WL 1893117, at *12 (N.D. Cal. May 11, 2021) (citation omitted); *Domain Prot., LLC v. Sea Wasp, LLC*, 2019 WL 6255733, at *6 (E.D. Tex. Nov. 22, 2019) (a declaratory judgment should not "'be permitted' if the request 'adds nothing to an existing lawsuit'") (citation omitted).

Here, Plaintiffs seek declarations that Mr. Cooper (1) owes a legal duty to secure customers' information, and (2) breaches that duty by disclosing information to third parties, ECF 1 ¶ 259—*i.e.*, the same relief they seek through their substantive claims. *Id.* ¶¶ 170–76, 186–89, 197–203, 211–17, 233–37, 241–45, 279–91, 302–12, 319–24. In fact, the proposed declarations are *identical to* those sought through their negligence claims. *Compare id.* ¶ 259 (alleging Mr. Cooper breached duties under state law, Section 5 of the FTC Act, and the GLBA), *with* ¶¶ 170–76, 184–89 (same).

Plaintiffs' declaratory relief claim must be dismissed. *See, e.g.*, *Shin*, 2021 WL 1893117, at *12 (dismissing declaratory relief claim as "needlessly duplicative" of the substantive claims); *In re Google Assistant Priv. Litig.*, 546 F.Supp.3d at 975–76 (same); *Landscape Design & Constr., Inc. v. Transp. Leasing/Cont., Inc.*, 2002 WL 257573, at *10 (N.D. Tex. Feb. 19, 2002) (same).

Moreover, the declaratory relief claim is improperly premised on the FTC Act and GLBA, which do not provide a private right of action. The Declaratory Judgment Act does not afford "relief where no cause of action otherwise exits." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 877–79 (9th Cir. 2022) (dismissing claim seeking declaration of duties owed under statute lacking a private right of action). And to the extent it is premised on Plaintiffs' other claims, it falls with those deficient claims. *See Hammerling*, 615 F.Supp.3d at 1097 ("'if the underlying claims are dismissed … then there is no basis for any declaratory relief'") (citation omitted).

**G. Plaintiff Ayers' Claims Are Time-Barred.**

Finally, Plaintiff Ayers' claims are time-barred. She alleges Mr. Cooper "bought out" her mortgage. ECF 1 ¶ 125. But her loan was transferred to another loan servicer in October 2019. RJN, Ex. 5. The limitations period for her claims ranges from one to four years.[12] Because she did not file her Complaint until May 2025—more than four years after any relationship with Mr. Cooper—her claims are time-barred and must be dismissed with prejudice. *See, e.g.*, *Gueye v. Wells Fargo Bank*, 2023 WL 3668521, at *2 (N.D. Cal. May 24, 2023) (dismissing claims as time-barred). It is no excuse to claim that Ayers "could not with due diligence have discovered" the use of the undisclosed trackers (ECF 1 ¶ 147) because their use was specifically disclosed in the Privacy Policies that Ayers agreed to and could have read with bare minimum due diligence.

## III. Plaintiff Norwood's Claims Should Be Dismissed Under Rule 12(b)(2) for Lack of Personal Jurisdiction.

Plaintiff Norwood's claims also should be dismissed because this Court lacks personal jurisdiction over Mr. Cooper. Neither Norwood nor Mr. Cooper have any tie to California as it

[12] *See* Cal. Civ. Proc. Code ("CCP") § 340 (one year for CIPA); 18 U.S.C. § 2520 (two years for Wiretap Act); Tex. Civ. Prac. & Rem. Code ("TCPRC") § 16.003(a), CCP § 335.1 (two years for negligence); TCPRC § 16.003 (two years for unjust enrichment); Cal. Penal Code § 502(e)(5) (three years for CDAFA); Cal. Bus. & Prof. Code § 17208 (four years for UCL); CCP § 338 (three years for CCPA and unjust enrichment); TCPRC § 16.004, CCP § 337 (four years for breach of contract).

relates to her claims. Courts "have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (citation omitted). Plaintiff Norwood alleges neither.

The Court does not have general jurisdiction over Mr. Cooper, a Delaware corporation whose principal place of business is in Texas. ECF 1 ¶ 20; *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." (cleaned up)).

Nor does the Court have specific jurisdiction. Norwood, is a New York resident, and does not allege that any of the acts occurred in California. ECF 1 ¶¶ 19, 129–32. As such, she has not established specific personal jurisdiction over Mr. Cooper in California. *E.g.*, *McKee v. Audible, Inc.*, 2018 WL 11263238, at *7 (C.D. Cal. Mar. 12, 2018) (no personal jurisdiction for out-of-state named plaintiff's claims that arose out-of-state).

It is no response that other named Plaintiffs are residents of California. "In the context of class actions, 'it is ... well settled that [the] requirements [of personal jurisdiction and venue] must be satisfied *for each and every named plaintiff* for the suit to go forward.'" *Id.* (citation omitted); *see also Sharpe v. Puritan's Pride, Inc.*, 2019 WL 188658, at *4 (N.D. Cal. Jan. 14, 2019) (the court must "[r]equir[e] each named plaintiff to establish specific personal jurisdiction over defendants in this Court"). Thus, a court should dismiss the claims of named plaintiffs who do not establish personal jurisdiction, notwithstanding other named plaintiffs. *See, e.g.*, *King v. Bumble Trading, Inc.*, 2020 WL 663741, at *8 (N.D. Cal. Feb. 11, 2020) (granting motion to dismiss out-of-state named plaintiff's claims); *McKee*, 2018 WL 11263238, at *8–10, 20 (same, and noting that "Plaintiffs' 'collective' theory of specific jurisdiction runs counter to the rule that personal jurisdiction, like venue, must be assessed for each named Plaintiff").

## CONCLUSION

For all of these reasons, the Court should dismiss the Complaint with prejudice.

Dated: August 18, 2025

Respectfully submitted,

By: */s/ W. Kyle Tayman*

W. KYLE TAYMAN (admitted *pro hac vice*)
*KTayman@goodwinlaw.com*
ALLISON J. SCHOENTHAL (admitted *pro hac vice*)
*ASchoenthal@goodwinlaw.com*
REBECCA L. TARNEJA (SBN 293461)
*RTarneja@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the clerk of the court for the United States District Court for the Northern District of California by using the CM/ECF system on August 18, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. I certify under penalty of perjury that the foregoing is true and correct.

Dated: August 18, 2025

*/s/ W. Kyle Tayman*
W. KYLE TAYMAN