ALLISON J. SCHOENTHAL (admitted *pro hac vice*)
*ASchoenthal@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel.: +1 212 459 7183
Fax: +1 212 937 3850

W. KYLE TAYMAN (admitted *pro hac vice*)
*KTayman@goodwinlaw.com*
**GOODWIN PROCTER LLP**
1900 N Street, N.W.
Washington, DC 20036-1612
Tel.: +1 202 346 4000
Fax: +1 202 346 4444

REBECCA L. TARNEJA (SBN 293461)
*RTarneja@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 South Figueroa Street, Suite 4100
Los Angeles, California 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

Attorneys for Defendant
Nationstar Mortgage LLC d/b/a Mr. Cooper

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| MARTIN BELTRAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER,<br><br>        Defendant. | Case No. 3:25-cv-04412-JSC<br><br>**DEFENDANT MR. COOPER'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing: January 29, 2026<br>Time: 10:00 a.m.<br>Location: 8, 19th Floor<br>Judge: Honorable Jacqueline Scott Corley |

Goodwin Procter LLP
Attorneys at Law

Mr. Cooper's MTD Am. Compl.
Case No. 3:25-cv-04412-JSC

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on January 29, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Jacqueline Scott Corley, United States District Judge, in Courtroom 8, 19th Floor of the San Francisco Courthouse, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper") will, and hereby does, move to dismiss Plaintiff Martin Beltran's ("Plaintiff") Amended Complaint, ECF 26 (the "Complaint"), without leave to amend.

This motion is made pursuant to pursuant to Federal Rules of Civil Procedure 12(b)(1), on the grounds that this Court lacks subject matter jurisdiction over the Complaint because Plaintiff lacks Article III standing; and 12(b)(6), on the grounds that Plaintiff fails to state any claim upon which relief may be granted.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, Request for Judicial Notice in Support of the Motion ("RJN"), Declaration of Edward W. Larroca and Exhibits 1–3 thereto, and all papers from this case on file with the Court, all other matters of which the Court may take judicial notice, any further evidence or argument offered to the Court at any hearing on this Motion, and any other evidence and argument the Court may consider.

Dated: October 8, 2025

Respectfully submitted,

By:  */s/ W. Kyle Tayman*
W. KYLE TAYMAN (admitted *pro hac vice*)
*KTayman@goodwinlaw.com*
ALLISON J. SCHOENTHAL (admitted *pro hac vice*)
*ASchoenthal@goodwinlaw.com*
REBECCA L. TARNEJA (SBN 293461)
*RTarneja@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Defendant

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ...................................................................... i

STATEMENT OF THE ISSUES TO BE DECIDED ................................................................... xii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

BACKGROUND ........................................................................................................................... 2

    A.    Plaintiff Alleges that He Used Mr. Cooper's Website, But Does Not Allege that any of His Data Was Disclosed. ....................................................................................................... 2

    B.    Plaintiff Agreed to Mr. Cooper's Alleged Data Practices. ................................................ 3

    C.    Plaintiff Agreed to Mr. Cooper's Terms, Which Limit Its Liability. ................................ 4

    D.    The Claims. ........................................................................................................................ 5

ARGUMENT ................................................................................................................................. 5

I.    The Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Standing. ................. 5

    A.    Plaintiff Does Not Allege He Suffered an Injury in Fact. ................................................. 5

    B.    Plaintiff Does Not Allege any Injury Traceable to Mr. Cooper. ....................................... 9

II.    The Complaint Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim... 10

    A.    Plaintiff's Consent to the Alleged Data Practices Bars All of His Claims. ..................... 10

    B.    Plaintiff's Claims Are Barred by the Terms' Limitation-of-Liability Clause. ................ 11

    C.    Plaintiff's Common-Law Claims Fail as a Matter of Law (Counts 1, 5, 6, 7). .............. 12

        1.    Plaintiff Does Not Plead any Breach of Contract (Count 5). ........................................... 12

        2.    The Unjust Enrichment Claim Should Be Dismissed (Count 6). ..................................... 13

        3.    The Breach of Confidence Claim Is Insufficiently Pled (Count 7). ................................ 14

        4.    The Negligence Claim Should Be Dismissed (Count 1). ................................................. 14

    D.    Plaintiff's California Statutory Claims Fail (Counts 2–4, 8–10). .................................... 16

        1.    Plaintiff's Statutory Claims Are Barred by the Choice-of-Law Provision (Counts 2–4, 8–10). ................................................................................................................................... 16

        2.    Plaintiff's California Computer Fraud Claim Fails (Count 2). ........................................ 16

        3.    Plaintiff's UCL Claim Fails (Count 3). ........................................................................... 17

        4.    Plaintiff Does Not State a Claim Under the CCPA (Count 5). ........................................ 18

    E.    Plaintiff's Wiretap Act and CIPA Claims Fail (Counts 8–12). ....................................... 19

        1.    The CIPA and Wiretap Act Claims Fail Because Plaintiff Consented to the Sharing of His Data (Counts 8–12). ....................................................................................................... 19

        2.    The CIPA (Section 631(a)) and Wiretap Act Claims Fail Because They Do Not Allege the "Contents" of a Communication (Counts 8, 11–12). ..................................................... 20

        3.    The CIPA (Section 631(a)) and Wiretap Act Claims Also Fail Because They Do Not Allege an Interception in Transit (Counts 8, 11–12). ......................................................... 21

4.   The CIPA (Section 631(a)) Claim Fails, as Plaintiff Does Not Allege that Mr. Cooper "Aided" or "Conspired" with Third Parties (Count 8). ......................................... 22

5.   The CIPA (Section 632(a)) Claim Fails Because Plaintiff Does Not Sufficiently Allege Eavesdropping or Recording (Count 9). .................................................................... 23

6.   The CIPA (Section 638.51) Claim Fails (Count 10). ..................................................... 23

7.   The Wiretap Act (Section 2511(3)(a)) Claim Fails (Count 12). ................................... 25

F.   Plaintiff's Claims Are Time-Barred (Counts 1–2, 4, 6–12). ................................................ 25

CONCLUSION ............................................................................................................................... 25

Goodwin Procter LLP
Attorneys at Law

iii

Mr. Cooper's MTD Am. Compl.
Case No. 3:25-cv-04412-JSC

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*AdvoCare Int'l, L.P. v. Hardy*,
5
    2010 WL 11618798 (N.D. Tex. Sept. 30, 2010)........................................................ 12

6

*Allison v. PHH Mortg.*,
7
    No. 3:25-cv-5323 (N.D. Cal. filed June 25, 2025)..................................................... 9

8

*Allison v. United Wholesale Mortg.*,
    No. 3:25-cv-5377 (N.D. Cal. filed June 26, 2025)..................................................... 9

9

*Alston v. Cnty. of Sacramento*,
10
    2012 WL 2839825 (E.D. Cal. July 10, 2012), *report and recommendation*
    *adopted*, 2012 WL 3205142 (E.D. Cal. Aug. 3, 2012) ........................................... 15

11

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
12
    2021 WL 5937742 (D.N.J. Dec. 16, 2021) .............................................................. 10

13

*In re Anthem, Inc. Data Breach Litig.*,
14
    162 F.Supp.3d 953 (N.D. Cal. 2016) ............................................................... 12, 13

15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................. 10

16

*B.K. v. Eisenhower Med. Ctr.*,
17
    721 F.Supp.3d 1056 (C.D. Cal. 2024), *on reconsideration in other part*, 2024
    WL 2037404 (C.D. Cal. Apr. 11, 2024) ........................................................... 15, 16

18

*Bass v. Facebook, Inc.*,
19
    394 F.Supp.3d 1024 (N.D. Cal. 2019) .................................................................... 11

20

*Bell Atl. Corp. v. Twombly*,
21
    550 U.S. 544 (2007).............................................................................................. 10

22

*Berkla v. Corel Corp.*,
    302 F.3d 909 (9th Cir. 2002).................................................................................. 14

23

*Birdsong v. Apple, Inc.*,
24
    590 F.3d 955 (9th Cir. 2009).................................................................................. 17

25

*Boulton v. Community.com, Inc.*,
    2025 WL 314813 (9th Cir. Jan. 28, 2025) ............................................................. 22

26

*Brodsky v. Apple Inc.*,
27
    445 F.Supp.3d 110 (N.D. Cal. 2020) ..................................................................... 20

28

*Brown v. Christiana Tr.*,
   722 F. App'x 702 (9th Cir. 2018) ........................................................................ 5

*Capps v. JPMorgan Chase Bank, N.A.*,
   2023 WL 3030990 (E.D. Cal. Apr. 21, 2023) ...................................................... 11

*Carolus v. Nexstar Media Inc.*,
   2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ........................................................ 8

*Casillas v. Transitions Optical, Inc.*,
   2024 WL 4873370 (Cal. Super. Ct. Sep. 9, 2024) .............................................. 24

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ............................................................................................ 9

*Columbia Pictures Indus. v. Bunnell*,
   2007 WL 2080419 (C.D. Cal. May 29, 2007) .................................................... 22

*Corales v. Bennett*,
   567 F.3d 554 (9th Cir. 2009) ............................................................................. 14

*Cottle v. Plaid Inc.*,
   536 F.Supp.3d 461 (N.D. Cal. 2021) ................................................................. 17

*Crowley v. CyberSource Corp.*,
   166 F.Supp.2d 1263 (N.D. Cal. 2001) ............................................................... 25

*Custom Packaging Supply, Inc. v. Phillips*,
   2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ...................................................... 16

*Daghaly v. Bloomingdales.com, LLC*,
   2024 WL 5134350 (9th Cir. Dec. 17, 2024) .................................................... 6, 7

*Daniels v. Alphabet Inc.*,
   2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) ................................................... 13

*Darnaa, LLC v. Google LLC*,
   756 F. App'x 674 (9th Cir. 2018) ................................................................. 11, 12

*Doe I v. Google LLC*,
   741 F.Supp.3d 828 (N.D. Cal. 2024) ................................................................. 14

*Doe v. Meta Platforms, Inc.*,
   690 F.Supp.3d 1064 (N.D. Cal. 2023) ............................................................... 17

*In re Facebook Priv. Litig.*,
   791 F.Supp.2d 705 (N.D. Cal. 2011) ................................................................. 17

*Fernandez v. Leidos, Inc.*,
   127 F.Supp.3d 1078 (E.D. Cal. 2015) ........................................................... 9, 10

*Gardiner v. Walmart, Inc.*,
  2021 WL 4992539 (N.D. Cal. July 28, 2021) ......................................................... 13

*Garner v. Amazon.com, Inc.*,
  603 F.Supp.3d 985 (W.D. Wash. 2022) ................................................................... 16

*GlobeRanger Corp. v. Software AG*,
  27 F.Supp.3d 723 (N.D. Tex. 2014), *aff'd*, 836 F.3d 477 (5th Cir. 2016) ............. 14

*Gonzales v. Uber Techs., Inc.*,
  305 F.Supp.3d 1078 (N.D. Cal. 2018) ................................................................... 16

*In re Google Assistant Priv. Litig.*,
  457 F.Supp.3d 797 (N.D. Cal. 2020) ..................................................................... 12

*In re Google Assistant Priv. Litig.*,
  546 F.Supp.3d 945 (N.D. Cal. 2021) ..................................................................... 17

*Griffey v. Magellan Health Inc.*,
  2022 WL 1811165 (D. Ariz. June 2, 2022) ............................................................ 18

*Griffey v. Magellan Health Inc.*,
  562 F.Supp.3d 34 (D. Ariz. 2021) ......................................................................... 19

*Gueye v. Wells Fargo Bank*,
  2023 WL 3668521 (N.D. Cal. May 24, 2023) ....................................................... 25

*Gutierrez v. Converse Inc.*,
  2025 WL 1895315 (9th Cir. July 9, 2025) ............................................................. 20

*Hamm v. Mercedes-Benz USA, LLC*,
  2022 WL 913192 (N.D. Cal. Mar. 29, 2022) ......................................................... 18

*Hammerling v. Google LLC*,
  615 F.Supp.3d 1069 (N.D. Cal. 2022) ............................................................ 13, 21

*Hanan v. Crete Carrier Corp.*,
  2020 WL 42269 (N.D. Tex. Jan. 3, 2020) .............................................................. 14

*Hancock v. Chi. Title Ins. Co.*,
  635 F.Supp.2d 539 (N.D. Tex. 2009) ..................................................................... 13

*Hayden v. Retail Equation, Inc.*,
  2022 WL 2254461 (C.D. Cal. May 4, 2022), *reconsideration on other
  grounds*, 2022 WL 3137446 (C.D. Cal. July 22, 2022) ................................... 18, 19

*Hazel v. Prudential Fin., Inc.*,
  2023 WL 3933073 (N.D. Cal. June 9, 2023) .......................................................... 17

*HDI Glob. Specialty SE v. Coreslab Structures (Tex.) Inc.*,
  2021 WL 1226561 (W.D. Tex. Mar. 31, 2021), *report and recommendation
  adopted*, 2021 WL 2843842 (W.D. Tex. May 19, 2021) ........................................................ 13

*Heinz v. Amazon.com, Inc.*,
  760 F.Supp.3d 1183 (W.D. Wash. 2024) ........................................................................ 16

*Henderson v. Reventics, LLC*,
  2024 WL 5241386 (D. Colo. Sept. 30, 2024) ................................................................... 9

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ...................................................................................... 13

*Hughes v. Ben and Jerry's Homemade, Inc.*,
  2025 WL 2306840 (Cal. Super. Ct. Aug. 1, 2025) ........................................................... 15

*Hutson v. Am. Home Mortg. Servicing, Inc.*,
  2009 WL 3353312 (N.D. Cal. Oct. 16, 2009) ............................................................. 8, 14

*Idris v. Lakeview Loan Servicing, LLC*,
  No. 3:25-cv-5087 (N.D. Cal. filed June 16, 2025) ............................................................ 9

*It's Just Lunch Int'l LLC. v. Island Park Enter. Grp., Inc.*,
  2008 WL 4683637 (C.D. Cal. Oct. 21, 2008) .................................................................. 16

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F.Supp.3d 928 (N.D. Cal. 2023) ............................................................................. 13

*Khamooshi v. Politico LLC*,
  2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .................................................................... 8

*King v. Bumble Trading, Inc.*,
  393 F.Supp.3d 856 (N.D. Cal. 2019) ............................................................................. 16

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
  2025 WL 1635419 (E.D. Cal. June 9, 2025) .............................................................. 21, 23

*Kishnani v. Royal Caribbean Cruises Ltd.*,
  2025 WL 1745726 (N.D. Cal. June 24, 2025), *appeal docketed*, No. 25-4452
  (9th Cir. July 18, 2025) ....................................................................................... 7, 8, 24

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ...................................................................................... 21

*Lakes v. Ubisoft, Inc.*,
  777 F.Supp.3d 1047 (N.D. Cal. 2025), *appeal docketed*, No. 25-2857 (9th Cir.
  May 2, 2025) ................................................................................................... 10, 20

*Lam v. Target Corp.*,
  2017 WL 4154947 (E.D. Cal. Sept. 19, 2017) ................................................................. 15

*Larroque v. First Advantage LNS Screening Sols., Inc.*,
   2016 WL 4577257 (N.D. Cal. Sept. 2, 2016) ........................................................ 5, 6

*Lee v. Ticketmaster, L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020) .............................................................................. 11

*Libman v. Apple, Inc.*,
   2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ........................................................ 13

*Licea v. Hickory Farms LLC*,
   2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024)................................................. 24

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)..................................................................................................... 9

*Maag v. U.S. Bank, Nat'l Ass'n*,
   2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) ............................................................ 19

*Mikulsky v. Bloomingdale's, LLC*,
   713 F.Supp.3d 833 (S.D. Cal. 2024) ........................................................................ 21

*Mitchener v. CuriosityStream, Inc.*,
   2025 WL 2272413 (N.D. Cal. Aug. 6, 2025), *appeal docketed*, No. 25-4990
   (9th Cir. Aug. 7, 2025) ...................................................................................... 7, 8, 24

*Mitchener v. Talkspace Network LLC*,
   2025 WL 1822801 (C.D. Cal. June 27, 2025) ............................................................ 6

*Nguyen v. Abbott Lab'ys, Inc.*,
   2025 WL 2299753 (N.D. Ill. Aug. 8, 2025)................................................................ 7

*Nienaber v. Overlake Hosp. Med. Ctr.*,
   733 F.Supp.3d 1072 (W.D. Wash. 2024).................................................................. 21

*Novak v. United States*,
   795 F.3d 1012 (9th Cir. 2015)..................................................................................... 9

*Perlaki v. J.B. Poindexter & Co.*,
   2025 WL 754503 (S.D. Tex. Mar. 10, 2025) .............................................................. 8

*Phillips v. Neutron Holdings, Inc.*,
   2019 WL 4861435 (N.D. Tex. Oct. 2, 2019) ............................................................ 11

*Physicians Comm. for Responsible Med. v. Vilsack*,
   2023 WL 1873084 (N.D. Cal. Feb. 9, 2023).............................................................. 9

*Popa v. Microsoft Corp.*,
   – F.4th –, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) ............................................ 1, 6, 7, 8

Goodwin Procter LLP
Attorneys at Law

viii

Mr. Cooper's MTD Am. Compl.
Case No. 3:25-cv-04412-JSC

*Pratt v. Higgins*,
   2023 WL 4564551 (N.D. Cal. July 17, 2023) ........................................................................ 17

*Price v. Apple, Inc.*,
   2023 WL 2671378 (N.D. Cal. Mar. 28, 2023) ...................................................................... 11

*Pruchnicki v. Envision Healthcare Corp.*,
   845 F. App'x 613 (9th Cir. 2021) ........................................................................................ 15

*R.C. v. Walgreen Co.*,
   733 F.Supp.3d 876 (C.D. Cal. 2024) .................................................................................. 15

*Revitch v. New Moosejaw, LLC*,
   2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....................................................................... 23

*Richter v. Carnival Corp.*,
   2019 WL 5894213 (N.D. Tex. Nov. 12, 2019) ...................................................................... 14

*Rodriguez v. Autotrader.com, Inc.*,
   2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ........................................................................... 6

*Rodriguez v. Autotrader.com, Inc.*,
   762 F.Supp.3d 921 (C.D. Cal. 2025) ...................................................................................... 6

*Rodriguez v. Ford Motor Co.*,
   722 F.Supp.3d 1104 (S.D. Cal. 2024) .................................................................................. 23

*Rodriguez v. Google LLC*,
   2021 WL 2026726 (N.D. Cal. May 21, 2021) ................................................................. 20, 23

*Rothwell v. Marshall Creek Ranch, LLC*,
   2025 WL 973939 (E.D. Tex. Feb. 11, 2025), *report and recommendation
   adopted*, 2025 WL 965754 (E.D. Tex. Mar. 31, 2025) ................................................... 11, 12

*Sanchez v. Cars.com Inc.*,
   2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) ................................................................. 24

*Sawicky v. AMC Networks Inc.*,
   753 F. App'x 501 (9th Cir. 2019) ........................................................................................ 14

*Shah v. Capital One Financial Corp.*,
   768 F.Supp.3d 1033 (N.D. Cal. 2025) ............................................................................ 11, 12

*Smith v. Facebook, Inc.*,
   745 F. App'x 8 (9th Cir. 2018) ........................................................................................ 6, 11

*Smith v. YETI Coolers, LLC*,
   754 F.Supp.3d 933 (N.D. Cal. 2024) .............................................................................. 22, 23

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016), *as revised* (May 24, 2016) ........................................................ 5

*Swarts v. Home Depot, Inc.*,
    689 F.Supp.3d 732 (N.D. Cal. 2023) ......................................................... 17, 22, 23

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................................ 5, 6

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F.Supp.3d 1204 (C.D. Cal. 2017) ........................................................... 22

*Washington v. Flixbus, Inc.*,
    2025 WL 1592961 (S.D. Cal. June 5, 2025) ................................................ 10, 20

*Williams v. Apple, Inc.*,
    2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ..................................................... 18

*Xu v. Reuters News & Media Inc.*,
    2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ................................................ 8, 9, 24

*Yoon v. Lululemon USA, Inc.*,
    549 F.Supp.3d 1073 (C.D. Cal. 2021) ............................................................ 21

*Yoon v. Meta Platforms, Inc.*,
    2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .................................................. 23

*Yunker v. Pandora Media, Inc.*,
    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .................................................. 20

*In re Zappos.com, Inc.*,
    2013 WL 4830497 (D. Nev. Sept. 9, 2013) .................................................... 12

*Zarif v. Hwareh.com, Inc.*,
    2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .................................................... 20

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
    525 F.Supp.3d 1017 (N.D. Cal. 2021) .......................................................... 17

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ................................................................... 20

**Statutes**

18 U.S.C. § 2510 ............................................................................................. 25

18 U.S.C. § 2511 .......................................................................... 14, 19, 29, 25

18 U.S.C. § 2520 ............................................................................................. 25

28 U.S.C. § 1404 ............................................................................................. 5

Cal. Bus. & Prof. Code § 17208 ................................................................................. 25

Cal. Civ. Code § 1782 ............................................................................................... 18

Cal. Civ. Code § 1798.145 ........................................................................................ 19

Cal. Civ. Code § 1798.150 ............................................................................... 18, 19

Cal. Civ. Proc. Code § 335.1 .................................................................................... 25

Cal. Civ. Proc. Code § 337 ....................................................................................... 25

Cal. Civ. Proc. Code § 338 ....................................................................................... 25

Cal. Civ. Proc. Code § 340 ....................................................................................... 25

Cal. Penal Code § 502 ..................................................................................... 16, 17, 25

Cal. Penal Code § 631 ........................................................................... 14, 19, 20, 21, 22

Cal. Penal Code § 632 .................................................................................... 14, 19, 23

Cal. Penal Code § 638.51 .......................................................................................... 19

Tex. Civ. Prac. & Rem. Code § 16.003 ..................................................................... 25

Tex. Civ. Prac. & Rem. Code § 16.004 ..................................................................... 25

1

## <u>STATEMENT OF THE ISSUES TO BE DECIDED</u>

2          1.       Does Plaintiff have Article III standing to bring claims based on allegations that a

3    website shared his data where he consented to the data practices at issue and does not allege any

4    concrete or particularized harm traceable to the company's website?

5          2.       Can Plaintiff assert claims premised on allegations that a website disclosed his data

6    "without authorization" when he consented to the data practices at issue?

7          3.       Can Plaintiff bring claims for monetary relief based on his alleged use of a website

8    when he agreed to a limitation-of-liability clause that exempts liability arising from any use of the

9    website?

10          4.       Can Plaintiff bring California statutory claims when he agreed to a choice-of-law

11    provision that requires the application of Texas law to claims arising from any use of the website?

12          5.       Does Plaintiff state a claim to relief where he fails to allege facts to plausibly plead

13    any of the alleged claims?

14          6.       Can Plaintiff bring claims based on allegations that arose, if at all, outside of the

15    applicable limitations periods?

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

This case joins a constellation of cases arising from the nearly ubiquitous use of advertising trackers on websites. Unlike most web tracking cases, though, Plaintiff concedes that he consented to the data practices at the heart of his kitchen-sink Complaint. While Plaintiff's core theory is that Mr. Cooper discloses certain website interactions to third parties for advertising "without authorization," he admits he entered into "Privacy Contracts," in which he agreed that Mr. Cooper may do just that: "Third parties may [] use [tracking] technologies" for "[t]arget[ed] [a]dvertising," ECF 26-1, and Mr. Cooper may "share personal information, such as commercial info, internet activity, and inferences, with advertising and social media services to deliver personalized advertisements." RJN, Ex. 3. While Plaintiff could have opted out of the alleged data sharing, he did not. Because the Complaint is premised entirely on the disclosures having been "unauthorized," it crumbles with Plaintiff's consent. The Complaint fails for other reasons as a matter of law.

First, Plaintiff lacks standing to pursue any claims. Standing requires that Plaintiff establish a concrete injury, that is traceable to Mr. Cooper. Plaintiff does not. Plaintiff consented to the alleged disclosures and so suffered no injury; and he does not plausibly allege that any of his private and financial information was actually disclosed, let alone that he was harmed by any supposed disclosure. Plaintiff's amendments only confirm this fundamental flaw. Plaintiff added that he: (i) "interact[ed]" with several public webpages, but does not allege that he input any information, let alone any private information, ECF 26 ¶¶ 125–26; and (ii) input information to create an online account in 2021, but does not allege that any such information was collected or disclosed, *id*. ¶¶ 124, 137. Plaintiff, therefore, does not allege any disclosure of his personal information, much less any "'highly offensive' interferences or disclosures" that could confer standing. *Popa v. Microsoft Corp.*, – F.4th –, 2025 WL 2448824, at *5 (9th Cir. Aug. 26, 2025). In fact, Plaintiff admits that he received ads about the mortgages and real estate listings at a time when he admittedly was shopping online for a mortgage, which strains credulity as an injury. And he does not allege any such ads were traceable to Mr. Cooper as opposed to any other mortgage company or more plausible source.

Second, Plaintiff's claims for monetary relief are barred by the limitation-of-liability provision that he agreed to when creating an online account. That provision precludes recovery for

damages "arising in connection with [Mr. Cooper's] [website] or use thereof." RJN, Ex. 1. Plaintiff's claims arise in connection with the website, so he is barred from pursuing damages.

Third, for similar reasons, Plaintiff's common-law and statutory claims fail. His claims rest on generic allegations that non-personal data was shared with third parties for advertising, which might: breach unidentified contracts; be negligent or intentional; or violate statutes. Plaintiff's consent, again, forecloses a breach of any duty, and his claims separately fail as a matter of law.

Finally, most of Plaintiff's claims are time-barred to the extent they are premised on information he allegedly provided when creating an account in 2021—nearly four years before his initial complaint. Because that is the only information Plaintiff alleges to have provided through Mr. Cooper's website, his claims independently must be dismissed.

The Complaint should be dismissed in its entirety, with prejudice.

## **BACKGROUND**

### A.    **Plaintiff Alleges that He Used Mr. Cooper's Website, But Does Not Allege that any of His Data Was Disclosed.**

Plaintiff alleges that his mortgage was transferred to Mr. Cooper in 2021. ECF 26 ¶ 124. He alleges that he opened an online account with Mr. Cooper in the fall of 2021, and that he used the website to "research[] refinancing options" and "review his account, manage his mortgage, and make payments." *Id.* ¶¶ 124–26. Specifically, the amended Complaint now alleges:

- Plaintiff "interact[ed] with" Mr. Cooper's website by clicking on public, informational webpages, titled "calculators," "refinance," "buy a home," "rates," "apply," "help," "get cash from equity," "sign in," and "buying or selling a home." *Id.* ¶¶ 125–26. Plaintiff does not contend to have input any information on those webpages, private or otherwise. *Id.*

- Plaintiff set up an account and input his "SSN, DOB, address, contact information, and more" one time in the fall of 2021. *Id.* ¶ 124.

Plaintiff alleges that Mr. Cooper's website has advertising trackers "to improve and to save costs on its marketing campaigns, improve its data analytics, attract new customers, and generate sales." *Id.* ¶ 5. But Plaintiff does not allege that the trackers existed throughout the relevant time, or on any particular webpage (including on the account-registration page in 2021). *See id.* ¶ 126.

Nevertheless, Plaintiff alleges that the trackers disclosed his "interactions" with Mr. Cooper's website to third parties like Meta, Google, and Microsoft. *Id.* ¶¶ 1, 136. Plaintiff alleges

Goodwin Procter LLP
Attorneys at Law

2

Mr. Cooper's MTD Am. Compl.
Case No. 3:25-cv-04412-JSC

that the trackers *could have* shared information such as his customer status, browsing activities, or "c_user cookie to identify a logged-in Facebook account." *Id.* ¶ 137. But Plaintiff does not allege that he was logged into Facebook when using Mr. Cooper's website, or that he actually performed the browsing activities that were allegedly disclosed (*e.g.*, submitted an application, requested a quote, underwent a homebuying process, etc.). *Id.* To the contrary, Plaintiff simply alleges that he "researched refinancing options" and viewed public webpages, after his existing mortgage was transferred to Mr. Cooper. *Id.* ¶¶ 125–26. And while Plaintiff also included screenshots as to how the trackers may work, none reflects any private, personal, or financial information being transmitted to a third party, let alone any such information of Plaintiff's. *Id.* ¶¶ 59–74.

And although Plaintiff alleges that he received advertisements concerning mortgages and real estate listings, *id.* ¶¶ 128, 175, he does not plead facts that tie the advertisements to Mr. Cooper or its website. *Id.* Nor does he allege anything to plausibly suggest that his account-creation information (*e.g.*, contact information) was shared; he alleges only that the trackers disclosed general browsing activities and advertisements relating to such browsing activities. *Id.* ¶¶ 128, 137.

## B.    Plaintiff Agreed to Mr. Cooper's Alleged Data Practices.

Plaintiff alleges that he entered into "Privacy Contracts" with Mr. Cooper—the Privacy Policy, Consumer Privacy Notice, and California Privacy Notice. *Id.* ¶ 78 & ECF 26-1–26-3. The website also contains a State-Specific Privacy Policy, with California-required disclosures (collectively, the "Privacy Policies"). RJN, Ex. 3. These Privacy Policies disclose the data sharing practices Plaintiff challenges:

**The Privacy Policy**, ECF 26-1; ECF 26 ¶¶ 80–84, discloses the website's use of tracking technologies and potential collection and sharing of data for "[t]arget[ed] [a]dvertising":

- **"Information Collection":** "We collect nonpublic personal information," including information "we receive from you … such as your name, address, assets, [and] Social Security Number," "about your transactions," and financial information.
- **"Information Use and Disclosure":** "We may disclose some or all of the information that we collect … with non-affiliated companies or other organizations."
- **"Cookies and other Technical Information":** "We may send 'cookies'" and "use tracking systems … which monitor your use of our Web sites" "for the purpose of transferring data," including browsing activities. "[I]f you choose to furnish [] our Web sites with [PII], [it] can be linked to the data stored in the cookies/Web beacons."

Goodwin Procter LLP
Attorneys at Law

3

Mr. Cooper's MTD Am. Compl.
Case No. 3:25-cv-04412-JSC

- **"Target Advertising"**: "We may also use technologies to collect information about your online activities … to provide you with more relevant advertising …. Third parties may also use similar technologies to collect information about your online activities over time and across different third party sites, including your use of this Mr. Cooper website."

**The State-Specific Privacy Notice**, RJN, Ex. 3, includes "state-required disclosures" of the website's potential collection and sharing of data "to deliver personalized advertisements":

- **"Do you have or use any of my personal information?"**: "[W]e collect … information … on how you interact with our website," such as "whether you input your personal information into a webform to receive information about mortgage financing options," as well as PII, "internet activity," and "commercial information like the products/services you've purchased from us." Certain "personal information" is used for "advertising."
- **"How do you collect personal information?"**: "We collect information from … cookies, webforms, advertising networks, and other online tools and technology."
- **"Do you sell/share information?"**: "In some circumstances, we share personal information, such as commercial info, internet activity, and inferences, with advertising and social media services to deliver personalized advertisements."

**The Consumer Privacy Notice**, ECF 26-2; ECF 26 ¶¶ 85–88, discloses how and why Mr. Cooper collects and shares customers' personal information:

- "[W]e collect your personal information, for example, when you … apply for a loan … provide account information," etc.
- "[W]e can share your personal information … [f]or nonaffiliates to market to you."

**The California Privacy Notice**, ECF 26-3; ECF 26 ¶ 93, provides that Mr. Cooper may share personal information with nonaffiliated businesses:

- You may "restrict the sharing of personal and financial information with our affiliates … and outside companies we do business with."

The Privacy Policies also inform users how to "opt out of" "cookies used for this online advertising" and "behavioral tracking." ECF 26-1–26-3; RJN, Ex. 3 (providing opt outs). Plaintiff does not allege he opted out, despite Mr. Cooper's first motion to dismiss raising this omission. *See* ECF 26.

**C.    Plaintiff Agreed to Mr. Cooper's Terms, Which Limit Its Liability.**

Plaintiff also agreed to Mr. Cooper's Terms and Conditions. ECF 26 ¶¶ 28, 79 & nn. 7, 29; RJN, Ex. 2. The Terms instruct users to "READ THESE TERMS AND CONDITIONS CAREFULLY." RJN, Ex. 1. They then include a limitation-of-liability clause in bold and capitalized font:

Goodwin Procter LLP
Attorneys at Law

4

Mr. Cooper's MTD Am. Compl.
Case No. 3:25-cv-04412-JSC

**Limitation of Liability**
IN NO EVENT WILL MR. COOPER BE LIABLE FOR ANY DIRECT, INDIRECT, PUNITIVE, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, LOSSES OR EXPENSES … , ARISING IN CONNECTION WITH THIS SITE OR USE THEREOF …

*Id.* The Terms also provide for venue in Texas and the application of Texas law, including for claims arising from "use of the Mr. Cooper Websites."[1] *Id.*

### D.    The Claims.

Despite Plaintiff's consent to Mr. Cooper's use of advertising trackers, Plaintiff asserts twelve statutory and common-law claims based on the alleged trackers. ECF 26 ¶¶ 164–335.

## ARGUMENT

## I.    The Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Standing.

A court must dismiss a complaint under Rule 12(b)(1) if a plaintiff does not satisfy Article III standing. *Brown v. Christiana Tr.*, 722 F. App'x 702, 702 (9th Cir. 2018). Plaintiff bears the burden of establishing standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016), *as revised* (May 24, 2016). To establish standing, Plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 338. Because Plaintiff does not allege any injury, nor one traceable to Mr. Cooper, the Complaint must be dismissed in its entirety.

### A.    Plaintiff Does Not Allege He Suffered an Injury in Fact.

"To establish injury in fact, a plaintiff must show that he [] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339. An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way," and "concrete[]" if it is "'*de facto*'; that is, it must actually exist." *Larroque v. First Advantage LNS Screening Sols., Inc.*, 2016 WL 4577257, at *3 (N.D. Cal. Sept. 2, 2016). For statutory claims, a court still must find that "a plaintiff has suffered a concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). And for intangible harms, courts must "assess whether the alleged injury … has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit"—here, the torts of intrusion upon seclusion and public disclosure

---

[1] Mr. Cooper filed a motion to transfer based on that provision and 28 U.S.C. § 1404. *See* ECF 24.

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

1  of private facts. *Popa*, 2025 WL 2448824, at *4–5 (quoting *TransUnion*, 594 U.S. at 424).

2      Applying this standard, no concrete harm exists here. Plaintiff's consent to the alleged use

3  of trackers, *see supra* pp. 3–4, negates any concrete injury and requires dismissal of the Complaint

4  in its entirety. *See Larroque*, 2016 WL 4577257, at *5 (plaintiff did not plead a "concrete harm"

5  where she "consent[ed] to" the release of information and thus could not argue "her privacy was

6  somehow invaded"); *see also Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1–2 (C.D.

7  Cal. Apr. 4, 2025) (no standing where plaintiff lacked a reasonable expectation of privacy).

8      Nor does Plaintiff plausibly allege any disclosure of his personal information that would be

9  recognized as a violation of a traditional tort that protects against the disclosure of private

10 information.[2] *See Popa*, 2025 WL 2448824, at *5 (*TransUnion* requires "a standing inquiry …

11 benchmarked to a specific tort"). *First*, although Plaintiff now claims that he "interact[ed]" with

12 several public, informational webpages, he does not allege that he input any information, let alone

13 any private information (or that there were trackers on those pages). ECF 26 ¶ 126; RJN, Ex. 3.

14 This sinks his case because no injury can arise from the collection and disclosure of information

15 where Plaintiff cannot point to information that was collected. *See, e.g.*, *Daghaly v.

16 Bloomingdales.com, LLC*, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) (affirming dismissal

17 of CIPA claim for failure to plead a concrete injury where plaintiff did "not allege that she herself

18 actually made any communications that could have been intercepted once she had accessed the

19 website"); *Rodriguez v. Autotrader.com, Inc.*, 762 F.Supp.3d 921, 926–27 (C.D. Cal. 2025)

20 (dismissing CIPA claim for the same reason where plaintiff did not "describe the contents of her

21 query"); *Mitchener v. Talkspace Network LLC*, 2025 WL 1822801, at *8 (C.D. Cal. June 27, 2025)

22 (dismissing complaint for the same reason where plaintiff did "not identify what personal

23 information of Plaintiff's, if any, was captured by the [tracker]"); *Smith v. Facebook, Inc*., 745 F.

24 App'x 8, 9 (9th Cir. 2018) ("that Plaintiffs searched and viewed publicly available health

25 information" cannot "reveal … an individual's health status or medical history."). *Second*, Plaintiff

26 also does not allege that any of the information he allegedly submitted to the website when creating

27

28

---

[2] For instance, public disclosure of private facts requires that a defendant "gives publicity" to a matter concerning "the private life of another" that "is *highly offensive* to a reasonable person." *Popa*, 2025 WL 2448824, at *5 (cleaned up). The Complaint alleges nothing of the sort here.

his Mr. Cooper account was plausibly collected or disclosed (or, again, that there were trackers on the account-registration webpage in 2021). ECF 26 ¶¶ 124, 126 To the contrary, Plaintiff conspicuously omits any of the account-registration information as information that even *could have* been disclosed. *Id.* ¶ 137.

And Plaintiff's generalized allegations about certain information the website *could collect*, ECF 26 ¶¶ 53–74, also do not plead an *actual injury* to Plaintiff. *Daghaly*, 2024 WL 5134350, at *1 ("general allegations about how [the website] intercepts website visitors' communications and monitors their actions" do not remedy "sparse" "allegations about [the plaintiff's] own interactions with the [website]"); *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025), *appeal docketed*, No. 25-4990 (9th Cir. Aug. 7, 2025) (allegations "that Defendants *could gain*" personal information and "*could* intrude on Plaintiff's right to privacy" does not "convert that hypothetical into concrete harm to *him*"); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025), *appeal docketed*, No. 25-4452 (9th Cir. July 18, 2025) (same); *see also Nguyen v. Abbott Lab'ys, Inc.*, 2025 WL 2299753, at *5–6 (N.D. Ill. Aug. 8, 2025) (dismissing Wiretap Act claim; "Plaintiffs explain the technology behind the tracking tools in great detail, but their hypothetical examples don't shed light on whether each plaintiff's disclosures plausibly amount to" private information, including because "[m]erely browsing and searching [the] website doesn't amount to a disclosure of individually identifiable health information"). And even if the generalized allegations about Mr. Cooper's website could confer standing (they cannot), the website's alleged disclosure of browsing information does not plead an injury as a matter of law. Rather, the allegations are, at best, "most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Popa*, 2025 WL 2448824, at *2, *5 (affirming dismissal of complaint alleging "tracking of [plaintiff's] interactions with the [] website"—including the collection of "over 30 different categories [of information]" relating to the user's device, bowser, location, interaction with the website, "text inputted [] on the website," and more—for lack of "harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law").

For instance, Plaintiff alleges the collection and sharing of whether he is a customer (ECF

Goodwin Procter LLP
Attorneys at Law

7

Mr. Cooper's MTD Am. Compl.
Case No. 3:25-cv-04412-JSC

26 ¶¶ 60, 137(a)), but points to no such actual disclosure and forgets that a mortgage (and so his Mr. Cooper customer status) is a matter of public record, *Hutson v. Am. Home Mortg. Servicing, Inc.*, 2009 WL 3353312, at *3–4 (N.D. Cal. Oct. 16, 2009); he alleges the sharing of IP addresses and web browser information (*id.* ¶ 41), for which he has no reasonable expectation of privacy, *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *1–5 (S.D.N.Y. Feb. 13, 2025); and he alleges the website collected his "c_user cookie to identify a logged-in Facebook account" (*id.* ¶ 137(i)), but does not allege that he was ever logged into Facebook to support that he could be identified at the time of the alleged browsing. This again is the type of information that cannot give rise to a concrete injury. *Supra* pp. 6–7; *see Khamooshi v. Politico LLC*, 2025 WL 2822879, at *2 (N.D. Cal. Oct. 2, 2025) (dismissing case, under *Popa*, where alleged disclosure of "IP addresses, browser and device data, … browsing activity, geolocation data, device type, browser type, and 'device fingerprints'" … are [] insufficient to establish a concrete privacy injury"). Indeed, courts in this District consistently hold that the "mere 'collection of basic contact information'" or that "plaintiff[] merely visited the website," "*are not concrete harms.*'" *CuriosityStream*, 2025 WL 2272413, at *4 (emphasis added); *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (alleged tracking of "browser and device data" and "other identifying information" did not plead injury).

And though Plaintiff lists various categories of supposed "harms"—*e.g.*, "[l]oss of privacy," "[u]nauthorized disclosure of" and "[u]nauthorized access to" his personal information, receipt of "advertisements," "[l]ost benefit of his bargain," "[e]mbarrassment, humiliation, frustration, and emotional distress," "[d]ecreased value" of his personal information, ECF 26 ¶¶ 140, 172, 248—each is speculative at best, and the type of conclusory pleading that courts repeatedly reject. *See, e.g.*, *Kishnani*, 2025 WL 1745726, at *3 ("Plaintiff cannot establish constitutional standing based on conclusory statements."); *Perlaki v. J.B. Poindexter & Co.*, 2025 WL 754503, at *3 (S.D. Tex. Mar. 10, 2025) (allegations of heightened risk of identity theft and fraud, lost time and possible future expenses, and diminished value of PII "too speculative" to be a "concrete harm").

Finally, Plaintiff's sole factual allegation of receiving advertisements for mortgages when he was actively searching for and wanting a mortgage, ECF 26 ¶¶ 128, 175—without any allegation

Goodwin Procter LLP
Attorneys at Law

8

Mr. Cooper's MTD Am. Compl.
Case No. 3:25-cv-04412-JSC

of harm—does not plead an injury. *See, e.g.*, *Xu*, 2025 WL 488501, at *3 (plaintiff lacked standing absent allegation he was "concretely harmed by any such advertising").

**B.    Plaintiff Does Not Allege any Injury Traceable to Mr. Cooper.**

Plaintiff also does not allege any injuries traceable to Mr. Cooper. Traceability requires "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly … trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted); *see Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015) (same).

Again, Plaintiff's sole factual allegation of injury is that he received advertisements concerning mortgages and real estate listings at a time he was actively researching mortgages. ECF 26 ¶¶ 125, 128. But those ads, even if an injury, cannot be fairly traced to Mr. Cooper because Plaintiff fails to plausibly allege a non-conclusory connection between the ads and Mr. Cooper. This is particularly the case here because there are many reasons why Plaintiff may have received them—for example, as a result of researching real estate listings, mortgage financing with other lenders, etc.—and Plaintiff does not allege that he searched for mortgage refinance options exclusively through Mr. Cooper's website. *See* ECF 26. This renders any causal link to Mr. Cooper "speculative." *Physicians Comm. for Responsible Med. v. Vilsack*, 2023 WL 1873084, at *6 (N.D. Cal. Feb. 9, 2023) (finding no traceability "in light of the many factors").[3]

And traceability is especially lacking absent particular allegations about Plaintiff's alleged visits to Mr. Cooper's website. This is because his "general allegation[s] … without more, permit[] only 'a speculative chain of possibilities' linking [his] alleged harm and Defendant['s] conduct." *Henderson v. Reventics, LLC*, 2024 WL 5241386, at *8 (D. Colo. Sept. 30, 2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)); *see Fernandez v. Leidos, Inc.*, 127 F.Supp.3d 1078, 1086 (E.D. Cal. 2015) (ads were not traceable to defendant absent allegations the information relating to the ads was private and was stolen in a data breach). Plaintiff's amendments do not alter

---

[3] Notably, Plaintiff's counsel has sued other mortgage lenders for use of the same and other trackers, further belying that any advertisements could be traceable to Mr. Cooper alone and no other plausible source. *Idris v. Lakeview Loan Servicing, LLC*, No. 3:25-cv-5087 (N.D. Cal. filed June 16, 2025); *Allison v. United Wholesale Mortg.*, No. 3:25-cv-5377 (N.D. Cal. filed June 26, 2025); *Allison v. PHH Mortg.*, No. 3:25-cv-5323 (N.D. Cal. filed June 25, 2025).

1    the analysis; general allegations that he visited webpages, ECF 26 ¶ 126, still does not establish a

2    causal nexus to a receipt of ads, and would require an inferential leap the Court may not make.

3    *Fernandez*, 127 F.Supp.3d at 1087 (courts may not confer standing based on attenuated inferences).

4    **II.**    **The Complaint Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim.**

5         A court must dismiss a complaint under Rule 12(b)(6) if a plaintiff fails to allege "enough

6    facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

7    544, 570 (2007). As with standing, a court accepts well-pled allegations as true, but need not accept

8    legal conclusions or conclusory assertions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). [4]

9         **A.**    **Plaintiff's Consent to the Alleged Data Practices Bars All of His Claims.**

10        Consent is fatal to all of Plaintiff's claims. Plaintiff's claims are premised on allegations

11   that Mr. Cooper disclosed his information to third parties "without … authorization." ECF 26 ¶¶

12   1–16, 164–335; *see also id.* ¶ 146 (alleging putative classes of individuals whose information was

13   disclosed "without authorization"). But through the Privacy Policies—which Plaintiff alleges are

14   "contracts," *id.* ¶ 78—Plaintiff agreed to Mr. Cooper's use of the tracking technologies. As

15   explained, the Privacy Policies explicitly disclose that Mr. Cooper may share the precise data at

16   issue for advertising purposes. *Supra* pp. 3–4; *e.g.*, ECF 26-1 ("[t]hird parties may also use

17   [tracking] technologies" for "[t]arget [a]dvertising"); RJN, Ex. 3 ("we share personal information,

18   such as … internet activity, and inferences, with advertising and social media services to deliver

19   personalized advertisements"). In other words: Plaintiff consented to the alleged disclosures that

20   premise all of his claims. Those claims, then, must be dismissed. *See, e.g.*, *Lakes v. Ubisoft, Inc.*,

21   777 F.Supp.3d 1047, 1054 (N.D. Cal. 2025) (dismissing complaint alleging third-party sharing of

22   information through trackers because plaintiffs "consented to, and were informed of, the use of

23   cookies and pixels on the Website" through privacy policies), *appeal docketed*, No. 25-2857 (9th

24   Cir. May 2, 2025); *Washington v. Flixbus, Inc.*, 2025 WL 1592961, at *4 (S.D. Cal. June 5, 2025)

25   (same). This is particularly so here, since Plaintiff only alleges to have "searched and viewed

26   _____

27   [4] The Court need not determine for purposes of this motion the state law that applies to Plaintiff's
     claims, particularly since the common-law claims "are not meaningfully distinct." *In re Am. Med.*
     *Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *14 (D.N.J. Dec.
28   16, 2021). However, to the extent the law diverges, this Court should follow Texas law because
     Plaintiff agreed to the Terms, which contain a Texas choice-of-law provision. RJN, Ex. 1.

publicly available [] information." *Smith*, 745 F. App'x at 9 (affirming dismissal of website tracking claims due to consent to data practices through terms and privacy policies).

To the extent Plaintiff may cite to *Shah v. Capital One Financial Corp.*, 768 F.Supp.3d 1033 (N.D. Cal. 2025), it does not compel a different result. The privacy policies there did not disclose that the company "releases that customer's personal information" at issue. *Id.* at 1044. Here, in contrast, the Privacy Policies informed Plaintiff that Mr. Cooper could share *all* of the information at issue in the Complaint, which forecloses all of his claims.

### B.   Plaintiff's Claims Are Barred by the Terms' Limitation-of-Liability Clause.

The Limitations Clause bars all of Plaintiff's claims for monetary relief. Plaintiff agreed to the Terms, and its Limitations Clause, by opening an account. *Supra* p. 4. To create an account, Plaintiff must click "Save & Continue," above which reads: "By clicking 'Save and Continue,' you agree to the Terms of Use for Mr. Cooper's website" (where "Terms of Use" is blue and hyperlinked to the Terms). RJN, Ex. 2. The Ninth Circuit has found this exact assent enforceable. *See, e.g.*, *Lee v. Ticketmaster, L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) (plaintiff assented to the Terms of Use by clicking a "Sign In" button with "Terms of Use" in blue font and hyperlinked); *Capps v. JPMorgan Chase Bank, N.A.*, 2023 WL 3030990 (E.D. Cal. Apr. 21, 2023) (similar); *Phillips v. Neutron Holdings, Inc.*, 2019 WL 4861435, at *4–5 (N.D. Tex. Oct. 2, 2019) (similar).

By agreeing to the Terms, Plaintiff agreed that Mr. Cooper would not be liable for "damages, losses or expenses … arising in connection with this site or use thereof." RJN, Ex. 1. Plaintiff's claims here arise based on his use of the website, and thus fall squarely within the Limitations Clause. *Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 675–77 (9th Cir. 2018) (claims that YouTube removed plaintiff's video and view count barred by the Terms' limitations provision); *Price v. Apple, Inc.*, 2023 WL 2671378, at *4 (N.D. Cal. Mar. 28, 2023) (finding that, even if the plaintiff had stated a breach of contract claim, "his claims are nevertheless barred by [defendant's] limitation of liability provision"); *Bass v. Facebook, Inc.*, 394 F.Supp.3d 1024, 1038 (N.D. Cal. 2019) (breach of contract and breach of confidence claims barred by same). Such "limitation-of-liability clauses are generally valid and enforceable." *Rothwell v. Marshall Creek Ranch, LLC*, 2025 WL 973939, at *5 (E.D. Tex. Feb. 11, 2025), *report and recommendation*

*adopted*, 2025 WL 965754 (E.D. Tex. Mar. 31, 2025) (cleaned up); *see also Darnaa*, 756 F. App'x at 675–76 ("[l]imitation of liability clauses 'have long been recognized as valid in California'" (citations omitted)). Indeed, "a party may contractually waive *even constitutional or statutory rights, whether present or future*" through a limitations clause, particularly given the "'strongly embedded public policy favoring freedom of contract.'" *Rothwell*, 2025 WL 973939, at \*5–9 (citation omitted). The Limitations Clause therefore bars Plaintiff's claims for monetary relief.

### C.    Plaintiff's Common-Law Claims Fail as a Matter of Law (Counts 1, 5, 6, 7).

Plaintiff asserts four common-law claims against Mr. Cooper: negligence, breach of express and implied contract, unjust enrichment, and breach of confidence. Each of these claims additionally should be dismissed because Plaintiff does not state a valid claim.

### 1.    Plaintiff Does Not Plead any Breach of Contract (Count 5).

Plaintiff's claim for "breach of express and implied contact" fails under both theories. First, Plaintiff's claim for breach of express contract fails because he does not identify which contract was breached, let alone the particular contractual provision.[5] *See, e.g.*, *Shah*, 768 F.Supp.3d at 1050 (dismissing contract claim where plaintiffs "fail[ed] to cite to any specific section of the contract that Defendant allegedly violated"); *AdvoCare Int'l, L.P. v. Hardy*, 2010 WL 11618798, at \*4 (N.D. Tex. Sept. 30, 2010) (same for failure to specify which contract was breached). While Plaintiff pleads the agreements "[i]nclude[]" the Privacy Policies, ECF 26 ¶ 227, he does not allege the exact policy Mr. Cooper supposedly breached or which particular provision.

Plaintiff also does not plausibly allege any breach. Though Plaintiff generally alleges that Mr. Cooper "agreed to safeguard and protect" his information, *id.*, "unilateral statements of fact alleged as to the safety of customers' data do not create any contractual obligations." *In re Zappos.com, Inc.*, 2013 WL 4830497, at \*3 (D. Nev. Sept. 9, 2013). Nor can he allege any breach because he only pleads disclosures Plaintiff agreed to under the Privacy Policies. *In re Google Assistant Priv. Litig.*, 457 F.Supp.3d 797, 833 (N.D. Cal. 2020) (contract claim failed, as plaintiffs must plead conduct outside that disclosed in privacy policy).

---

[5] Plaintiff also fails to allege that the Privacy Policies are part of an underlying contract, as is required. *In re Anthem, Inc. Data Breach Litig.*, 162 F.Supp.3d 953, 980–81 (N.D. Cal. 2016).

Second, Plaintiff does not plead an implied contract claim because the alleged implied promises are identical to the express contract. ECF 26 ¶ 227 (alleging the express and implied contracts both "agreed to safeguard and protect" Plaintiff's information). This also mandates dismissal. *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1095–96 (N.D. Cal. 2022) (dismissing implied contract claims because plaintiffs alleged an express contract for the subject).

And like the express contract, Plaintiff does not allege any details about the implied contract, such as what Mr. Cooper promised to keep private. ECF 26 ¶¶ 225–31. Alleging the existence of an implied contract without more is insufficient. *See In re Anthem*, 162 F.Supp.3d at 982 (no implied contract claim absent allegations as to its nature and scope); *HDI Glob. Specialty SE v. Coreslab Structures (Tex.) Inc.*, 2021 WL 1226561, at *3 (W.D. Tex. Mar. 31, 2021), *report and recommendation adopted*, 2021 WL 2843842 (W.D. Tex. May 19, 2021) (implied contracts are "evidenced by the parties' conduct and course of dealing" (citations omitted)).

### 2.    The Unjust Enrichment Claim Should Be Dismissed (Count 6).

Plaintiff's unjust enrichment claim fails as a matter of law. First, unjust enrichment is not a cause of action. *See Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *8 (N.D. Cal. July 28, 2021) ("[i]n California, there is no independent claim for unjust enrichment"); *Hancock v. Chi. Title Ins. Co.*, 635 F.Supp.2d 539, 560 (N.D. Tex. 2009) (same under Texas law).

Second, Plaintiff's claim is duplicative of his contract claim. *Compare* ECF 26 ¶ 234 (Plaintiff conferred a benefit when Mr. Cooper disclosed his information), *with id.* ¶ 230 (Mr. Cooper breached contracts by doing the same). Because Plaintiff does not plead those contracts are invalid, the claim must be dismissed. *E.g.*, *Libman v. Apple, Inc.*, 2024 WL 4314791, at *12 (N.D. Cal. Sept. 26, 2024) (dismissing unjust enrichment claim where plaintiffs alleged an express contract); *Daniels v. Alphabet Inc.*, 2021 WL 1222166, at *10 (N.D. Cal. Mar. 31, 2021) (same).

Third, any data sharing is not unjust because Plaintiff consented to it. *Supra* pp. 3–4. That too requires dismissal. *See, e.g.*, *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 n.6 (9th Cir. 2018) (affirming dismissal of unjust enrichment claim based on consent); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 946 (N.D. Cal. 2023) (dismissing unjust enrichment claim because "Defendant did not collect information … contrary to expectations created by the consent process").

### 3.    The Breach of Confidence Claim Is Insufficiently Pled (Count 7).

Plaintiff's breach of confidence claim fails for similar reasons. Under California law, a breach of confidence claim cannot lie where an express contract is alleged. *Sawicky v. AMC Networks Inc.*, 753 F. App'x 501, 502 (9th Cir. 2019) (affirming dismissal of breach of confidence claim); *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) (the claims are "mutually exclusive"). Because Plaintiff alleges an express contract, ECF 26 ¶¶ 226–28, his breach of confidence claim must be dismissed. And, regardless, Plaintiff cannot allege that any confidence was breached, since there is nothing confidential about shopping for a mortgage. *Hutson*, 2009 WL 3353312, at *3–4 (documents relating to loans are matters of public record); *see Berkla*, 302 F.3d at 917 (a breach of confidence claim requires the defendant disclosed or used "'confidential and novel information'"). Under Texas law, a breach of confidence claim is a "mirror[]" of a misappropriation of trade secrets claim. *Richter v. Carnival Corp.*, 2019 WL 5894213, at *7 (N.D. Tex. Nov. 12, 2019). Plaintiff, therefore, must allege (1) a trade secret and (2) acquisition of such secret through breach of confidence or improper means. *GlobeRanger Corp. v. Software AG*, 27 F.Supp.3d 723, 747–48 (N.D. Tex. 2014), *aff'd*, 836 F.3d 477 (5th Cir. 2016). Plaintiff alleges no such thing, requiring dismissal of this claim.

### 4.    The Negligence Claim Should Be Dismissed (Count 1).

Plaintiff cannot plead the elements of a negligence claim: (1) a duty; (2) breach of the duty; (3) proximate cause; and (4) damages. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009); *Hanan v. Crete Carrier Corp.*, 2020 WL 42269, at *2 (N.D. Tex. Jan. 3, 2020).

First, Plaintiff cannot allege a duty because the Complaint alleges intentional conduct, not negligence, and must be dismissed for that reason. Plaintiff's fundamental claim is that Mr. Cooper intentionally installed trackers on its website to collect and disclose Plaintiff's information for money. *See, e.g.*, ECF 26 ¶ 3 (Mr. Cooper "*knowingly* and secretly configur[ed]" trackers), ¶ 31 (Mr. Cooper "*purposely* and secretly installed" trackers "to gather and share information") (emphases added). In fact, Plaintiff's wiretapping claims *require* intent. Cal. Penal Code §§ 631(a), 632(a); 18 U.S.C. § 2511(1)(a), (3)(a) (prohibiting "intentional" conduct); *see Doe I v. Google LLC*, 741 F.Supp.3d 828, 840–44 (N.D. Cal. 2024) (CIPA liability only extends to willful or intentional

conduct); *Hughes v. Ben and Jerry's Homemade, Inc.*, 2025 WL 2306840, at *3 (Cal. Super. Ct. Aug. 1, 2025) (CIPA, Section 638.51 claims are "based on intentional conduct"). Because "intentional conduct cannot support a claim for negligence," the claim must be dismissed. *Lam v. Target Corp.*, 2017 WL 4154947, at *8 (E.D. Cal. Sept. 19, 2017); *see, e.g.*, *Alston v. Cnty. of Sacramento*, 2012 WL 2839825, at *15 (E.D. Cal. July 10, 2012), *report and recommendation adopted*, 2012 WL 3205142 (E.D. Cal. Aug. 3, 2012) (dismissing negligence claim due to alleged intentional conduct).

Second, Plaintiff does not allege any cognizable damages. He generally alleges damages in the form of "advertisements reflecting private financial information"; "diminution in value" of his data; "embarrassment, humiliation, frustration, and emotional distress"; "lost time and money"; "value" in keeping information "private"; "increased risk of future harm"; and "other injuries." ECF 26 ¶ 175. To start, such conclusory allegations of harm do not suffice. *See R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 897–98 (C.D. Cal. 2024) (dismissing negligence claims based on disclosure of private information because alleged "loss of the benefit of the bargain, increased infiltrations into [] privacy through spam and targeted advertising …, loss of privacy, loss of confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life," and loss of "economic value of the information" were vague and conclusory). Regardless, Plaintiff does not allege any such instances of harm. *Supra* pp. 6–9.

Nor, in any event, do they constitute actual damages as a matter of law. *See, e.g.*, *B.K. v. Eisenhower Med. Ctr.*, 721 F.Supp.3d 1056, 1069 (C.D. Cal. 2024), *on reconsideration in other part*, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) (dismissing negligence claim based on unwanted advertisements, wrongful disclosure, and diminution in value of data); *see also Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021) (affirming dismissal of negligence claims because "lost time," "emotional distress," and "diminution of the value of her personal information" were not compensable damages).

*B.K.* is on all fours. 721 F.Supp.3d at 1066–69. There, plaintiffs alleged that a healthcare website had trackers that sent plaintiffs' health information to third parties, and that plaintiffs began receiving "unsolicited advertisements … relating to their medical conditions shortly after visiting

the Website." *Id.* at 1061–62. The court rejected plaintiffs' claims that they were damaged when "their Private Information was wrongfully divulged and misused" and suffered a "loss of the value of their Private Information," as insufficient to support a negligence claim. *Id.* at 1069.

### D.    Plaintiff's California Statutory Claims Fail (Counts 2–4, 8–10).

#### 1.    Plaintiff's Statutory Claims Are Barred by the Choice-of-Law Provision (Counts 2–4, 8–10).

Plaintiff expressly agreed, when creating an account, that Texas law applies to any claims relating to his "use of the Mr. Cooper websites." ECF 26 ¶ 123; RJN, Exs. 1–2. Because Texas law applies, the California statutory claims are barred. *See, e.g.*, *King v. Bumble Trading, Inc.*, 393 F.Supp.3d 856, 867 (N.D. Cal. 2019) (enforcing New York choice-of-law provisions and dismissing California statutory claim without leave to amend); *It's Just Lunch Int'l LLC. v. Island Park Enter. Grp., Inc.*, 2008 WL 4683637, at *6 (C.D. Cal. Oct. 21, 2008) (dismissing California statutory claim as barred by choice-of-law provision); *Heinz v. Amazon.com, Inc.*, 760 F.Supp.3d 1183, 1188 (W.D. Wash. 2024) (dismissing CIPA claim because Washington law applied under terms of use); *Garner v. Amazon.com, Inc.*, 603 F.Supp.3d 985, 1004 (W.D. Wash. 2022) (same). However, even if California law applied, Plaintiff does not allege a viable claim.

#### 2.    Plaintiff's California Computer Fraud Claim Fails (Count 2).

Plaintiff fails to plead a claim under California's Computer Data Access and Fraud Act. First, Plaintiff does not allege that Mr. Cooper accessed his computers "without permission," as required. Cal. Penal Code § 502(c). CDAFA is an "anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose," and therefore "require[s] that a defendant's access of the computer system [] be 'without permission.'" *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015) (quoting Cal. Penal Code § 502(c)). Plaintiff merely parrots the statutory language that Mr. Cooper accessed Plaintiff's information "without permission," ECF 26 ¶¶ 183–84, which does not suffice. *See Gonzales v. Uber Techs., Inc.*, 305 F.Supp.3d 1078, 1090 (N.D. Cal. 2018) (dismissing boilerplate allegations of the elements of CDAFA violations). Moreover, the Complaint alleges that Mr. Cooper voluntarily gave Mr. Cooper information through his "interactions" with the website, not

1    that Mr. Cooper accessed his computer without permission. *E.g.*, ECF 26 ¶¶ 4, 123–26, 133–34.

2         Second, Plaintiff does not allege any qualifying "damage or loss." Cal. Penal Code

3    § 502(e)(1). "[L]oss" may include "costs related to fixing a computer, lost revenue, or other

4    consequential damages incurred due to an interruption of computer services." *Pratt v. Higgins*,

5    2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023). Instead, Plaintiff alleges a lack of data

6    protection, diminution of the value of his data, and Mr. Cooper's alleged benefit, ECF 26 ¶ 189,

7    which do not constitute "damage or loss." *See Cottle v. Plaid Inc.*, 536 F.Supp.3d 461, 488 (N.D.

8    Cal. 2021) ("the loss of the right to control their own data, the loss of the value of their data, and

9    the loss of the right to protection of the data" is not "damage or loss"); *see also Doe v. Meta*

10   *Platforms, Inc.*, 690 F.Supp.3d 1064, 1082 (N.D. Cal. 2023) (a diminution of the value of disclosed

11   information was not a loss or damage); *In re Google Assistant Priv. Litig.*, 546 F.Supp.3d 945, 972

12   (N.D. Cal. 2021) ("[t]hat Defendants were able to monetize and profit from the unauthorized

13   recordings does not give rise to an inference that Plaintiffs 'lost money or property'" for CDAFA).

14   And even if viable, Plaintiff does not allege any non-conclusory allegations of damage or loss.[6]

15                    **3.    Plaintiff's UCL Claim Fails (Count 3).**

16        Plaintiff's claim under California's Unfair Competition Law fails for similar reasons. To

17   have statutory standing, Plaintiff must establish that he "(1) suffered an injury in fact and (2) lost

18   money or property as a result of the unfair competition." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959

19   (9th Cir. 2009). Again, Plaintiff alleges no injury or lost money. ECF 26 ¶ 213; *see Hazel v.*

20   *Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (dismissing UCL claim;

21   "just because Plaintiffs' data is valuable in the abstract, and [defendant] might have made money

22   from it, does not mean that Plaintiffs have 'lost money or property'"). Nor is Plaintiff's claim of a

23   "property interest," ECF 26 ¶ 201, cognizable as a matter of law. *In re Facebook Priv. Litig.*, 791

24   F.Supp.2d 705, 714 (N.D. Cal. 2011) (dismissing UCL claim; "personal information does not

25   constitute property for [] a UCL claim"); *Swarts v. Home Depot, Inc.*, 689 F.Supp.3d 732, 748

26   (N.D. Cal. 2023) (same).

27

---

28   [6] Plaintiff also does not allege anything unjust about any retention of a benefit given his consent.
     *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F.Supp.3d 1017, 1044 (N.D. Cal. 2021).

Goodwin Procter LLP
Attorneys at Law

17                    Mr. Cooper's MTD Am. Compl.
                      Case No. 3:25-cv-04412-JSC

The UCL claim also should be dismissed because Plaintiff does not plead that he lacks an adequate remedy at law. ECF 26 ¶¶ 192–214. Nor can he, because he asserts other claims that seek an adequate remedy. *See, e.g.*, *Hamm v. Mercedes-Benz USA, LLC*, 2022 WL 913192, at *2 (N.D. Cal. Mar. 29, 2022) ("the availability of an adequate legal remedy is clear from the face of the SAC and dictates dismissal of the UCL claim"); *Williams v. Apple, Inc.*, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020) (dismissing UCL claim absent allegations that legal remedies are inadequate).

### 4.    Plaintiff Does Not State a Claim Under the CCPA (Count 5).

Plaintiff's claim under the California Consumer Privacy Act fail too. First, Plaintiff admits that he did not send the required pre-suit notice. ECF 26 ¶ 223 ("Plaintiff sent Defendant notice … after the date of this filing"). He cannot, then, proceed with his CCPA claim. Plaintiff may only bring a claim if, "*prior to initiating any action*" he provides "30 days' written notice." Cal. Civ. Code § 1798.150(b) (emphasis added). Failure to adhere to the notice requirement before initiating litigation requires dismissal of the complaint.[7] *Id.*; *see Griffey v. Magellan Health Inc.*, 2022 WL 1811165, at *6 (D. Ariz. June 2, 2022) (dismissing CCPA claim for failure to comply with the notice period and rejecting that plaintiff could remedy the defect by "amending his complaint").

Second, Plaintiff does not allege any violation of Section 1798.150—the only CCPA provision with a private right of action. Cal. Civ. Code § 1798.150(c) ("[t]he cause of action … shall apply only to violations as defined in subdivision (a) and shall not be based on violations of any other section of this title"). Plaintiff does not allege any violation of Cal. Civ. Code § 1798.150(a). Instead, Plaintiff cites Section 1798.115 (ECF 26 ¶ 217), which does not provide a private right of action. As such, Plaintiff's CCPA claim must be dismissed. *Hayden v. Retail Equation, Inc.*, 2022 WL 2254461, at *4–5 (C.D. Cal. May 4, 2022), *reconsideration on other grounds*, 2022 WL 3137446 (C.D. Cal. July 22, 2022) (dismissing with prejudice CCPA claims under Sections 1798.100(b), 110(c), and 115(d), absent a private right of action).

Likewise, Plaintiff's generalized allegations that Mr. Cooper breached "Cal. Civ. Code

---

[7] Dismissal of the CCPA claim should be with prejudice. The California legislature could have allowed for amendment of a complaint after compliance with the notice period, as it did for the CLRA, but did not. *Cf.* Cal. Civ. Code § 1782(d) (within 30 days of filing suit and after providing notice, "a consumer may amend his or her complaint … to include a request for damages").

Goodwin Procter LLP
Attorneys at Law

18                                              Mr. Cooper's MTD Am. Compl.
Case No. 3:25-cv-04412-JSC

§ 1798.100, *et seq.*," ECF 26 ¶ 216, do not suffice, as Plaintiff does not allege any "unauthorized access and exfiltration, theft, or disclosure" of "nonencrypted and nonredacted personal information" due to a "violation of the duty to implement and maintain reasonable security procedures and practices." Cal. Civ. Code § 1798.150(a), (c). Rather, Plaintiff expressly alleges that the trackers were installed due to a business decision to "improve and to save costs on its marketing campaigns, improve its data analytics, attract new customers, and generate sales," ECF 26 ¶ 5, which is inconsistent with the data being disclosed due to inadequate security. *See Hayden*, 2022 WL 2254461, at *5 (dismissing Section 1798.150(a) claim because the disclosure "was a business decision to combat retail fraud," not due to a failure to implement and maintain security measures); *see also Maag v. U.S. Bank, Nat'l Ass'n*, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (dismissing CCPA claim absent "facts to support the notion that Defendant's security was deficient"); *Griffey v. Magellan Health Inc.*, 562 F.Supp.3d 34, 57 (D. Ariz. 2021) (dismissing CCPA claim for failure to "allege sufficient facts to establish how or why [defendant's] systems were inadequate or unreasonable").

Finally, Plaintiff alleges that "Mr. Cooper is subject to the GLBA." ECF 26 ¶ 109. The CCPA expressly carves out an exemption for information subject to the GLBA. Cal. Civ. Code § 1798.145(e) ("This title shall not apply to personal information collected, processed, sold, or disclosed subject to the federal [GLBA]"). Plaintiff thus cannot claim that Mr. Cooper failed to comply with the CCPA.

**E.    Plaintiff's Wiretap Act and CIPA Claims Fail (Counts 8–12).**

Plaintiff's claims under the federal Wiretap Act and California Invasion of Privacy Act ("CIPA"), ECF 26 ¶¶ 251–335, fail as a matter of law.

**1.    The CIPA and Wiretap Act Claims Fail Because Plaintiff Consented to the Sharing of His Data (Counts 8–12).**

Plaintiff's consent to the alleged tracking, *supra* pp. 3–4, is dispositive of his CIPA and Wiretap Act claims. Cal. Penal Code §§ 631(a), 632(a), 638.51(a) (prohibiting acts "without the consent" of parties to the communication); 18 U.S.C. § 2511(2)(d) (excepting from liability interceptions where "one of the parties to the communication has given prior consent"), (3)(b)(ii)

(permitting disclosure of a communication "with the lawful consent of the originator"). Courts, thus, routinely dismiss wiretapping claims where the plaintiffs consented through privacy policies. *E.g.*, *Lakes*, 777 F.Supp.3d at 1054; *Washington*, 2025 WL 1592961, at *4 (both dismissing CIPA and Wiretap Act claims because plaintiff consented to the tracking through privacy policies).

The Wiretap Act claims also should be dismissed because Mr. Cooper consented to the alleged disclosures. The Wiretap Act is a one-party consent statute. 18 U.S.C. § 2511(2)(d). Here, Plaintiff alleges that the communications were "interactions with" Mr. Cooper's website, making Mr. Cooper a party to the communications. *E.g.*, ECF 26 ¶¶ 4, 46, 58, 285, 312; *see also id.* ¶ 307 (defining the communications as "transmissions of Plaintiff's [information] to Defendant's Website"). Mr. Cooper's consent defeats the Wiretap Act claims. *See, e.g.*, *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *9 (S.D. Cal. Feb. 13, 2025) (dismissing Wiretap Act Section 2511(1) claim where "only reasonable inference that can be drawn" is that recipient consented to interception); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (same); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *8 (N.D. Cal. Mar. 26, 2013) (dismissing Wiretap Action Section 2511(3)(a) claim under party exception rule).

### 2. The CIPA (Section 631(a)) and Wiretap Act Claims Fail Because They Do Not Allege the "Contents" of a Communication (Counts 8, 11–12).

Plaintiff's CIPA (Section 631(a)) and both Wiretap Act claims also fail absent an alleged disclosure of the "contents" of his communication. Although the amended Complaint conclusorily pleads a disclosure of the "contents" of Plaintiff's communications, ECF 26 ¶¶ 259, 261, 263, 309–22, 324–34, the alleged contents are nothing more than non-actionable record information.[8]

The analysis of whether information is the "contents" of a communication is the same under CIPA and the Wiretap Act. *Brodsky v. Apple Inc.*, 445 F.Supp.3d 110, 127 (N.D. Cal. 2020). "[C]ontents" means "information concerning the substance, purport, or meaning of [a] communication," and does not include "record information." *In re Zynga Priv. Litig.*, 750 F.3d

---

[8] Section 631(a) has four separate clauses. Plaintiff's claim appears to allege that Mr. Cooper violated clause four by aiding and abetting a violation of clause two ("read[ing] or attempt[ing] to learn the contents or meaning" of a communication). ECF 26 ¶¶ 258–73. Plaintiff does not allege any "use" of a communication for clause three, *id.*; and clause one does not apply to tracking technologies. *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025).

Goodwin Procter LLP
Attorneys at Law

20                                    Mr. Cooper's MTD Am. Compl.
                                      Case No. 3:25-cv-04412-JSC

1098, 1104–06 (9th Cir. 2014). "Record information" includes a person's "'name [and] address'" and "pages viewed … date and time of the visit … IP address … location … browser type, and the operating system." *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1082–83 (C.D. Cal. 2021).

Plaintiff's allegations that the trackers may have disclosed his "interactions"—including customer status, browsing activities, and "[r]efinancing options," ECF 26 ¶¶ 136–37—describe quintessential "record information." *E.g.*, *Mikulsky v. Bloomingdale's, LLC*, 713 F.Supp.3d 833, 845 (S.D. Cal. 2024) ("button clicks, mouse movements, scrolling, … page navigation, changes to visual elements in the browsers, network requests" are "record" information). The other alleged disclosures—*e.g.*, submitting an application, requesting a quote, or buying a home, ECF 26 ¶ 137— do not allege that any specific content was disclosed (such as what information was submitted with the application), likely because Plaintiff does not allege that he did *any* of those things. *Id.* ¶¶ 124– 26. Rather, Plaintiff merely alleges that he "researched refinancing options" and "interacted" with public webpages. *Id.* But again, website interactions through "button clicks" are not "contents." *Mikulsky*, 713 F.Supp.3d at 845; *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *1, *3–4 (E.D. Cal. June 9, 2025) (dismissing Section 631(a) claim arising from "button clicks" for failure to plead "contents"). And while Plaintiff does not allege any disclosure of his account-registration information, customer information too is not content. *Id.* (alleged interception of address, contact information, and user-specific values did not plead contents); *Hammerling*, 615 F.Supp.3d at 1092–93 ("customer information such as a [] name, address, and subscriber number or identity is record information"). The Section 631(a) and Wiretap Act claims must be dismissed.

### 3.    The CIPA (Section 631(a)) and Wiretap Act Claims Also Fail Because They Do Not Allege an Interception in Transit (Counts 8, 11–12).

The CIPA (Section 631(a)) and Wiretap Act claims also fail because they do not plead any interception in transit. Cal. Penal Code § 631(a) (prohibiting interception of a communication "while [it] is in transit"); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F.Supp.3d 1072, 1094 (W.D. Wash. 2024) (Sections 2511(1) and 2511(3) require an intentional interception). For a communication to be "intercepted," "it must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)

("intercept" requires "acquisition contemporaneous with transmission").

Plaintiff does not allege any such interception. Though he now alleges Mr. Cooper aided third parties in intercepting communications, *supra* note 8, any such interception is not "in transit" because Plaintiff expressly alleges that Mr. Cooper received the information and then separately sent it to a third party after. ECF 26 ¶¶ 61–74 (Mr. Cooper sends Google and Microsoft information *after* receipt); *id.* ¶ 258 (Mr. Cooper "record[ed]" communications "and *then* transmitted such information to Third Parties") (emphasis added). Mr. Cooper's alleged prior receipt belies any interception in transit. *See, e.g.*, *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) (affirming dismissal of Section 631(a) claim because the defendant "could have only read … [the] text after it was received …, so the text could not have been accessed 'in transit'"); *Swarts*, 689 F.Supp.3d at 746 (dismissing Section 631(a) claim, as "conclusory allegations" did not "dispel the notion that [the third party] receives the information '*after* the chat reaches'" the website owner); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1228 (C.D. Cal. 2017) (dismissing Section 2511(1) claim; "conclusory allegation that [defendant] intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how [the] data collection occurs 'in real-time'"); *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *10 (C.D. Cal. May 29, 2007) (server log data was not a transmission under Section 2511(3)(1), which prohibits disclosure of communications intercepted during transmission).

### 4. The CIPA (Section 631(a)) Claim Fails, as Plaintiff Does Not Allege that Mr. Cooper "Aided" or "Conspired" with Third Parties (Count 8).

Plaintiff's CIPA (Section 631(a)) claim also fails because he does not allege facts to show Mr. Cooper "aided" third parties to commit an underlying violation. ECF 26 ¶¶ 258–68. "[A]iding" a violation requires showing that Mr. Cooper had "both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 754 F.Supp.3d 933, 942 (N.D. Cal. 2024). Here, Plaintiff's conclusory allegations that Mr. Cooper "aided" third parties' interceptions, ECF 26 ¶¶ 258–68, do not plausibly allege that Mr. Cooper knew of any interception, let alone intended to assist them in violating CIPA, and any such allegations fly in the face of the Complaint's acknowledgement of

1  the Privacy Policies, which disclose the sharing of such information. *See, e.g.*, *Smith*, 754 F.Supp.3d

2  at 943 ("conclusory allegations" that defendant was "aware of the purposes for [the third party's]

3  collect[ion]" and that defendant "assists [the third party]" were insufficient to plead aiding and

4  abetting a wiretap); *Rodriguez v. Ford Motor Co.*, 722 F.Supp.3d 1104, 1124 (S.D. Cal. 2024)

5  (dismissing CIPA claim absent allegations "that Defendants knew [the third party's] conduct

6  constituted a breach of some duty," even if they knew about the alleged capture of information).

7  **5.    The CIPA (Section 632(a)) Claim Fails Because Plaintiff Does Not Sufficiently Allege Eavesdropping or Recording (Count 9).**

8  Plaintiff also cannot plead that Mr. Cooper "eavesdrop[ped] upon or record[ed]" a

9  "communication," as required to state a CIPA (Section 632(a)) claim. Cal. Penal Code § 632(a).

10  Plaintiff's allegations that Mr. Cooper aided and abetted a third party in eavesdropping, ECF 26 ¶¶

11  277–88, are again insufficient absent allegations that Mr. Cooper had knowledge of the

12  eavesdropping and provided substantial assistance in that eavesdropping.[9] *Smith*, 754 F.Supp.3d at

13  944 (dismissing Section 632 claim asserting aiding-and-abetting liability).

14  The Section 632 claim also fails because Plaintiff does not allege any "confidential

15  communication" for which Plaintiff had "an objectively reasonable expectation that the

16  conversation is not being overheard or recorded." *Rodriguez*, 2021 WL 2026726, at *7; *see supra*

17  pp. 6–8. Plaintiff's allegations of non-confidential "internet communications" for which a website

18  user does "not have an objectively reasonable expectation of confidentiality" requires dismissal.

19  *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024); *see, e.g.*, *Revitch*

20  *v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (dismissing Section

21  632 claim based on internet browsing activity and form field entries); *Swarts*, 689 F.Supp.3d at 747

22  (dismissing Section 632 claim where plaintiff claimed her "confidential" internet chat conversation

23  was recorded by defendant's third-party service provider); *King*, 2025 WL 1635419, at *6

24  (dismissing Section 632 claim based on online hotel booking information).

25  **6.    The CIPA (Section 638.51) Claim Fails (Count 10).**

26  Plaintiff's CIPA (Section 638.51) claim also fails for several reasons. First, Plaintiff alleges

27

---

28  [9] The Section 632 claim also should be dismissed because the section does not expressly include an aiding-and-abetting clause like Section 631(a)'s fourth clause. *See* Cal. Penal Code § 632.

Goodwin Procter LLP
Attorneys at Law

23                                    Mr. Cooper's MTD Am. Compl.
                                      Case No. 3:25-cv-04412-JSC

that that trackers are "pen registers" and "trap and trace devices" because they "capture and transmit addressing information, including Plaintiff's … IP addresses and other unique identifiers." ECF 26 ¶¶ 298, 300–01. However, Plaintiff does not actually allege that the trackers collected or transmitted his IP address or any other "addressing information" about his communications. *Id.* ¶ 137. While Plaintiff alleges the Meta tracker could collect IP addresses, *id.* ¶¶ 41, 103, he does not allege that his IP address was collected or disclosed, *id.* ¶ 137, or that trackers on Mr. Cooper's website could do so, *id.* ¶¶ 53–74. Again, Plaintiff only alleges the collection of customer status, browsing information, and a "c_user cookie.'" *Id.* ¶ 137; *see also id.* ¶¶ 259, 261, 263, 316–27 (repeatedly alleging the trackers disclose the "contents" of communications). That requires dismissal.

Additionally, an IP address—even if allegedly collected and disclosed—cannot sustain a "pen register" or "trap and trace" claim. *See, e.g.*, *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025) (Section 638.51 does not apply to IP addresses); *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sep. 9, 2024) (same; "[t]he pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them"); *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024) (same; "public policy strongly disputes [that] privacy laws as one render[] every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator"). Indeed, this District has recognized the "futility of" Section 638.51 claims: if a tracker "collects content information … § 638.50 does not apply"; but if it "collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data," as required to plead a concrete injury for a privacy claim. *CuriosityStream*, 2025 WL 2272413, at *3, *5; *Kishnani*, 2025 WL 1745726, at *5 (same); *see also Xu*, 2025 WL 488501, at *1–5 (dismissing Section 638.51 claim because plaintiff had no reasonable expectation of privacy in an IP address).

Second, Plaintiff's Section 638.51 claim also fails because "'pen register' and 'tra[p] and trace devices' refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, *not internet communications such as websites*." *Sanchez*, 2025 WL 487194, at *3 (emphasis added); *see also, e.g.*, *Casillas*, 2024 WL

Goodwin Procter LLP
Attorneys at Law

24

Mr. Cooper's MTD Am. Compl.
Case No. 3:25-cv-04412-JSC

4873370, at *2 ("The legislative purpose of the Pen Register statute was to authorize law enforcement to seek orders for telephone surveillance. Section 638.50 does not address the privacy rights of Internet users."). The Section 638.51 claim should be dismissed with prejudice.

### 7.    The Wiretap Act (Section 2511(3)(a)) Claim Fails (Count 12).

Plaintiff's Wiretap Act, Section 2511(3)(a) claim also fails because he does not, and cannot, plead facts that Mr. Cooper is a provider of an "electronic communication service." 18 U.S.C. § 2511(3)(a). An "electronic communication service" is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Mr. Cooper does not provide such services. *Crowley v. CyberSource Corp.*, 166 F.Supp.2d 1263, 1270 (N.D. Cal. 2001) (rejecting plaintiff's arguments that "Amazon is an electronic communication service provider because it receives electronic communications from customers," and "that 'without recipients such as Amazon.com, users would have no ability to send electronic information'").

### F.    Plaintiff's Claims Are Time-Barred (Counts 1–2, 4, 6–12).

Finally, nearly all of Plaintiff's claims are time-barred to the extent they are premised on his alleged input of information when he "set up an account with Mr. Cooper in the fall of 2021." ECF 26 ¶ 124. Although Plaintiff does not allege any disclosure of that information, *id.* ¶ 137, he did not file his initial complaint until May 2025—more than three years after creating an account. ECF 1. Therefore, all but two of his claims (UCL and breach of contract) are time-barred and must be dismissed with prejudice.[10] *See, e.g.*, *Gueye v. Wells Fargo Bank*, 2023 WL 3668521, at *2 (N.D. Cal. May 24, 2023) (dismissing claims as time-barred). It is no excuse to claim that Plaintiff "could not with due diligence have discovered" the use of trackers (ECF 26 ¶ 143) because their use was specifically disclosed in the Privacy Policies that Plaintiff agreed to and could have read with bare minimum due diligence.

### **CONCLUSION**

For all of these reasons, the Court should dismiss the Complaint with prejudice.

---

[10] *See* Cal. Civ. Proc. Code ("CCP") § 340 (one year for CIPA); 18 U.S.C. § 2520 (two years for Wiretap Act); Tex. Civ. Prac. & Rem. Code ("TCPRC") § 16.003(a), CCP § 335.1 (two years for negligence); TCPRC § 16.003 (two years for unjust enrichment); Cal. Penal Code § 502(e)(5) (three years for CDAFA); Cal. Bus. & Prof. Code § 17208 (four years for UCL); CCP § 338 (three years for CCPA and unjust enrichment); TCPRC § 16.004, CCP § 337 (four years for breach of contract).

1     Dated: October 8, 2025                          Respectfully submitted,

2

3                                                      By:  */s/ W. Kyle Tayman*
                                                           W. KYLE TAYMAN (admitted *pro hac*
4                                                          *vice*)
                                                           *KTayman@goodwinlaw.com*
5                                                          ALLISON J. SCHOENTHAL (admitted
                                                           *pro hac vice*)
6                                                          *ASchoenthal@goodwinlaw.com*
                                                           REBECCA L. TARNEJA (SBN 293461)
7                                                          *RTarneja@goodwinlaw.com*
                                                           **GOODWIN PROCTER LLP**
8
                                                           Attorneys for Defendant
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that I electronically filed the foregoing with the clerk of the court for the

3    United States District Court for the Northern District of California by using the CM/ECF system

4    on October 8, 2025. I further certify that all participants in the case are registered CM/ECF users

5    and that service will be accomplished by the CM/ECF system. I certify under penalty of perjury

6    that the foregoing is true and correct.

7

Dated:    October 8, 2025                              */s/ W. Kyle Tayman*
8                                                                  W. KYLE TAYMAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Goodwin Procter LLP
Attorneys at Law

27                    Mr. Cooper's MTD Am. Compl.
                      Case No. 3:25-cv-04412-JSC