Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Tel: (317) 636-6481
nlyons@cohenmalad.com
vmiller@cohenmalad.com

[*additional counsel listed on signature pages*]

***Counsel for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| MARTIN BELTRAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER,<br><br>Defendant. | Case No. 3:25-cv-04412-JSC<br><br>**PLAINTIFF'S OPPOSITION TO MR. COOPER'S MOTION TO DISMISS**<br><br>Hearing: January 29, 2026<br>Time: 10:00 a.m.<br>Location: 8, 19th Floor<br>Judge: Honorable Jacqueline Scott Corley |

1

2

# <u>TABLE OF CONTENTS</u>

3    INTRODUCTION ................................................................................................. 1

4

FACTUAL & PROCEDURAL BACKGROUND ..................................................... 1

5

6    ARGUMENT ...................................................................................................... 2

7    STANDARD OF REVIEW ...................................................................................... 2

8

9        I.    BELTRAN HAS STANDING. .......................................................................... 3

10           A.    Concreteness ...................................................................... 3

11           B.    Traceability ........................................................................ 9

12        II.    BELTRAN'S ALLEGATIONS ARE SUFFICIENTLY PLED UNDER RULE 12(B)(6) ................ 10

13           A.    Beltran Never Consented. .....................................................11

14

15           B.    The Common Law Claims Survive.......................................... 13

16               1.    Breach of Contract – Count 5 ...................................... 13

17               2.    Unjust Enrichment – Count 6 ...................................... 14

18

19               3.    Breach of Confidence – Count 7.................................... 14

20               4.    Negligence – Count 1 ................................................ 15

21           C.    The Statutory Claims Are Well Pled. ....................................... 17

22               1.    Comprehensive Computer Data Access & Fraud Claim – Count 2.............. 17

23               2.    Unfair Competition Law Claim – Count 3 ...................... 18

24

25               3.    Consumer Privacy Act Claim – Count 4........................ 19

26               4.    The Wiretap and CIPA Claims Are Sufficiently Pled – Counts 8–12 .......... 20

27    CONCLUSION........................................................................................... 25

28

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Cases**                                                                                   **Page(s)**

*Alston v. Cnty. of Sacramento*,
    No. CIV S-11-2281 GEB, 2012 WL 2839825 (E.D. Cal. July 10, 2012) ...............................15

*In re Ambry Genetics Data Breach Litig.*,
    567 F. Supp. 3d 1130 (C.D. Cal. 2021) ...............................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................3

*Atkins v. Amplitude, Inc.*,
    No. 24-CV-04913-RFL, 2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) ...............................5

*B.K. v. Desert Care Network*,
    No. 2:23-CV-05021 SPG (PDX), 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ...................16

*B.K. v. Eisenhower Med. Ctr.*,
    721 F. Supp. 3d 1056 (C.D. Cal. 2024) ...............................16

*Balanzar v. Fid. Brokerage Servs., LLC*,
    654 F. Supp. 3d 1075 (S.D. Cal. 2023) ...............................12

*Balestrieri v. SportsEdTV, Inc.*,
    No. 25-CV-04046-SK, 2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) ...............................23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................2

*In re BetterHelp, Inc.*,
    No. 23-CV-01033-RS, 2024 WL 4504527 (N.D. Cal. Oct. 15, 2024) ...................25

*Blumenfeld v. Regions Bank*,
    374 F. Supp. 3d 1165 (N.D. Ala. 2019) ...............................8

*Bohnak v. Marsh & McLennan Cos., Inc.*,
    580 F. Supp. 3d 21 (S.D.N.Y. Jan. 17, 2022) ...............................6

*Brown v. Google LLC*,
    685 F. Supp. 3d 909 (N.D. Cal. 2023) ...............................6

*Calhoun v. Google, LLC*,
    113 F.4th 1141 (9th Cir. 2024) .................................................................12

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605 (N.D. Cal. 2021) ...............................................5, 19

*In re Capacitors Antitrust Litig.*,
    154 F. Supp. 3d 918 (N.D. Cal. 2015) .......................................................18

*Cody v. Ring LLC*,
    718 F. Supp. 3d 993 (N.D. Cal. 2024) .......................................................12

*Cottle v. Plaid Inc.*,
    536 F. Supp. 3d 461 (N.D. Cal. 2021) .......................................................12

*Daghaly v. Bloomingdales.com, LLC*,
    No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024)....................6, 7

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*,
    No. 2:23-CV-01447-ART-BNW, 2025 WL 2393024 (D. Nev. Aug. 15, 2025) ...................19

*Deivaprakash v. Conde Nast Digital*,
    No. 25-CV-04021-RFL, __ F. Supp. 3d __, 2025 WL 2541952 (N.D. Cal.
    Sept. 4, 2025) .................................................................................................5

*Doe v. Eating Recovery Ctr. LLC*,
    2024 WL 2852210 (N.D. Cal. June 4, 2024) .............................................22

*Doe v. Tenet Healthcare Corp.*,
    789 F. Supp. 3d 814 (E.D. Cal. 2025).......................................................22

*Doe v. Tenet Healthcare Corp.*,
    No. 1:23-CV-01106-DC-CKD, __ F.Supp.3d __, 2025 WL 1635956 (E.D.
    Cal. June 9, 2025) ..........................................................................................5

*In re Eureka Casino Breach Litig.*,
    No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198 (D. Nev. Sept. 19, 2024)....................19

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. .................................................................................................16

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .......................................................14

*Facebook, Inc. v. Power Ventures, Inc.*,
    No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) .......18

iv

*Fernandez v. Leidos, Inc.*,
   127 F. Supp. 3d 1078 (E.D. Cal. 2015)................................................................10

*Fregosa v. Mashable, Inc.*,
   2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) (Breyer, J.) .......................................24

*Gabrielli v. Haleon US Inc.*,
   No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ....................5, 6, 24

*Garon v. Keleops USA, Inc.*,
   2025 WL 2522374 (N.D. Cal. Sept. 2, 2025) ........................................................24

*Gershzon v. Meta Platforms, Inc.*,
   No. 23-CV-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) .......................22

*Greenley v. Kochava, Inc.*,
   684 F. Supp. 3d 1024 (S.D. Cal. 2023)................................................................17

*Guardant Health, Inc. v. Natera, Inc.*,
   580 F. Supp. 3d 691 (N.D. Cal. 2022) ..................................................................3

*Gueye v. Wells Fargo Bank*,
   No. 22-CV-08904-JSC, 2023 WL 3668521 (N.D. Cal. May 24, 2023) ....................25

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1989) ............................................................................11

*HDI Glob. Specialty SE v. Coreslab Structures (Texas) Inc.*,
   No. 1:20-CV-01110-LY, 2021 WL 1226561 (W.D. Tex. Mar. 31, 2021) ..................14

*Heagerty v. Equifax Info. Servs. LLC*,
   447 F. Supp. 3d 1328 (N.D. Ga. 2020) ..................................................................8

*Henderson v. Reventics, LLC*,
   No. 23-CV-00586-MEH, 2024 WL 5241386 (D. Colo. Sept. 30, 2024)....................10

*Jensen v. Brown*,
   131 F.4th 677 (9th Cir. 2025) ..............................................................................12

*Khamooshi v. Politico LLC*,
   No. 24-CV-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025).........................8

*Kishnani v. Royal Caribbean Cruises Ltd.*,
   No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025)......................7

*Knickerbocker v. United States Dep't of Interior*,
   No. 116CV01811DADJLT, 2018 WL 836307 (E.D. Cal. Feb. 13, 2018) .............................15

*Lakes v. Ubisoft, Inc.*,
   777 F. Supp. 3d 1047 (N.D. Cal. 2025) ...........................................................12

*Lam v. Target Corp.*,
   No. 215CV01922KJMCKD, 2017 WL 4154947 (E.D. Cal. Sept. 19, 2017)......................15

*Larroque v. First Advantage LNS Screening Sols., Inc.*,
   No. 15-CV-04684-JSC, 2016 WL 4577257 (N.D. Cal. Sept. 2, 2016) ...............................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014).............................................................................9

*Lusnak v. Bank of Am., N.A.*,
   883 F.3d 1185 (9th Cir. 2018) .................................................................12

*M. H. v. Done Glob. Inc.*,
   No. 24-CV-03040-RFL, 2025 WL 629613 (N.D. Cal. Feb. 26, 2025)...............................23

*M.G. v. Therapymatch, Inc.*,
   No. 23-cv-04422-AMO, 2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ......................20, 22

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ...................................................................3

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) .................................................................10

*Mecinas v. Hobbs*,
   30 F.4th 890 (9th Cir. 2022) ....................................................................9

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................10

*In re Meta Pixel Tax Filing Cases*,
   __ F. Supp. 3d __, 2025 WL 2243615 (N.D. Cal. Aug. 6, 2025)............................24

*In re Meta Pixel Tax Filing Cases*,
   724 F. Supp. 3d at 1023 .........................................................................19

*Mikulsky v. Bloomingdale's, LLC*,
   713 F. Supp. 3d 833 (S.D. Cal. 2024)..........................................................21

PLAINTIFF'S OPPOSITION TO MR. COOPER'S MOTION TO DISMISS
Case No. 3:25-cv-04412-JSC

*Mitchener v. CuriosityStream, Inc.*,
    No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ................................7

*Mitchener v. Talkspace Network LLC*,
    No. 2:24-CV-07067-JAK, 2025 WL 1822801 (C.D. Cal. June 27, 2025) ...........................6

*Moody v. C2 Educ. Sys. Inc.*,
    2:24-cv-04249, 742 F. Supp. 3d 1072 (C.D. Cal. July 25, 2024) ...........................24

*Nayab v. Cap. One Bank (USA), N.A.*,
    942 F.3d 480 (9th Cir. 2019) ................................8

*Nguyen v. Abbott Lab'ys, Inc.*,
    No. 24 CV 8289, 2025 WL 2299753 (N.D. Ill. Aug. 8, 2025) ................................7

*O'Handley v. Weber*,
    62 F.4th 1145 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2715 (2024) ........................9

*In re Pawn Am. Consumer Data Breach Litig.*,
    No. 21-CV-2554, 2022 WL 3159874 (D. Minn. Aug. 8, 2022) ........................6

*Physicians Comm. for Responsible Med. v. Vilsack*,
    No. 21-CV-03088-RS, 2023 WL 1873084 (N.D. Cal. Feb. 9, 2023) ........................10

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025) ................................7, 8, 16

*In re Progressive Leasing Breach Litig.*,
    No. 2:23-CV-00783-DBB-CMR, 2025 WL 213744 (D. Utah Jan. 16, 2025) ......................19

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ................................24

*Riganian v. LiveRamp Holdings, Inc*,
    2025 WL 2021802 (N.D. Cal. Jul. 18, 2025*)* ................................21

*Rodriguez v. Autotrader.com, Inc.*,
    762 F. Supp. 3d 921 (C.D. Cal. 2025) ................................6

*Rodriguez v. Autotrader.com, Inc.*,
    No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ......................6

*Rodriguez v. Google LLC*,
    772 F. Supp. 3d 1093 (N.D. Cal. 2025) ................................18

PLAINTIFF'S OPPOSITION TO MR. COOPER'S MOTION TO DISMISS
Case No. 3:25-cv-04412-JSC

*Rodriguez v. Google LLC*,
   No. 20-CV-04688-RS, 2025 WL 2237720 (N.D. Cal. Aug. 6, 2025) ....................................17

*Salazar v. Paramount Glob.*,
   683 F. Supp. 3d 727 (M.D. Tenn. 2023) ..................................................................................10

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*,
   343 F.3d 1036 (9th Cir. 2003) ...................................................................................................3

*Scott v. Kuhlmann*,
   746 F.2d 1377 (9th Cir. 1984) .................................................................................................12

*Shah v. Cap. One Fin. Corp.*,
   768 F. Supp. 3d 1033 (N.D. Cal. 2025) ...............................................................12, 16, 20, 22

*Shah v. Fandom, Inc.*,
   754 F. Supp. 3d 924 (N.D. Cal. 2024) .....................................................................................24

*Smith v. Rack Room Shoes, Inc.*,
   No. 24-CV-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025)..............................18, 23

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)....................................................................................................................3

*Swarts v. Home Depot, Inc.*,
   689 F. Supp. 3d 732 (N.D. Cal. 2023) .....................................................................................23

*Tellez v. Pac. Gas & Elec. Co.*,
   817 F.2d 536 (9th Cir. 1987) ...................................................................................................15

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir. 1990) .................................................................................................15

*Toy v. Life Line Screening of Am. Ltd.*,
   No. 23-CV-04651-RFL, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024)...........................16, 22

*Warth v. Seldin*,
   422 U.S. 490 (1975)....................................................................................................................3

*Washington v. Flixbus, Inc.*,
   No. 3:25-CV-00212-H-MSB, 2025 WL 1592961 (S.D. Cal. June 5, 2025) .........................13

*In re Zappos.com, Inc.*,
   No. 3:12-CV-00325-RCJ, 2013 WL 4830497 (D. Nev. Sept. 9, 2013)..................................14

PLAINTIFF'S OPPOSITION TO MR. COOPER'S MOTION TO DISMISS
Case No. 3:25-cv-04412-JSC

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ..................................................................................21

**Rules**

Fed. R. Civ. P. 8 ............................................................................................... *passim*

Fed. R. Civ. P. 12 ............................................................................................. *passim*

**Statutes**

18 U.S.C. § 2511 ..............................................................................................21, 25

18 U.S.C. § 2511 ......................................................................................................24

Cal. Civ. Code § 1798.145 ......................................................................................20

Cal. Civ. Code § 1798.150 ......................................................................................19

Cal. Civ. Code § 1798.100, *et seq* ........................................................................19

15 U.S.C. § 6801–6809 ............................................................................................20

15 U.S.C. § 41–58 ....................................................................................................18

**Other Authorities**

Fourth Amendment ...................................................................................................21

Restatement (Second) of Torts § 652B cmt. b (Am. L. Inst. 1977) ..........................9

www.petsuppliesplus.com ..........................................................................................7

PLAINTIFF'S OPPOSITION TO MR. COOPER'S MOTION TO DISMISS
Case No. 3:25-cv-04412-JSC

### INTRODUCTION

Plaintiff Martin Beltran individually, and on behalf of all others similarly situated (hereinafter "Plaintiff" or "Beltran") respectfully opposes Defendant, Nationstar Mortgage LLC d/b/a Mr. Cooper's ("Mr. Cooper" or "Defendant") Motion to Dismiss. D.E. 24. The conduct alleged in this case involves the disclosure of the most sensitive kinds of data: a person's financial information and condition. This is not a case where a plaintiff is trying to secure a windfall based on how he jiggled his mouse while alone in his basement buying retail products. This is a case about Mr. Cooper sharing with tech companies the choices that a consumer-customer makes while interacting with its website, choices like the reason a customer is refinancing their home mortgage. This is highly sensitive data that Mr. Cooper was bound by law to safeguard. Instead it shared and sold it. Mr. Cooper's kitchen-sink Motion to Dismiss does not bear.

### FACTUAL & PROCEDURAL BACKGROUND

This case is about a mortgage servicer that collects and uses private customer data for its own business purposes and sells it to third parties. D.E. 26 at ¶¶ 32, 33. In detailed allegations, Beltran has pled how Mr. Cooper's tracking software captures and transmits consumers' data to third and fourth parties without their consent. D.E. 26 at ¶¶ 57–74. Mr. Cooper has employed these software programs since at least May 2019. D.E. 26 at ¶ 54. Relevant to the arguments asserted in Mr. Cooper's Motion, Beltran explicitly alleges here that he (and consumers like him) never consented to the nature and degree of data transmission here. D.E. 26 at ¶¶ 1, 13, 14, 75, 95, 122, 136, 198. Second, relevant to standing, Beltran never signed up for a mortgage with Mr. Cooper— his mortgage was bought out by Mr. Cooper from another mortgage servicer. D.E. 26 at ¶ 123. After Beltran started using Mr. Cooper's website, he began seeing all kinds of ads on third-party

PLAINTIFF'S OPPOSITION TO MR. COOPER'S MOTION TO DISMISS
Case No. 3:25-cv-04412-JSC

websites, because Mr. Cooper sold his data. D.E. 26 at ¶¶ 128, 137, 140. The Amended Complaint ("Complaint") explicitly alleges how Beltran was injured by Mr. Cooper's conduct—facts that this Court must presume to be true. *Id.*

In particular, the data that Mr. Cooper took from customers and shared with tech companies is highly sensitive personal information: *e.g.*, reasons customers provide Mr. Cooper for refinancing, requests for quotes, the type of property at issue and the stage of the homebuying process. D.E. 26 at ¶¶ 4, 41, 46, 53, 62, 70, 71. All this is nonpublic, sensitive financial information. *E.g.*, D.E. 26 at ¶ 64. And Mr. Cooper collected and shared it. D.E. 26 at ¶ 62.

## ARGUMENT

Mr. Cooper raises a host of inapposite or otherwise failing arguments in its Motion to Dismiss. First, Beltran has standing because his confidential financial information was taken and shared by Mr. Cooper. Second, Mr. Cooper's laundry list of Rule 12(b)(6) arguments do not bear— many of the issues Mr. Cooper raises are not appropriate for resolution now (like consent), and other arguments have been rejected by courts in this District and elsewhere. From a 35,000 foot view, Mr. Cooper's bid to dismiss this case amounts to, "*Well, Judge, everyone was doing this, so we shouldn't be liable for something everyone was doing.*" D.E. 30 at 14 ("This case joins a constellation of cases arising from the nearly ubiquitous use of advertising trackers on websites."). A commercial practice like data collection can be ubiquitous but still unlawful, as it is here.

## STANDARD OF REVIEW

Rule 8(a)(2) requires only a short and plain statement of the claim giving "the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "does not require 'detailed factual allegations,'" but

---

2

merely expects "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). All reasonable inferences are to be drawn in the pleader's favor. *Guardant Health, Inc. v. Natera, Inc.*, 580 F. Supp. 3d 691, 702 (N.D. Cal. 2022). On a motion to dismiss under Rule 12(b)(1), the factual allegations in the complaint are presumed true and the motion is granted only if plaintiff fails to allege an element necessary for subject matter jurisdiction. *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

## I.    Beltran has Standing.

To begin, standing tests whether a plaintiff has a sufficient "personal stake in the outcome" to invoke federal jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing hinges on the traditional tripartite test of concrete injury, traceability, and redressability. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Here, Mr. Cooper attacks elements one and two of standing: concrete injury and traceability. D.E. 30 at 18.[1]

### A. Concreteness

The injury alleged here is concrete. Beltran is not merely alleging the simple tracking of benign information that communicates nothing meaningful about him to others. Mr. Cooper's collection and transmission facilitated third parties' (*i.e.* Meta and Google) identification of users and their further ability to link users to other online accounts. D.E. 26 at ¶ 56. What is actually

---

[1] Beltran employs the blue pagination of Mr. Cooper's Motion to Dismiss for reference.

PLAINTIFF'S OPPOSITION TO MR. COOPER'S MOTION TO DISMISS
Case No. 3:25-cv-04412-JSC

being collected by Mr. Cooper and transmitted is highly confidential financial information.

For example, when a user interacts with Mr. Cooper's website to refinance his or her mortgage, the website reports to Facebook that the user is seeking "simple cash options." D.E. 26 at ¶ 58. The trackers further report that the user is an existing loan customer and that the user actually submitted a refinancing application to Mr. Cooper. D.E. 26 at ¶¶ 58, 60. That includes the specified reason the customer is trying to refinance or get a loan, including to pay off debt. D.E. 26 at ¶¶ 62, 64, 67. It also includes browsing activities, including the pages Plaintiff viewed, the property type and location, and the stage of the homebuying process the user is in. D.E. 26 at ¶ 137. To weave this litany of tech into a cohesive whole: Mr. Cooper tells tech companies that "User Bob" wants to refinance to pay off his debt, that he is an existing customer with Mr. Cooper, that his primary single family residence is located in California, and that he actually hit the "Apply" button for refinancing. D.E. 26 at ¶¶ 58, 60, 62, 64, 67, 68.

This is highly valuable information to sell to advertisers who, say, have an interest in selling specific services to User Bob: *e.g.*, other mortgage companies looking to offer competitive refinance rates (as alleged here, D.E. 26 at ¶ 128), realtors, lenders looking to offer competitive loan pricing, and other real estate companies. Mortgages are one of the biggest investments an individual can make over their lifetimes, and mortgage companies have access to information that, if communicated to a stranger to that relationship, could inform the stranger that the mortgagor is cash-poor, recently secured a windfall, or needs to tap into their equity or refinance. The disclosure of this wholly private and confidential information—that personally identifies the consumer—is

offensive.[2]

Very recent authority in this very District[3] confirms that plaintiffs alleging the taking of sensitive information have standing under Article III. *Compare* D.E. 26 at ¶¶ 38, 45, 136, 137 (Mr. Cooper shared Plaintiff's data), *with Deivaprakash v. Conde Nast Digital*, No. 25-CV-04021-RFL, __ F. Supp. 3d __, 2025 WL 2541952, at *4 n.4 (N.D. Cal. Sept. 4, 2025) ("In any event, Deivaprakash's allegations likely satisfy Article III's injury requirement.") (denying motion to dismiss in online tracking case); *Atkins v. Amplitude, Inc.*, No. 24-CV-04913-RFL, 2025 WL 2521732, at *1 (N.D. Cal. Sept. 2, 2025) (finding Article III standing with allegations of sharing timestamped geolocation information, search terms, products placed into a cart, and restaurants viewed); *Gabrielli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025) (finding Article III standing with allegations regarding website interactions, user input data, and browsing history); *see also Doe v. Tenet Healthcare Corp.*, No. 1:23-CV-01106-DC-CKD, __ F.Supp.3d __, 2025 WL 1635956, at *11 (E.D. Cal. June 9, 2025) (similar); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021). All these cases confirm that Beltran has Article III standing and that his injury is concrete.

---

[2] Imagine, in a less technical world, a loan officer disclosing to a drinking buddy over beers that Mrs. Jones had come to the bank in her Sunday best and tearily confessed that she needed to tap into her equity to pay her bills or needed to refinance to make ends meet. Sharing such information would be violate the bank employee's duty to keep Mrs. Jones' confidential information safe. Mr. Cooper's lack of regard for consumer privacy is evident – it states unequivocally in its Motion that "there is nothing confidential about shopping for a mortgage." D.E. 30 at 27.

[3] The caselaw in this area of law is highly active and district court opinions are being released at a relentless clip regarding some of the claims alleged in this case. While different courts might see these claims differently, the bottom line is this: online tracking where the harvester shares data that is personal or private is a recoverable injury. Beltran has standing to assert claims to remedy such intrusions into his private life. Sharing data like why you want to refinance is outside the scope not only of the policies articulated by Mr. Cooper, D.E. 26 at ¶¶ 91, 92, 95, but of law.

5

These allegations also meet the standard for standing under "traditional" harms recognized at common law. District courts applying *TransUnion* in this District and elsewhere to privacy cases find that privacy victims have standing when their data is disclosed, as the harm they suffer bears a "close relationship" to the "disclosure of private information" or an "intrusion" to their privacy—"traditional" harms that establish standing. *See, e.g.*, *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *6–8; *Brown v. Google LLC*, 685 F. Supp. 3d 909, 922 (N.D. Cal. 2023); *see also Bohnak v. Marsh & McLennan Cos., Inc.*, 580 F. Supp. 3d 21, 30 (S.D.N.Y. Jan. 17, 2022) ("in light of the *TransUnion* Court's admonition that common-law analogs need not provide 'an exact duplicate,'... I find the fit sufficiently close."); *In re Pawn Am. Consumer Data Breach Litig.*, No. 21-CV-2554 (PJS/JFD), 2022 WL 3159874, at 3 (D. Minn. Aug. 8, 2022) (same). The cases cited by Mr. Cooper are inapposite.[4] D.E. 30 at 19.

---

[4] Some of those cases concerned claims not present here and others did not analyze the Article III standing issue in detail. *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) (short opinion addressing statutory rather than Article III standing); *Mitchener v. Talkspace Network LLC*, No. 2:24-CV-07067-JAK (BFMX), 2025 WL 1822801, at *8 (C.D. Cal. June 27, 2025) ("This conclusory allegation does not identify what personal information of Plaintiff's, if any, was captured by the TikTok Cookie."); *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) (short opinion without much standing analysis concerning a tester of auto sales website); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926–27 (C.D. Cal. 2025) (same case) ("Not all information will qualify; the information must be *sufficiently personal or sensitive* that its disclosure is harmful. Because Plaintiff fails to describe the contents of her query, she fails to demonstrate that she suffered an injury in fact.") (internal citations omitted, emphasis added); *Larroque v. First Advantage LNS Screening Sols., Inc.*, No. 15-CV-04684-JSC, 2016 WL 4577257, at *1 (N.D. Cal. Sept. 2, 2016) (FCRA context). The reported *Rodriguez* opinion is precisely correct – the information given to a mortgage servicer is absolutely sufficiently personal and sensitive. Plaintiff regularly interacted with Mr. Cooper's website to manage his mortgage, used a number of the relevant tabs (like refinance and get cash from equity), and entered his personal information into the website. D.E. 26 at ¶¶ 126, 133. The Complaint explicitly alleges what Mr. Cooper shared of Plaintiff's. D.E. 26 at ¶¶ 9, 38, 45, 136, 137. Mr. Cooper is wrong that Plaintiff cannot point to any specific information taken.

Plaintiff's allegations about the transmitted data are particularized, not general. *See* D.E. 26 at ¶¶ 9, 38, 45, 136, 137. This is not a case where a consumer is simply interacting with a retail website that sells a widget or a retail product (true for every case cited by Mr. Cooper at D.E. 30 at 20).[5] Mr. Cooper sets much store by the *Popa* case, but there, the plaintiff was simply browsing for pet supplies on www.petsuppliesplus.com. *Popa v. Microsoft Corp.*, 153 F.4th 784, 786 (9th Cir. 2025). That case actually supports finding that Beltran has standing under Article III here:

> At most, Popa alleges that Clarity gathered her pet-store preferences and her street name. To the extent Microsoft's tracking software *could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information), Popa does not plausibly allege the infringement of any such privacy interest.

*Popa*, 153 F.4th at 791 (emphasis in original). Unsurprisingly, Mr. Cooper ignores that *Popa* itself stated that "financial information" is sufficiently sensitive for standing. That is precisely what is alleged in this case: the reason a customer wants to refinance, the current state of the homebuying process, that a customer wants to procure a loan to "get cash," D.E. 26 at ¶¶ 4, 58, 115, exactly what Beltran browsed for on Mr. Cooper's website. D.E. 26 at ¶ 126. Mr. Cooper unlawfully shared that information. D.E. 26 at ¶¶ 9, 38, 45, 136, 137.

*Popa* analogized the injuries suffered by the dog food plaintiff to a store clerk observing customers. *Popa*, 153 F.4th at 791 ("Indeed, the monitoring of Popa's interactions with PSP's

---

[5] *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) ("She alleges only that she 'visited' and 'accessed' the website.") (Bloomingdales does not sell mortgages); *Mitchener v. CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *1 (N.D. Cal. Aug. 6, 2025) (TikTok and video streaming); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *1 (N.D. Cal. June 24, 2025) (cruises and TikTok); *Nguyen v. Abbott Lab'ys, Inc.*, No. 24 CV 8289, 2025 WL 2299753, at *1 (N.D. Ill. Aug. 8, 2025) (plaintiffs who requested free trials of glucose monitoring devices).

7

website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales."). While the fact that someone has a mortgage or owns property might be publicly accessible information, the reasons a customer wants to refinance, what kind of loan they want to apply for, and where they are in the homebuying process are not. A grocery store or pharmacy is a public place. The chair in the office of your local bank's branch manager is not. So this case falls precisely into *Popa*'s description of sensitive financial information.

Where financial information is concerned, courts have generally found a sufficient basis for standing rooted in the common law torts of public disclosure of private facts or intrusion upon seclusion. *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 492 (9th Cir. 2019) ("This harm is highly offensive and is not trivial because a credit report can contain highly personal information."); *Heagerty v. Equifax Info. Servs. LLC*, 447 F. Supp. 3d 1328, 1337 (N.D. Ga. 2020) ("intrusion on financial information" was a sufficient basis for standing); *Blumenfeld v. Regions Bank*, 374 F. Supp. 3d 1165, 1170 (N.D. Ala. 2019) ("Under the correct standard, the alleged harm in this case—disclosure of Ms. Blumenfeld's private financial information to a third party—bears a close relationship to the common law's protection against disclosure of private information."). The context of disclosing a credit report is not so different than disclosing the reason behind applying for a loan or where a homebuyer is in the process. As one case cited by Mr. Cooper made clear: it's all about the kind of data disclosed. *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) ("While some types of browsing activity implicate protectable privacy interests, others do not.").

The injury here is precisely the type of injury that cases like *Popa* conclude as sufficient

for Article III standing. Indeed, an illustration from the Restatement of Torts for the section on intrusion upon seclusion is instructive: "A is seeking evidence for use in a civil action he is bringing against B. He goes to the bank in which B has his personal account, exhibits a forged court order, and demands to be allowed to examine the bank's records of the account. The bank submits to the order and permits him to do so. A has invaded B's privacy." Restatement (Second) of Torts § 652B at cmt. b (1977). What if those bank records contain a refinance application with a box marked "Reason for Refinancing"? As this illustration makes clear, the data Mr. Cooper allegedly disclosed arises to the level of Article III injury.

**B. Traceability**

Next, Mr. Cooper attempts to argue that Beltran's injuries are not traceable to its actions. D.E. 30 at 22. It is difficult to see how Mr. Cooper makes this argument with a straight face. The allegations are that Mr. Cooper disclosed Beltran's private data without his consent. *E.g.*, D.E. 26 at ¶¶ 32, 33, 38, 45, 136, 137. Beltran pleads a variety of damages, pleadings that Mr. Cooper conveniently ignores, including embarrassment, frustration, humiliation, emotional distress, and decreased value of information, D.E. 26 at ¶ 140, in addition to him seeing targeted ads around the same time he opened an online account with Mr. Cooper. D.E. 26 at ¶¶ 128, 140(e). There is no real question that Beltran has pled Mr. Cooper caused his injuries.

Traceability hinges on causation. *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022). This is less strenuous than proximate causation required under tort law. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct."); *O'Handley v. Weber*, 62 F.4th 1145, 1161 (9th Cir.

9

2023), *cert. denied*, 144 S. Ct. 2715 (2024) ("[T]he traceability requirement is less demanding than proximate causation, and thus the 'causation chain does not fail solely because there are several links' or because a single third party's actions intervened.") (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)). Mr. Cooper's effort to import a more stringent traceability requirement into the standing analysis is simply inapposite.[6]

And Plaintiff has more than adequately pled causation here. For example, in the context of intrusion upon seclusion, the injury is traceable to the entity that transmitted the data. Here, that is Mr. Cooper. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 803 (N.D. Cal. 2022) ("Plaintiffs have alleged that Meta is causally connected to their injury. That website developers may also be liable does not mean, of course, that Meta is exempt from liability. And Meta's efforts to prevent receipt of health information do not diminish the irreparable invasion of privacy that plaintiffs have experienced."); *see also Salazar v. Paramount Glob.*, 683 F. Supp. 3d 727, 741 (M.D. Tenn. 2023) (analyzing traceability in a similar pixel case and finding the injury sufficiently alleged).

Mr. Cooper's Rule 12(b)(1) arguments are a red herring. Plaintiff's injuries are sufficiently concrete and the injuries he alleges are directly traceable to Mr. Cooper's conduct.

## II.    Beltran's Allegations are Sufficiently Pled Under Rule 12(b)(6)

First, Texas law does not apply here. Beltran has explicitly pled that he did not consent

---

[6] Mr. Cooper points to a case under the APA about child health guidelines, a data breach case from Colorado, and a data breach case from ten years ago in the Eastern District. *Physicians Comm. for Responsible Med. v. Vilsack*, No. 21-CV-03088-RS, 2023 WL 1873084, at *6 (N.D. Cal. Feb. 9, 2023); *Henderson v. Reventics, LLC*, No. 23-CV-00586-MEH, 2024 WL 5241386, at *9 (D. Colo. Sept. 30, 2024); *Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078 (E.D. Cal. 2015). Not one of these cases is relevant here.

to Mr. Cooper's purported terms, D.E. 26 at ¶¶ 1, 13, 14, 75, 95, 122, 136, 198, and the parties' arguments regarding Mr. Cooper's sign-in wrap language are fully briefed, D.E. 24, 29, 36.

### A. Beltran Never Consented.

The facts in the Complaint regarding consent must be presumed true. D.E. 26 at ¶¶ 1, 13, 14, 75, 95, 122, 136, 198. As Beltran argued in his motion opposing transferring this case to Texas, D.E. 29 at 5, his mortgage was bought out by Mr. Cooper—he did not originally sign up for a mortgage with Mr. Cooper. D.E. 26 at ¶ 123. The sign-in wrap language in the terms and conditions is not enforceable, because Beltran did not asset. D.E. 29. The Complaint pleads several alternative theories regarding the Privacy Policy, which promised Plaintiff and consumers that only people who needed access to their information to do their jobs would be authorized to access such information. D.E. 26 at ¶ 81. First, Plaintiff pled that Mr. Cooper made numerous representations in the Policy it did not follow; and customers relied on those representations to their detriment. D.E. 26 at ¶¶ 75–77. Second, Plaintiff pled that if the Privacy Policy is enforceable as a contract, Mr. Cooper abused its contractual discretion and breached it. D.E. 26 at ¶¶ 91, 92, 95, 225–231 (breach of contract count).

Beyond what is pled here, consent is a notoriously difficult issue to pin down at the Rule 12 stage.[7] Fundamentally, it is an affirmative defense upon which the *defendant* bears the

---

[7] Beltran opposes Mr. Cooper's request to judicially notice the documents attached to its Motion. D.E. 30-1. They are designed to distract the Court from the well-pled allegations of the Amended Complaint and are thus irrelevant here. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."). The resolution of this motion does not depend on what the terms and conditions of Mr. Cooper's website say, because the harvesting that Beltran alleges occurred was outside the scope of the promises in that document. D.E. 26 at ¶¶ 91–95.

11

burden of proof. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024).[8] This issue implicates not only whether Beltran himself assented to specific privacy policies, but whether the privacy policies provide sufficient notice of what Mr. Cooper is doing with the data. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (finding lack of consent was sufficiently pled and denying motion to dismiss). So it is not appropriate to resolve here. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1044 (N.D. Cal. 2025) ("Because the issue of whether Plaintiffs consented to Defendant's disclosure of their personal information is a factual question, the Court need not reach it at the motion to dismiss stage."); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 491 (N.D. Cal. 2021) ("[T]he question of whether Plaintiffs consented to Plaid's collection of their personal information is a key factual dispute to be decided on the merits rather than a Rule 12 motion."); *see also Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1081 (S.D. Cal. 2023). The limitation of liability clause Mr. Cooper relies on is just as unenforceable as the venue selection clause. Sign-in wrap like this is not enforceable, as explained in Beltran's brief on venue. D.E. 29.

In *Lakes*, cited by Mr. Cooper, the user had to consent over and over every time they made a purchase. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025). And in

---

[8] And affirmative defenses are generally not resolvable on motions to dismiss. *Jensen v. Brown*, 131 F.4th 677, 691 (9th Cir. 2025) ("This rule reflects that affirmative defenses require the defendant to prove facts beyond those necessary to support the plaintiff's *prima facie* case, making it difficult to assess the defense's merit on a 12(b)(6) motion where review is limited to the allegations in the complaint."); *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) ("Ordinarily, affirmative defenses such as preemption may not be raised on a motion to dismiss except when the defense raises no disputed issues of fact."); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact.") (internal citation omitted).

---

*Flixbus*, there was only one plausible interpretation of the privacy policy. *Washington v. Flixbus, Inc.*, No. 3:25-CV-00212-H-MSB, 2025 WL 1592961, at *4 (S.D. Cal. June 5, 2025). Here, the Privacy Policy explicitly said only people who need customer information to do their jobs would see it, and the types of personal information Mr. Cooper shares do not depend on the service the customer has with Mr. Cooper. D.E. 26 at ¶¶ 81, 86. It is also unclear if Facebook falls under the Policy. D.E. 26 at ¶ 88. Consent is not a sufficient basis to dismiss this case now.

## B. The Common Law Claims Survive.

Mr. Cooper throws spaghetti at the wall to assert that each of Beltran's common law claims cannot survive. Of course, under the plain terms of Rule 8, Beltran can plead inconsistent theories in the alterative.

### 1. Breach of Contract – Count 5

Plaintiff's breach claim survives Rule 12. The thrust of the claim is that Mr. Cooper promised to safeguard consumer information—by virtue of specific language in the Privacy Policy—and failed to do so. D.E. 26 at ¶ 230. The precise promise Mr. Cooper broke is its statement that only those people who need personal data to do their jobs would see it. D.E. 26 at ¶ 81. Tech companies receiving the information from the pixel technology do not need Beltran's information to do their jobs. Mr. Cooper promised to safeguard this data and then shared it. D.E. 26 at ¶¶ 90–95. The implied contract claim survives because the elements are the same, the details of what promises were broken are adequately alleged, and courts have found implied contract claims survive where individuals disclose sensitive information to receive a benefit. *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1144 (C.D.

Cal. 2021).[9]

### 2.  Unjust Enrichment – Count 6

Under California law, unjust enrichment can be an alternative theory to breach of contract. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (plaintiffs stated claim for unjust enrichment under California law as alternative to contract theory). Alternative pleading is permitted by Rule 8. And as discussed above, consent is not a defense to this claim now because it is an affirmative defense ill suited to resolving on a motion to dismiss.

### 3.  Breach of Confidence – Count 7

For the same reasons, the breach of confidence claim is sufficiently pled here because it is pled in the alternative to the contract claim. But Mr. Cooper goes further in addressing this claim and baldly suggests that "there is nothing confidential about shopping for a mortgage." D.E. 30 at 27. Certainly it is true that documents concerning a mortgage company's interests in real property are matters of public record. But a customer's financial condition, the reason they want to refinance, or the fact that they want a cash-out equity product are confidential. Consider the kinds of data that would be valuable to a tech company looking to sell ads that Mr. Cooper allegedly shared in this case. Want to refinance because your interest rate is too high? Want to

---

[9] The cases cited by Mr. Cooper are inapposite. *HDI Global* was decided under Texas law, and the quoted text from *Zappos* is out of context and does not stand for some general proposition about representations about data security. *HDI Glob. Specialty SE v. Coreslab Structures (Texas) Inc.*, No. 1:20-CV-01110-LY, 2021 WL 1226561, at *4 (W.D. Tex. Mar. 31, 2021); *In re Zappos.com, Inc.*, No. 3:12-CV-00325-RCJ, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013) ("The first type of contract for the sale of goods is not alleged to have been breached, and the unilateral statements of fact alleged as to the safety of customers' data do not create any contractual obligations, although if negligently or intentionally false, such statements can be the basis of misrepresentation claims in tort.").

cash out your equity because you are getting divorced? Want to borrow against your equity because you need cash? Want to pay off your mortgage in full because you just won the lottery? Want to check interest rates inside the customer portal? Checking refinance rates within Mr. Cooper's portal every day for a week to see how the rates are changing? That is the substance of what Mr. Cooper sent to tech companies through these trackers. That data is confidential.

### 4. Negligence – Count 1

Mr. Cooper alleges that Beltran's negligence claim cannot survive because Beltran pleads that Mr. Cooper acted intentionally and because Beltran fails to plead damages. D.E. 30 at 27–28. Neither argument holds water.

Rule 8 permits plaintiffs to plead alternative and inconsistent theories like intentionality and negligence. This is black letter law at the Rule 12 stage. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990) ("The same should be true if the case is one where, knowing a given set of predicate facts, a prudent lawyer would assert more than one legal theory as the basis for relief and would make alternative or inconsistent allegations (*intentional acts and negligence*, for example) to support the different theories.") (emphasis added); *Tellez v. Pac. Gas & Elec. Co.*, 817 F.2d 536, 540 (9th Cir. 1987) (same rule for intentional and negligent behavior); *see also Knickerbocker v. United States Dep't of Interior*, No. 116CV01811DADJLT, 2018 WL 836307, at *7 (E.D. Cal. Feb. 13, 2018) ("Defendant United States cites no authority for the proposition that intentional and negligent conduct cannot be pleaded in the alternative."). The cases Mr. Cooper cites are all employment cases alleging intentional and negligent infliction of emotional distress. *Lam v. Target Corp.*, No. 215CV01922KJMCKD, 2017 WL 4154947, at *8 (E.D. Cal. Sept. 19, 2017) (summary judgment ruling); *Alston v. Cnty. of*

---

15

*Sacramento*, No. CIV S-11-2281 GEB, 2012 WL 2839825, at *14 (E.D. Cal. July 10, 2012) (where court found *pro se* plaintiff's claims frivolous).

Next, Mr. Cooper attempts to assert that Beltran has not sufficiently pled damages. D.E. 30 at 28. Not so. Beltran pleads, *e.g.*, embarrassment, frustration, humiliation, emotional distress, and decreased value of his information. D.E. 26 at ¶ 140. *See also Shah*, 768 F. Supp. 3d at 1046 ("Because Plaintiffs plead non-economic injuries, the pleadings are sufficient for purposes of the motion to dismiss.") (negligence claim). These are not speculative injuries. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. at 799 (declining to dismiss negligence theory because plaintiffs' damages were not speculative, and noting at 786: "The alleged injury is 'concrete' largely for the reasons already discussed – if you use a company's social media platform to share sensitive information with only your friends, then you suffer a concrete injury when the company disseminates that information widely."); *see also B.K. v. Desert Care Network*, No. 2:23-CV-05021 SPG (PDX), 2024 WL 1343305, at *10 (C.D. Cal. Feb. 1, 2024) (declining to dismiss negligence claim because privacy injuries were sufficient injury).

Because the injury here is the disclosure of deeply private financial information, it is not a simple misappropriation of personal information. *Toy v. Life Line Screening of Am. Ltd.*, No. 23-CV-04651-RFL, 2024 WL 1701263, at *4 (N.D. Cal. Mar. 19, 2024) (disclosure of sensitive medical information sufficed to show damages for negligence claim). *Cf. also Popa*, 153 F.4th at 791 (referencing disclosure of financial information as offensive). The injuries here are likewise greater than those alleged in *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1066 (C.D. Cal. 2024), where the injury was solely based on the loss of value of the plaintiffs'

data and where the plaintiffs paid no money to the defendant. The negligence claim in Count One survives.

More fundamentally, negligence claims go to the reasonably prudent person standard. Surely, a mortgage company has a duty to safeguard its customers' private preferences and reasons for taking major financial steps. Mr. Cooper breached that duty by sharing the information when it said it would not. And Beltran was injured because now his private financial business is being sent to tech companies.

## C. The Statutory Claims Are Well Pled.

As articulated in Betran's briefing on the Motion to Transfer, D.E. 29, Mr. Cooper's terms and conditions are unenforceable sign-in wrap with insufficiently conspicuous terms and conditions. Thus, the choice of law provisions have as much force (none) as the venue selection provision in those terms.

### 1. Comprehensive Computer Data Access & Fraud Claim – Count 2

Count Two pleads that Mr. Cooper violated the CDAFA by accessing information from Beltran's computer without his permission. D.E. 26 at ¶¶ 179–191. First, Mr. Cooper would limit the statute's prohibitions to hacking, D.E. 30 at 29, but it reaches a far wider range of conduct. *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1049 (S.D. Cal. 2023) ("[T]he phrase 'without permission' is not limited to conduct that circumvents a device barrier or 'hacks' a computer system.") (denying motion to dismiss CDAFA claim and analyzing another consent-defense); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2025 WL 2237720, at *3 (N.D. Cal. Aug. 6, 2025) ("The statute does not use the term anti-hacking and prohibits more than just hacking by its plain language and as shown by precedent.") (precluding any attempt by Google

---

to characterize CDAFA as "anti-hacking" at trial). This claim is sufficiently pled.

Mr. Cooper also alleges that Beltran pleads insufficient damages. D.E. 30 at 30. But here, where Beltran asserts a disgorgement theory, *see* D.E. 26 at ¶¶ 140(g, h, i), 189–191, 202, 214, 237, 240, Prayer for Relief at ¶ G, courts have said that such damages are sufficiently pled under the CDAFA. *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) ("In light of that intent, Rack Room's alleged unjust profit from the use of Plaintiffs' private personal information, which holds at least some financial value to Rack Room, plausibly constitutes a 'damage or loss' within the meaning of CDAFA."); *see also Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) ("Accordingly, a reasonable juror could find that Plaintiffs suffered damage or loss because Google profited from the misappropriation of their data.") (denying summary judgment). And importantly, "Section 502 sets no threshold level of damage or loss that must be reached to impart standing to bring suit. Under the plain language of the statute, any amount of damage or loss may be sufficient." *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *4 (N.D. Cal. July 20, 2010). Mr. Cooper's selective reading of the damages in this case ignores the other allegations in the complaint. *E.g.*, D.E. 26 at ¶¶ 128, 140. Count Two survives.

## 2. Unfair Competition Law Claim – Count 3

Count Three pleads that Mr. Cooper violated the UCL by misrepresenting its data privacy practices. D.E. 26 at ¶¶ 192–214. Mr. Cooper claims that Beltran's injuries are insufficient to invoke statutory standing[10] and that he does not plead lack of an adequate remedy

---

[10] Statutory standing and Article III standing are distinct. *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 925 (N.D. Cal. 2015).

at law. D.E. 30 at 30–31. The injuries Beltran alleges are cognizable bases for UCL liability. *Calhoun*, 526 F. Supp. at 636 ("Indeed, the Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *see also In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-CV-01447-ART-BNW, 2025 WL 2393024, at *12 (D. Nev. Aug. 15, 2025) (similar). And Beltran did plead an inadequate remedy at law. D.E. 26 at ¶ 239. This is sufficient. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1023 (no need to allege lack of adequate remedy in detail). Count Three survives.

**3.  Consumer Privacy Act Claim – Count 4[11]**

Count Four pleads that Mr. Cooper violated the CCPA by sharing Beltran's personal data without consent. D.E. 26 at ¶¶ 215–224. First, Beltran sent the required notice under Cal. Civ. Code § 1798.150(b). D.E. 26 at ¶ 223. This argument is a red herring—*if* there is a deficiency, the remedy is to amend. Courts have found that statutory damages are sufficiently alleged in amended complaints following the expiration of the 30-day period. *In re Eureka Casino Breach Litig.*, No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198, at *13 (D. Nev. Sept. 19, 2024); *see also In re Progressive Leasing Breach Litig.*, No. 2:23-CV-00783-DBB-CMR, 2025 WL 213744, at *20 (D. Utah Jan. 16, 2025) (rejecting *Griffey* case cited by Mr. Cooper).

This claim alleges that Mr. Cooper violated the CCPA. D.E. 26 at ¶ 220. Mr. Cooper's hyper-technical construction of the rules of pleading would mean that every plaintiff must delineate precisely which subsection under which they seek relief. That is not how Rule 8 works

---

[11] Count Four in this case is for violations of the California Privacy Act, and Count Five is for breach of contract. D.E. 26 at ¶¶ 215, 225. Mr. Cooper mistakenly refers to the CCPA claim as Count Five on line seven of its brief. D.E. 30 at 31.

and not how notice pleading works. This is not a RICO case or a complex healthcare fraud case. Further, the law does not require Plaintiffs to plead a security breach. *Shah*, 768 F. Supp. 3d at 1048–49 ("Courts, however, have also permitted the CCPA claims to survive a motion to dismiss in cases where the plaintiff does not allege a data breach, but instead where the 'defendants disclosed plaintiff's personal information without his consent due to the business's failure to maintain reasonable security practices.'") (quoting *M.G. v. Therapymatch, Inc.*, No. 23-cv-04422-AMO, 2024 WL 4219992, at *7 (N.D. Cal. Sept. 16, 2024)). *See also* D.E. 26 at ¶¶ 77, 140(f), 163(i) (allegations regarding insufficient security protocols).

Finally, Mr. Cooper contends in a throwaway paragraph that the CCPA "expressly carves out an exemption for information subject to the GLBA." D.E. 30 at 32; *see also* Cal. Civ. Code § 1798.145(e). But that subsection states that it does not apply to claims under Section 1798.150, one of the sections at issue in this case. The carveout also does not apply because no information is collection, processed, sold, or disclosed pursuant to the Gramm Leach Bliley Act in any event, making this exception irrelevant to this case. Count Four survives

### 4.  The Wiretap and CIPA Claims Are Sufficiently Pled – Counts 8–12

Mr. Cooper raises a litany of arguments to assert that these counts cannot survive. Its arguments can only be sustained if one ignores the actual allegations in the complaint and the caselaw governing these claims. These claims are well pled and survive.

Consent. First, Mr. Cooper regurgitates its consent argument to attack each of these counts. D.E. 30 at 32. Consent is a fact-intensive affirmative defense, and it does not bear here.

Contents. Second, Mr. Cooper argues that Counts 8, 11, and 12 fail because they do not allege the "contents" of the communications. D.E. 30 at 33. After citing the paragraphs in the

complaint that *do* plead that Mr. Cooper reviewed the contents of those communications, *e.g.*, D.E. 26 at ¶¶ 259, 261, 263, 309–22, 324–34, Mr. Cooper contends that those allegations are not sufficient. Mr. Cooper is simply wrong – the Complaint explicitly pleads that the contents were shared. D.E. 26 at ¶¶ 4, 46. And in any event, whether communications are read in transit is a "fact-intensive question that depends on how the challenged technology and processes actually work[.]" *Riganian v. LiveRamp Holdings, Inc,* 2025 WL 2021802 at *10 (N.D. Cal. Jul. 18, 2025)*. And the Court must presume that Beltran's allegations regarding the contents of his communications are true.

Record Information. Next, Mr. Cooper next contends that the information Beltran entered on its website is simply "record information" not subject to the ECPA or to CIPA. D.E. 30 at 34. That is not accurate. Beltran alleges that his interactions with Mr. Cooper's website were disclosed—like which pages he viewed, his status as a customer, the actions performed on the website, the kinds of products he looked at, and how the user interacted with the website were disclosed. D.E. 26 at ¶¶ 4, 46, 53. This is not simply information like "button clicks" and "mouse movements," which does not necessarily convey anything about why the consumer is on the page. *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024). This is highly personal financial information that should never have been shared or sold.

Information like a person's reasons for refinancing their home mortgage or a homeowner's stage in the homebuying process is not record information. D.E. 26 at ¶¶ 4, 53, 62. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) ("Under the Fourth Amendment, courts have long distinguished between the contents of a communication (in which a person may have a reasonable expectation of privacy) and record information about

those communications (in which a person does not have a reasonable expectation of privacy).”); *Gershzon v. Meta Platforms, Inc.*, No. 23-CV-00083-SI, 2023 WL 5420234, at *13 (N.D. Cal. Aug. 22, 2023) (“This type of information is substantive and personal, as it shows that Gershzon has a disability (or believes that he has a disability) and that he requires a disability parking placard.”). The information alleged in the complaint is far more than “record information.” *See Shah*, 768 F. Supp. 3d at 1054 (“Because Plaintiffs’ communications included Plaintiffs’ personal information, Defendant therefore disclosed contents of the communication.”). None of the statutory claims should be dismissed for alleging sharing of mere record information.

In Transit. Fourth, Mr. Cooper alleges that Counts 8, 11, and 12 fail because they do not allege an interception in transit. D.E. 30 at 34. As Beltran pleads, information is transmitted to tech companies the moment the page loads. D.E. 26 at ¶¶ 35, 38, 39, 121, 261–63. And Mr. Cooper’s argument otherwise has been rejected. *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) (“Courts have held allegations of simultaneous duplication and interception of communications sufficient to plead ‘interception’ while ‘in transit’ under CIPA at the motion to dismiss stage.”) (pixel case); *Toy v. Life Line Screening of Am. Ltd.*, No. 23-CV-04651-RFL, 2024 WL 1701263, at *1 (N.D. Cal. Mar. 19, 2024) (“Regarding the latter, the complaint offers highly detailed allegations about how Pixel works and how the alleged interception occurs.”) (denying motion to dismiss CIPA claim); *see also Doe v. Eating Recovery Ctr. LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024); *M.G. v. Therapymatch, Inc.*, No. 23-CV-04422-AMO, 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024).

Aiding & Conspiring. Ignoring the Complaint, Mr. Cooper next contends that Beltran has insufficiently pled how it aided third parties to conspire under Section 631(a) (pertaining to

22

Count 8). D.E. 30 at 35. Then Mr. Cooper cites precisely the relevant portions of the complaint. D.E. 26 at ¶¶ 14, 259–72. The argument asserted by Mr. Cooper is essentially an intent argument, and courts have said that allegations like the ones in this complaint sufficiently plead knowledge and intent under Section 631. *Balestrieri v. SportsEdTV, Inc.*, No. 25-CV-04046-SK, 2025 WL 2776356, at *11 (N.D. Cal. Sept. 16, 2025) ("Allegations that a defendant intended to collect and disclose information are sufficient to plead intent.") (denying motion to dismiss CIPA claim in pixel case); *Rack Room Shoes*, 2025 WL 1085169, at *4 ("Therefore, it is plausible to infer from Rack Room's alleged affirmative act of integrating the third-party code into its website that it knew Meta and Attentive would intercept personally identifiable information and that Rack Room had the purpose of employing Meta and Attentive to do so.") (denying motion to dismiss Section 631 claim); *M. H. v. Done Glob. Inc.*, No. 24-CV-03040-RFL, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) ("The Complaint alleges that Done purposefully installed these tracking technologies—which Done knew would invisibly transmit a user's website communications to third-party companies to facilitate ad retargeting—to optimize its own advertising and marketing."). Count Eight survives.

<u>Section 632</u>. Eavesdropping is sufficiently alleged as well. D.E. 26 at ¶¶ 275–291. And the information alleged to have been taken here is confidential because it concerns a person's confidential financial information. D.E. 26 at ¶¶ 76, 132, 170. A conversation with a financial institution like Mr. Cooper—about one's mortgage or a choice of whether to refinance or pull out equity—carries objective indicia of confidentiality. This is very different from mere web activity. Use of the Home Depot customer service chat function may not carry indicia of confidentiality. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) (cited

23

by Mr. Cooper); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) ("Nothing about these particular internet communications – inquiring about items of clothing on a retail website – warrants a deviation from this general rule.") (also cited by Mr. Cooper). But a financial entity's sharing of personal information does. Count Nine survives.

The Section 638.51 Claim (Count 10). The information that was collected and transmitted, as discussed above, was not simply an IP address; it was much more. D.E. 26 at ¶¶ 62, 64, 67, 137. And contrary to Mr. Cooper's assertions otherwise, internet tracking technologies count as pen registers. *See Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *11 (N.D. Cal. Aug. 29, 2025) ("Haleon argues that internet technologies are not 'pen registers.' This argument has been considered and rejected multiple times."); *see also Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *6 (N.D. Cal. Oct. 9, 2025) ("Courts in this district have widely recognized that trackers capturing IP addresses and related metadata fall comfortably within the definition of a 'pen register.'") (Breyer, J.) (similar); *In re Meta Pixel Tax Filing Cases*, __ F. Supp. 3d __, 2025 WL 2243615, at *3 (N.D. Cal. Aug. 6, 2025) (denying motion to dismiss pen register claim in pixel case); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024) ("Based on the expansive statutory definition of a pen register, 'tracking software could plausibly constitute a pen register under §§ 638.50 and 638.51.'") (quoting *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. July 25, 2024) and denying motion to dismiss CIPA claims). The state court cases upon which Mr. Cooper relies have been rejected. *Garon v. Keleops USA, Inc.*, 2025 WL 2522374, at *5 (N.D. Cal. Sept. 2, 2025).

Count Twelve  ECPA Section 2511(3)(a). Mr. Cooper argues that Beltran's claim under Section 2511(3)(a) of the ECPA in Count Twelve cannot proceed. D.E. 30 at 38. The language

24

of the statute is clear: an electronic communication service is "any" service that provides users with the ability to send or receive electronic communications. 18 U.S.C. § 2510(15). Courts in this district have allowed these claims to proceed beyond the Rule 12 stage. *In re BetterHelp, Inc.*, No. 23-CV-01033-RS, 2024 WL 4504527, at *2 (N.D. Cal. Oct. 15, 2024).

<u>Time-Barred</u>. Finally, Mr. Cooper argues that all but two of Beltran's claims are time-barred. Not so, as Beltran specifically pleads. D.E. 26 at ¶¶ 141–144. The case to which Mr. Cooper points included no arguments regarding estoppel and tolling, and the plaintiff in that case never even responded to the motion to dismiss. *Gueye v. Wells Fargo Bank*, No. 22-CV-08904-JSC, 2023 WL 3668521 (N.D. Cal. May 24, 2023).

## CONCLUSION

Mr. Cooper's motion rehashes many arguments that the courts in this District have rejected before. This is a motion in search of a theory, flinging every possible doctrine and unreported case at the wall to see what sticks. Many of the issues raised by Mr. Cooper's motion are well-worn territory in this Court, with different judges going different ways on some of these same claims. What matters is this. When a consumer interacts with a mortgage company, the information they share with that mortgage company is private. This mortgage company has, in search of greater profit, decided that sharing and selling consumer data is good business. But in the process, the technologies that it employed caused the disclosure of data that should not have been shared under the law. Beltran has pled different theories of recovery to seek redress for those injuries. In today's connected world, information about a consumer (intimate information like why someone wants to refinance) is very valuable. That's why Mr. Cooper sold it. This case should proceed into discovery and this motion should be denied.

Dated: November 7, 2025

Respectfully submitted,

_____

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops*
Lisa M. La Fornara*
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com
llafornara@cohenmalad.com

J. Gerard Stranch, IV*
Emily E. Schiller*
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
eschiller@stranchlaw.com

Samuel J. Strauss*
Raina C. Borrelli*
STRAUSS BORRELLI, PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
sam@straussborrelli.com
raina@straussborrelli.com

*To seek admission *pro hac vice*

**Counsel for Plaintiff and the Proposed Classes**

PLAINTIFF'S OPPOSITION TO MR. COOPER'S MOTION TO DISMISS
Case No. 3:25-cv-04412-JSC

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the clerk of the court for the United States District Court for the Northern District of California by using the CM/ECF system on November 7, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. I certify under penalty of perjury that the foregoing is true and correct.

Dated: November 7, 2025

Natalie Lyons, No. 293026

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

Dated: November 7, 2025

Natalie Lyons, No. 293026

27